In the United States District Court
for the Southern District of Ohio
Western Division

_____

| | |
|---|---|
| Vicki Linneman and Obadiah Ritchey, | |
| *On behalf of themselves and those similarly situated,* | Case No. 1:15-cv-748 |
| Plaintiff, | Judge _____ |
| v. | Magistrate Judge _____ |
| Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation, | |
| Defendants. | Jury Demand Endorsed Hereon |

_____

Class Action Complaint
_____

## I.    Introduction

1.   Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively "Vita-Mix") sell high-priced blenders, mainly targeted to health-conscious consumers. Vita-Mix's website touts the blenders as "the secret ingredient to leading a healthier and more flavorful life."[1] Vita-Mix fails to mention that the all of the blenders at issue add another "secret ingredient" to the food and beverages it mixes: tiny shards of polytetrafluoroethylene, a Teflon-like substance. Although Vita-Mix is fully aware of this defect (and has been for years), Vita-Mix has not disclosed the defect to consumers or recalled the defective products. Instead, Vita-Mix simply remains silent while its customers unknowingly ingest food and drinks contaminated with polytetrafluoroethylene.

## II.    Jurisdiction and Venue

2.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there

---

[1] https://www.vitamix.com/Home (accessed Nov. 6, 2015).

are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000, and minimal diversity exists.

3.   Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and Vita-Mix have caused harm to class members residing in this District.

### III.   Parties

4.   Plaintiff Vicki A. Linneman is a resident and citizen of Cincinnati, Ohio. Ms. Linneman purchased two Vita-Mix blenders, one in 2012 and one in 2013. She purchased both blenders from the retail store Williams Sonoma. Ms. Linneman purchased the first blender as a gift for her adult daughter. In 2013, Ms. Linneman purchased a blender for herself. Ms. Linneman purchased both blenders based on Vita-Mix's reputation and as a way to improve the health of herself and her family. The blenders purchased by Ms. Linneman are defective. Ms. Linneman asserts that, had she known that Vita-Mix blenders contaminate food and drinks with shards of a polytetrafluoroethylene, she would not have purchased the blenders.

5.   Plaintiff Obadiah N. Ritchey is a resident and citizen of Nevada. Mr. Ritchey bought a Vita-Mix blender from the retail store Bed, Bath and Beyond. Mr. Ritchey purchased the blender in 2013 prior to his marriage. Mr. Ritchey purchased the blender to improve his health in anticipation of his wedding. The blender purchased by Mr. Ritchey is defective. Mr. Ritchey asserts that, had he known that Vita-Mix blenders contaminate food and drinks with shards of polytetrafluoroethylene, he would not have purchased the blender.

6.   Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation are Delaware corporations. Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation each have their principal place of business at 8615 Usher Road, Olmsted Township, Ohio 44138. Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation do business as "Vitamix."

7.   Vita-Mix primarily designs, produces, markets, distributes, and sells high-end blenders.

2

**IV. Factual Background**

8. Vita-Mix expressly and consistently claims that its high-priced blenders are of the highest quality.

9. For example, Vita-Mix's website states: "Each premium component of the Vitamix machine has been strategically selected for its quality and strength, all working together to create the best blends in the business."[2] Likewise, the website claims that Vita-Mix puts "durable components" into its blenders.[3]

10. On information and belief, Vita-Mix has made the same or substantially similar claims throughout the time period relevant to this Complaint.

11. Vita-Mix's claims and statements would lead a reasonable consumer to assume the Vita-Mix blenders were of high quality, made of durable parts, and worth the premium price that Vita-Mix charges for the blenders. Vita-Mix's blenders typically range in price between $400 and $700.

12. At a minimum, Vita-Mix's claims would lead a reasonable consumer to believe that the blenders are *at least* suitable for their intended purpose: blending food and drinks without contamination from the blender itself.

13. In spite of Vita-Mix's claims, all Vita-Mix blenders manufactured during the relevant time period are defective such that tiny shards of polytetrafluoroethylene ("PTFE"), a Teflon-like substance, peel off of the blender or the blender's container and go directly into the food or drink being mixed. The Vita-Mix blenders at issue are referred to as the "Defective Blenders."

14. The PTFE shards are quite small and are extremely difficult to detect with the naked eye when found within food or drink.

15. As a result, consumers who use the Defective Blenders unknowingly consume PTFE shards in their food and drink blends.

16. Some consumers, after purchasing a high-end, premium priced Vita-Mix blender, discovered the PTFE contaminants by pouring clear water into the blender, turning it on, and then pouring the contents into a white bowl.[4]

---

[2] https://www.vitamix.com/Shop/G-Series (accessed Nov. 13, 2015); https://www.vitamix.com/Shop/C-Series (accessed Nov. 13, 2015); https://www.vitamix.com/Shop/S-Series (accessed Nov. 13, 2015).
[3] https://www.vitamix.com/Shop (accessed Nov. 13, 2015).

17. On information and belief, Vita-Mix knew or should have known about this defect prior to 2014.

18. Consumers have complained about the situation publicly through online forums and social media. A small sampling of representative consumer comments are below:

    a. On December 27, 2014, "Kathleen Lake" left a Facebook post on the Vita-Mix page that stated "I just called them. Outrageous! The black flakes appeared when my daughter used the new Christmas VitaMix that we got her for Christmas. When I called customer service they gave me the same 'canned response' as are stated in the above comments. The customer service rep even put me on hold so that she could get out the EXACT phrasing for this. In summary she said that the black flecks are FDA APPROVED and not a health issue for consumers! Reminds me of many other corporations like Toyota! They know that there is a problem with their product and refuse to deal with it and lead consumers to believe the product is safe. Let the customers eat the black flecks and feed them to their families? RETURNING the blender!"[5]

    b. On January 17, 2015, "Sam F." left a Verified Purchase review on Amazon that stated, in part, "This seems like a great product, with the exception of one fatal flaw. As widely documented elsewhere, tiny black flecks wind up in your liquid following each blend. Vitamix has acknowledged the issue and has stated that the flecks are actually PTFE (AKA Teflon) that comes off of the gear housing or shaft or something in the blade assembly. Further, they've stated that the FDA says PTFE is fine to be 'in contact' with food. Yes, and my fork and plate are also fine to be in contact with my food, but I'm still not planning on eating them. * * * Sorry Vitamix, but I can't in good conscious feed my 2 year old smoothies knowing there are lots of little bits of Teflon in them. The machine is being returned. It's a bummer, because I was really excited to get it and it seems like a great product otherwise. I feel strongly they should stop selling this product until the

---

[4] *See, e.g.*, https://www.youtube.com/watch?v=4dc_CL3AvHQ (Accessed Nov. 13, 2015).
[5] https://www.facebook.com/VitamixCorporation/posts/830914736918929 (Accessed Nov. 6, 2015).

design is fixed and should issue a recall. I do not think the majority of Vitamix's health conscious consumer base would be ok knowing they're eating Teflon... I know I'm not."[6]

c. On May 14, 2015, "X. Tang" issued an Amazon review that stated "I received it as a gift in January 2015 and I used it for a few times before I did some search on the product. To my surprise I saw complaints about the black particles. I went ahead tried clear water with smoothie cycle and saw many black particles. They are said to be Teflon which I believe is very bad if eaten. I'm giving it one star as many people buy it for this much money for health reason. Vitamix needs to fix the design flaw."[7]

d. On June 19, 2015, "Owhora" wrote a Verified Purchase review on Amazon that stated "I believe that the teflon issue will be solved in the new batch. Ohh boy, I am wrong. I received the Professional 750 Blender today and tried blending some water in it and then pour some of it into a white bowl... I see lots of little black flecks floating around, I tried cleaning it thoroughly (even ran the cleaning cycle a few times) and repeated the water test several times with the same results. I am looking for a way to eat healthy, and not being poisoned instead. $700 Killer Blender? Unacceptable!!"[8]

19. The above comments demonstrate what should be obvious: reasonable consumers would not knowingly pay for a blender that contaminates their food and drinks with PTFE shards.

20. Vita-Mix responded to consumer complaints by indicating that PTFE shards were safe to consume on a "limited" basis. For example, on December 12, 2014, Vita-Mix replied to a Facebook post

---

[6] http://www.amazon.com/Vitamix-Professional-Series-750-Blender/product-reviews/B00C6MWPNK/ref=cm_cr_dp_qt_hist_one?ie=UTF8&filterBy=addOneStar&showViewpoints=0 (Accessed Nov. 11, 2015).
[7] http://www.amazon.com/Vitamix-Professional-Series-750-Blender/product-reviews/B00C6MWPNK/ref=cm_cr_dp_qt_hist_one?ie=UTF8&filterBy=addOneStar&showViewpoints=0 (Accessed Nov. 11, 2015).
[8] http://www.amazon.com/Vitamix-Professional-Series-750-Blender/product-reviews/B00C6MWPNK/ref=cm_cr_dp_qt_hist_one?ie=UTF8&filterBy=addOneStar&showViewpoints=0 (Accessed Nov. 11, 2015).

by "Ivan Lum" and stated "Our seal material is safe and presents no health risk from repeat exposure or limited ingestion."[9]

21. Later, around February 2015, Vita-Mix began to tell customers that it was "working toward possible modifications to the seal."[10]

22. During this time, Vita-Mix admitted that the contaminant was PTFE but reiterated that the seal material was perfectly fine for its customers to eat. For example, on February 19, 2015, Vita-Mix replied to a Facebook post left by "Geep Maley" and stated that "these flecks are made of a common non-stick composite material – PTFE – which has been used in pots, pans, and other cookware for more than 50 years. The material is safe and presents no health risk for repeat exposure or limited ingestion."[11]

23. In other words, Vita-Mix knew that the Defective Blenders did not conform to the warranties and representations it made to consumers, knew that the Defective Blenders were inherently defective and irreparable, knew that customers who found out about the defect did not want the blenders, *but still continued to sell the Defective Blenders* to unwitting consumers.

24. Vita-Mix had a duty to disclose these omitted material facts about the PTFE shards because they were generally known and/or accessible only to Vita-Mix, which has superior knowledge and access to the facts surrounding the Defective Blenders. Moreover, Vita-Mix knew the facts were not known to or reasonably discoverable by Plaintiffs and the Class.

25. Instead of fulfilling its duty to warn or issue a recall, Vita-Mix did just the opposite: it took advantage of its customers and sold them high-priced Defective Blenders without disclosing the defect. Vita-Mix was not just silent, but actually continued to make misleading or false representations, claims, promises, and warranties, despite Vita-Mix's knowledge of the defect, in an effort to and with intent to sell Defective Blenders to consumers.

---

[9] https://www.facebook.com/VitamixCorporation/posts/830914736918929 (Accessed Nov. 6, 2015).
[10] *See* Vita-Mix Facebook Response to "Adam C. Watts," dated February 19, 2015.
https://www.facebook.com/VitamixCorporation/posts/830914736918929 (Accessed Nov. 6, 2015).
[11] https://www.facebook.com/VitamixCorporation/posts/830914736918929 (Accessed Nov. 6, 2015).

26. Vita-Mix concealed its deceptive practices and the defect in order to increase the sale of and profit from the Defective Blenders.

27. Vita-Mix's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights and safety of Plaintiffs.

28. Vita-Mix's conduct went beyond even the types of representations and failures to disclose discussed above. During the relevant time period, Vita-Mix expressly warranted – through its seven-year written warranty – that it would repair or replace defective machines:

> "if this Machine (a 'Machine' consists of a blender base and any containers purchased together) fails within 7 years from the date of purchase due to a defect in material or workmanship or as a result of normal wear and tear from ordinary household use, Vita-Mix will, within 30 days of receipt of the returned product, repair the failed Machine or component part of the Machine free of charge. If in Vita-Mix's sole discretion, the failed Machine or component part of the Machine cannot be repaired, Vita-Mix will elect to either (A) replace the Machine free of charge or (B) refund the full purchase price to the owner…"

29. For the vast majority of the relevant time period, Vita-Mix did not honor their 7-year warranty[12] because (A) all of its machines were defective and (B) Vita-Mix had not yet created a "fix" to the defect.

30. Accordingly, Vita-Mix claimed that its blenders were subject to a warranty even though Vita-Mix knew the products were defective and could not be fixed.

31. To the extent Vita-Mix provided replacement blenders, Vita-Mix's written warranty failed in its essential purpose because Vita-Mix merely replaced one Defective Blender with an equally defective blender rendering the contractual remedy completely insufficient to make Plaintiffs and the Class whole and relieving Plaintiffs and Class members of any presentment obligations. Vita-Mix failed to and/or refused to adequately provide the promised remedies within a reasonable time, as Vita-Mix simply supplied more defective parts or Defective Blenders.

---

[12] Other than by issuing full refunds to all customers, of course.

32. In any case, to date, Vita-Mix has not recalled the Defective Blenders or even notified consumers and other purchasers that the blenders are putting PTFE into food and drinks, including food and drinks that parents make for their children.

33. No blender, regardless of price, should contaminate food and drinks with any foreign substance. To the extent that a blender does so, it is unfit for its intended and usual purpose– blending food and drinks free from contaminants from the blender itself.

34. The fact that the Defective Blenders contaminate food and drinks renders the blenders essentially worthless.

35. A reasonable consumer and purchaser would not purchase a Vita-Mix blender knowing that PTFE peels off of the blender and contaminates food and drinks. This is true regardless of whether Vita-Mix or the Food and Drug Administration deem contact with the contaminant "safe" in limited quantities.

36. Vita-Mix's statements, advertising, representations, and omissions constitute deceptive, unfair, and unlawful practices.

37. Vita-Mix's acts and practices (including its failure to disclose the defect) alleged herein are unconscionable because, among other reasons, Vita-Mix knew or had reason to know that their statements, advertisements, and warranties were misleading and that Plaintiffs and the Class would rely to their detriment upon these statements, advertisements, and warranties.

38. Plaintiffs and Class Members relied upon Vita-Mix's representations, advertisements, and warranties, described above, when purchasing their Defective Blenders, including Vita-Mix's affirmative assertions that the blenders were of high quality and Vita-Mix's omissions/silence regarding Vita-Mix's failure to warn consumers that the blenders contaminated food with PTFE particles.

39. Plaintiffs and Class Members purchased the Defective Blenders based on false pretenses.

40. Vita-Mix's representations and omissions were likely to and, in fact did, mislead consumers.

41. To the extent that a consumer would knowingly purchase the Defective Blenders at all, a reasonable consumer would not pay as much as Vita-Mix blenders' retail price.

42. As a result, Plaintiffs and Class members overpaid for their Defective Blenders.

43. Plaintiffs and the Class members did not receive the benefit of their bargain with Vita-Mix.

44. Moreover, the Defective Blenders are now worth less as a result of the defect; *i.e.*, the Defective Blenders have suffered a diminution in value.

45. Vita-Mix's conduct proximately caused the injuries to Plaintiffs and the Class.

46. All of the wrongful conduct alleged herein occurred, and continues to occur in the conduct of Vita-Mix's business.

**V.    Tolling and Estoppel**

47.    The applicable statutes of limitations have been tolled by Vita-Mix's knowing and active concealment of the defect. Vita-Mix intentionally kept Plaintiffs and the Class members ignorant of vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and the Class members. Accordingly, Plaintiffs and the Class members could not reasonably have discovered the fact that the blenders they purchased were defective.

48.    Plaintiffs and the Class members reasonably and in good faith relied upon Vita-Mix's affirmative misrepresentations and knowing, affirmative, and/or active concealment. Based on the foregoing, Vita-Mix is estopped from relying on any statutes of limitation or warranty time limitations in defense of this action. Vita-Mix is also estopped from relying on any statutes of limitation or warranty time limitations in defense of this action because it did not repair this known defect prior to selling these blenders.

**VI.   Ohio Law Governs All Claims**

49. Vita-Mix, through its Terms and Conditions of Sale, adopts Ohio law and agrees that Ohio law governs and shall apply to all transactions at issue in this litigation:

> **Governing Law.** These Terms and Conditions of Sale shall be governed and construed in accordance with the laws of the State of Ohio, without regard to conflicts-of-laws or choice of law principles. The provisions of the uniform Commercial Code as adopted by the State of Ohio, and not the United Nations Convention on Contracts for the International Sale of Goods, shall apply.[13]

---

[13] https://www.vitamix.com/shop/terms-of-sale (Accessed Nov. 17, 2015).

50. Accordingly, Plaintiffs and the Class, assert their claims under Ohio law.[14]

**VII.    Class Allegations**

51. Pursuant to Rules 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on behalf of themselves and the Class, initially defined as follows:

> **All individuals and entities in the United States that purchased a Vita-Mix blender during the Relevant Time Period.[15]**

52. The "Relevant Time Period" is the largest period allowed by law.

53. Excluded from the Class are Vita-Mix, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partially owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

54. The definition of the Class is unambiguous, and the Plaintiffs are members of the Class that they seek to represent.

55. The Class is so numerous that joinder of all members is impracticable. Due to the nature of trade and commerce involved, the members of the Class are geographically dispersed throughout the United States and joinder of all Class members would be impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, on information and belief, Vita-Mix has sold tens of thousands of Defective Blenders during the class period. Accordingly, the number of Class members may easily exceed ten thousand members.

56. Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and other class members were subject to and received and were subject to the same standardized misrepresentations, warranties, and nondisclosures about the quality and benefits of the Defective Blenders. Vita-Mix's misrepresentations were made pursuant to a standardized policy and procedure implemented by Vita-Mix. Plaintiffs and Class members purchased Defective Blenders that they would

---

[14] Even if Ohio law were not to apply nationwide (and it does), Plaintiffs' breach of contract and breach of express warranty claims are sufficiently identical among the States so as to warrant certification of a nationwide class.
[15] Plaintiffs reserve the right to amend the class definition.

not have purchased at all, or for as much as they paid, had they known about the defect. Plaintiffs and the members of the Class have all sustained injury in that they overpaid for the Defective Blenders due to Vita-Mix's wrongful conduct.

57. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and consumer fraud and product defect litigation.

58. Vita-Mix has acted or refused to act on grounds generally applicable to the Class, thereby making it appropriate for the Court to render final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. In particular, Vita-Mix has failed to properly notify Class members of the defects and/or repair the Defective Blenders.

59. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are as follows:

    a.   Whether Vita-Mix had knowledge of the defect;

    b.   When did Vita-Mix first learn of the defect;

    c.   Whether Vita-Mix concealed or attempted to conceal the defect;

    d.   Whether Vita-Mix misrepresented the quality of its blenders;

    e.   Whether Vita-Mix's misrepresentations and omissions regarding its Defective Blenders were likely to deceive a reasonable person in violation of the applicable law.

    f.   Whether Vita-Mix's representations regarding its Defective Blenders form express or implied warranties.

    g.   Whether Vita-Mix's misrepresentations and omissions regarding quality and health effects of its Defective Blenders were likely to deceive a reasonable person in violation of the applicable law.

    h.   Whether Vita-Mix's business practices, including the manufacture and sale of blenders with a defect that Vita-Mix failed to adequately investigate, disclose, and remedy, offend

established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

i. Whether Vita-Mix breached its express warranties regarding, among other things, the safety and quality of its blenders;

j. Whether Vita-Mix breached the implied warranty of merchantability because the Defective Blenders were not fit for their ordinary purpose due to the defect;

k. Whether Vita-Mix was unjustly enriched at the expense of Plaintiffs and the Class;

l. Whether Vita-Mix violated Ohio's Consumer Sales Practices Act;

m. Whether Vita-Mix violated Ohio's Deceptive Trade Practices Act;

n. Whether Plaintiffs and the Class are entitled to damages, restitution, disgorgement, equitable relief, and/or other relief; and

o. The amount and nature of such relief to be awarded to Plaintiffs and the Class.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Vita-Mix, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort, and expense, and would assure uniformity of decisions as to persons similarly situated without sacrificing procedural fairness.

**VIII.     Causes of Action**

### Count 1

### Breach of Express Warranty

61. All other paragraphs are fully re-alleged and incorporated herein.

62. Vita-Mix expressly warranted – through statements and advertisements described above – that the Defective Blenders were of high quality, made of durable parts, free from known defects, and/or, at a minimum, were suitable for their intended purpose – blending food and drinks without contamination from the blender itself.

63. Moreover, Vita-Mix provided a written warranty on the Defective Blenders that "if this Machine (a 'Machine' consists of a blender base and any containers purchased together) fails within 7 years from the date of purchase due to a defect in material or workmanship or as a result of normal wear and tear from ordinary household use, Vita-Mix will, within 30 days of receipt of the returned product, repair the failed Machine or component part of the Machine free of charge. If in Vita-Mix's sole discretion, the failed Machine or component part of the Machine cannot be repaired, Vita-Mix will elect to either (A) replace the Machine free of charge or (B) refund the full purchase price to the owner…"

64. As detailed above, Vita-Mix, at least until late 2015, could not possibly have honored the written 7-year warranty because it merely replaced one Defective Blender with an equally Defective Blender.

65. Vita-Mix breached their various express warranties by knowingly selling to Plaintiffs blenders with the defects described above, which were not of high quality, did not consist of durable parts, and which could not be repaired or replaced.

66. Plaintiffs and the Class members have been damaged as a direct and proximate result of the breaches by Vita-Mix in that the Defective Blenders purchased were and are worth far less than what Plaintiffs and Class members paid to purchase them, which was reasonably foreseeable to Vita-Mix.

**Count 2**

**Breach of Implied Warranty of Merchantability**

67. All other paragraphs are fully re-alleged and incorporated herein.

68. Vita-Mix impliedly warranted that its Defective Blenders were of high and merchantable quality and fit for their ordinary intended use – preparing food and drink mixes, without contamination from the blender itself.

69. As described above, there were defects in the blenders manufactured, distributed, and/or sold by Vita-Mix, which Plaintiffs and Class members purchased, including, but not limited to defects that caused the blenders to contaminate food and drinks with PTFE shards.

70. The Defective Blenders, when sold and at all times thereafter, were not in merchantable condition and were not fit for the ordinary purpose for which blenders are used. Specifically, the Defective Blenders contaminated (and continue to contaminate) food and drinks with PTFE shards.

71. The Defective Blenders would not pass without objection in the blender trade.

72. These defects existed at the time that the Defective Blenders left Vita-Mix's manufacturing facilities and at the time they were sold to Plaintiffs and Class members.

73. These defects directly and proximately caused damages to Plaintiffs and Class members for which they seek all appropriate remedies.

**Count 3**

**Negligent Design, Engineering, and Manufacture**

74. All other paragraphs are fully re-alleged and incorporated herein.

75. Vita-Mix is the designer, manufacturer and supplier of the Defective Blenders.

76. Vita-Mix owed Plaintiffs and Class members a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the Defective Blenders so that the blenders would not contaminate food and drinks with a foreign substance.

77. Vita-Mix owed Plaintiffs and Class members a non-delegable duty to exercise ordinary and reasonable care in designing, engineering, and manufacturing the Defective Blenders so that they would function appropriately; *i.e.*, without putting foreign substances in blended food and drinks.

78. Vita-Mix also owed – and owes – a continuing duty to notify Plaintiffs and Class members of the defect at issue and the repair the defects.

79. Vita-Mix breached these duties of reasonable care by designing, engineering, and manufacturing Defective Blenders that contaminate food and drinks with PTFE shards. Vita-Mix breached their continuing duty to notify Plaintiffs and Class members of this defect.

80. The foreseeable hazards include, but are not limited to, Plaintiffs and Class members (and members of their families) ingesting food and drinks contaminated with PTFE.

81. At all relevant times, there existed alternative designs and engineering which were both technically and economically feasible.

82. Further, any alleged benefits associated with the defective designs are vastly outweighed by the probability that the Defective Blenders would contaminate food and drinks with a foreign substance.

83. The Defective Blenders were defective as alleged herein at the time that they left Vita-Mix's factories, and the Defective Blenders reached Plaintiffs and Class members without substantial change in the condition in which they were sold.

84. As a direct and proximate result of Vita-Mix's breaches, Plaintiffs and Class members have suffered damages.

15

85. Accordingly, Plaintiffs and Class members are entitled to recover appropriate damages including, but not limited to, diminution of value and injunctive relief.

## Count 4

## Fraud and Fraudulent Concealment

86. All other paragraphs are fully re-alleged and incorporated herein.

87. During the relevant time period, Vita-Mix knew of the defect in its Defective Blenders but, at the same time, continued to claim that they were of the highest quality, subject to a warranty, contained durable parts, were suitable for their ordinary use, etc. and did not disclose the defect to Plaintiffs or Class members.

88. In doing so, Vita-Mix intentionally concealed the known defect, or acted with reckless disregard for the truth, and denied Plaintiffs and Class members information that is highly relevant and material to their purchasing decision – that the Defective Blenders contaminated food and drinks with PTFE.

89. Vita-Mix had a duty to disclose this material defect because they consistently marketed their Defective Blenders as described above. Once Vita-Mix made representations to the public about the high quality of its product and that they were fit for their intended use, Vita-Mix was under a duty to disclose these omitted facts, because where one does speak, one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

90. In addition, Vita-Mix had a duty to disclose these omitted material facts because they were known and/or accessible only to Vita-Mix which has superior knowledge and access to the facts, and Vita-Mix knew they were not known to or readily discoverable by Plaintiffs and the Class. These omitted facts were material because they directly impact the quality of the Defective Blenders. Whether a blender contaminates food with PTFE is a material concern directly related quality. Vita-Mix possessed exclusive knowledge of the defects rendering the Defective Blenders of a lesser quality than claimed or of lesser quality than similar blenders.

91. Vita-Mix actively concealed and/or suppressed these material facts, in whole or in part, with intent to induce Plaintiffs and the Class to purchase the Defective Blenders at a higher price, which did not take into account the defective nature of this product.

92. The concealment of this defect was material because if it had been disclosed, Plaintiffs and Class members would not have bought the Defective Blenders and/or not have paid as much as they did.

93. The representations were material because they were facts that would typically be relied on by a person purchasing a blender. Vita-Mix knew its representations were false because it was aware that the Defective Blenders contaminated food and drinks with PTFE. Vita-Mix intentionally made false or misleading statements in order to sell its Defective Blenders.

94. Plaintiffs and Class members relied on Vita-Mix's reputation, along with Vita-Mix's failure to disclose the defect and Vita-Mix's affirmative assurances that its Defective Blenders were of high quality and other, similar false statements, in purchasing Vita-Mix blenders.

95. Vita-Mix still has not made full and adequate disclosure and continues to defraud Plaintiffs and the Class.

96. Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and the Class' actions were justified, as Vita-Mix was in exclusive control of the material facts and such facts were not generally known to the public or the Class.

97. As a result of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage. For those Plaintiffs and the Class who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs and the Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of property, and/or lost profits. For those Plaintiffs and the Class who want to rescind the purchase, then they are entitled to restitution and consequential damages.

98. Vita-Mix's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class members' rights and well-being for the purpose of enriching Vita-Mix. Vita-Mix's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

99. As a result of their reliance, Plaintiffs and Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or diminished value of their Defective Blenders.

## Count 5

### Unjust Enrichment

100. All other paragraphs are fully re-alleged and incorporated herein.

101. Plaintiffs and Class members paid substantial money for a high-end blender, and, in exchange, Vita-Mix provided Plaintiffs and Class members with Defective Blenders. Thus, Plaintiffs and Class members conferred benefits upon Defendants, and Defendants had knowledge of these benefits. As described throughout this Complaint and as alleged below, retention of these benefits by Defendants under the circumstances present here is unjust without payment to Plaintiffs and the Class members.

102. As a result of Vita-Mix's wrongful and fraudulent acts and omissions, as set forth above, pertaining to the defect of the blenders and the concealment of the defect, Vita-Mix received a higher price for the sale of its Defective Blenders than the blenders' true worth, and Vita-Mix obtained money which rightfully belongs to Plaintiffs and the Class.

103. As such, Plaintiffs conferred a benefit and/or windfall on Vita-Mix, which knows of the windfall and has retained such benefits, which would be unjust for Vita-Mix to retain.

104. Vita-Mix appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the Class, who, without knowledge of the defect, paid a higher price for the Defective Blenders, which actually had lower values, if any value. Accordingly, it is inequitable and unjust for Vita-Mix to retain this wrongfully obtained money.

105.     As a direct and proximate result of Vita-Mix's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and, as a result, request restitution of all amounts by which Vita-Mix's was unjustly enriched.

## Count 6

## Breach of Contract

106.     All other paragraphs are fully re-alleged and incorporated herein.

107.     As a result of the Defective Blenders not adhering to Vita-Mix's representations, claims, warranties, and assertions, Vita-Mix has breached its warranties/contracts to sell properly functioning blenders to Plaintiffs and Class members that are free of known defects in exchange for the purchase price paid by Plaintiffs and Class members.

108.     Moreover, because Vita-Mix claimed, under its 7-year warranty, to provide a remedy that it did not provide, it breached its warranties/contracts with Plaintiffs and Class members, as it merely replaced Defective Blenders with equally defective blenders during the relevant time period.

109.     As a direct and proximate result of Vita-Mix's breach of contract and/or common law warranty, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Count 7**

**Violation of Ohio Deceptive Trade Practices Act (O.R.C. § 4165.02, *et seq.*)**

110. All other paragraphs are fully re-alleged and incorporated herein.

111. Ohio Revised Code § 4165(A) provides that "a person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; * * * (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have; * * * (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; * * * (11) Advertises goods or services with intent not to sell them as advertised."

112. Vita-Mix is a "person" within the meaning of O.R.C. § 4165.01(D).

113. The Defective Blenders sold to Plaintiffs and members of the Class were not of the particular characteristics, uses, benefits, or qualities represented by Vita-Mix.

114. The Defective Blenders sold to Plaintiffs and members of the Class were not of the particular standard, quality, and/or grade represented by Vita-Mix.

115. As stated above, Vita-Mix made false or misleading statements of fact and omissions of fact concerning the Defective Blenders that Plaintiffs and members of the Class purchased – *i.e.*, that the blenders were of high quality, made of durable parts, suitable for ordinary use, etc. – when Vita-Mix, in fact, knew that the blenders were defective and not suitable for ordinary use because the Defective Blenders could not be used to prepare food and drinks to a standard that is expected for human consumption, *i.e.*, without introducing contamination from the blender itself.

116. These statements and omissions materially influenced Plaintiffs' and Class members' decision to purchase the Defective Blenders, in that but for these statements and omissions, Plaintiffs and the members of the Class would not have purchased the Defective Blenders or certainly would not have paid as much for them..

117.     Vita-Mix's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and members of the Class, about the true quality, uses, characteristics, and benefits of the Defective Blenders.

118.     As a result of the foregoing, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, equitable relief, and reasonable attorneys' fees and costs.

**Count 8**

**Violation of Ohio Consumer Sales Practices Act (O.R.C. § 1345.01, *et seq.*)**

**(Alleged on behalf of Consumer Subclass)**

119.     All other paragraphs are fully re-alleged and incorporated herein.

120.     This Violation of Ohio Consumer Sales Practices Act claim is asserted on behalf of a subclass of individuals who purchased a Vita-Mix blender during the Relevant Time Period and are classified as "consumers" under the Ohio Consumer Sales Practices Act ("CSPA"). This subclass is referred to as the "Consumer Subclass."

121.     The CSPA, Ohio Revised Code § 1345.02, prohibits suppliers from committing unfair and deceptive acts or practices in connection with a consumer transaction. Specifically, the CSPA expressly considers the following to be examples of deceptive practices:

    a.   Representing that the subject of a consumer transaction has performance characteristics, uses, or benefits that it does not have;

    b.   Representing that the subject of a consumer transaction is of a particular standard, quality, or grade if it is not;

    c.   Representing that the subject of a consumer transaction has been supplied in accordance with a prior representation if it has not; and

    d.   Representing that the subject of a consumer transaction involves a warranty if that representation is false.

21

122.     Unfair and deceptive acts or practices violate the CSPA whether the act occurs before, during, or after the transaction.

123.     Vita-Mix is a "supplier" as that term is defined in the CSPA.

124.     Plaintiffs and members of the Consumer Subclass are "consumers" as that term is defined in the CSPA.

125.     Plaintiffs and members of the Consumer Subclass purchased Defective Blenders for personal, family, or household purposes.

126.     Vita-Mix's conduct as described throughout this Complaint violates the CSPA because:

a.     Vita-Mix represented that the Defective Blenders have performance characteristics, uses, or benefits that they do not have including, but not limited to, the ability to blend food or drinks for consumption by people free from contaminants introduced by the blender.

b.     Vita-Mix represented that the Defective Blenders are of a particular standard, quality, or grade and they are not. For example, Vita-Mix represented that the Defective Blenders were high quality, made of durable high-grade parts, free from known defects, and could be used to prepare food and drinks in normal operation at a standard that is expected for human consumption, *i.e.*, without introducing contamination from the blender itself. However, these representations are false as a blender that sheds shards of PTFE into food and drink is not high quality, not made of durable high-grade parts, not free from known defects, and cannot be used for its intended purpose (*i.e.,* to prepare food and drinks to a standard that is expected for human consumption).

c.     Vita-Mix represented that the Defective Blenders have been supplied in accordance with a prior representation when they have not, *i.e.,* Vita-Mix represented that the Defective Blenders were free of known defects when they were not.

d.     Vita-Mix represented that the Defective Blenders involved a warranty but that representation was false as Vita-Mix, during the relevant time period, merely replaced Defective Blenders with equally defective blenders.

22

      e.    Vita-Mix failed to disclose a known defect to Plaintiffs and to members of the Consumer Sub-Class.

      f.    Vita-Mix failed to notify (and continues to fail to notify) Plaintiffs and members of the Consumer Subclass of the defect.

127.    As stated above, Vita-Mix made false or misleading statements of fact concerning the blenders purchased by Plaintiffs and the Consumer Subclass – *i.e.*, that the blenders were suitable for ordinary use – when Vita-Mix, in fact, knew that the blenders were defective and not suitable for ordinary use. Vita-Mix's various representations, statements, and selective and intentional silence contributed to the deceptive context of Vita-Mix's unlawful advertising and representations as a whole.

128.    Defendants' conduct and failures to disclose as described above materially influenced Plaintiffs' and Consumer Subclass members' decision to purchase the Defective Blenders. But for Defendants' unfair and deceptive acts and practices described above, Plaintiffs and the members of the Consumer Subclass would not have purchased the Defective Blenders, or would have paid substantially less than the price charged.

129.    Whether or not a blender contaminates food and drinks with pieces of PTFE from the blender is a fact that a reasonable consumer would consider important and material when purchasing a blender. When Plaintiffs purchased a blender, they reasonably expected the blender would not cause PTFE from the blender to peel off into food and drinks.

130.    Vita-Mix's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the members of the Consumer Subclass, about the true nature, standard, quality, grade, uses, characteristics, warranty, and benefits of the Defective Blenders.

131.    Vita-Mix's conduct was, and is, unfair and deceptive acts and practices in violation of Ohio's CSPA.

132.    Vita-Mix engaged in wrongful conduct while, at the same time, obtaining, under false pretenses, significant sums of money from Plaintiffs and Consumer Subclass members.

133.     Vita-Mix's illegal conduct and failures to disclose discussed above constitute an act or practice previously declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 and previously determined by Ohio courts to violate Ohio's Consumer Sales Practices Act and was committed after the decisions containing these determinations were made available for public inspection under division (A)(3) of O.R.C. § 1345.05. These cases include, but are not limited to: *Marks v. C.P. Chemical Co., Inc*., No. 49943, PIF No. 10000824 (Ct. App. Cuyahoga Dec. 31, 1986); *Hall v. Fairmont Homes, Inc*., No. 94CA2035, PIF. No. 10001755 (Ct. App. Ross July 20, 1995); *Brown v. Lyons*, 43 Ohio Misc. 14 (1974); *Fisher v. Collins*, No. 199286, PIF. No. 10001322; and *In re Dennis McBride*, No. 234013, PIF. No. 10002237.

134.     As a proximate result of Vita-Mix's conduct, Plaintiffs and the members of the Consumer Sub-Class have suffered ascertainable losses and are entitled to relief, in an amount to be determined at trial. Plaintiffs seek all available damages under O.R.C. § 1345, *et seq.*, including, but not limited to actual and statutory damages, court costs, and attorneys' fees.

IX. **Prayer for Relief**

Plaintiffs seek the following relief:

A.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and Consumer Subclass and appointment of Plaintiffs and their counsel to represent the Class and Consumer Subclass;

B.    Injunctive relief;

C.    Restitution and/or disgorgement;

D.    Statutory damages;

E.    Punitive damages;

F.    Damages including, but not limited to, the purchase price paid or diminished value;

G.    Revocation of acceptance;

H.    Attorneys' fees and expenses;

I.    An injunction ordering Vita-Mix to notify the Class and Consumer Subclass of the Defective Blenders and/or recalling the Defective Blenders and/or defective parts; and

J.    Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,


/s/ Bill Markovits
W.B. Markovits (0018514) (*bmarkovits@msdlegal.com*)
Paul M. DeMarco (0041153) (*pdemarco@msdlegal.com*)
Andrew R. Biller (0081452) (*abiller@msdlegal.com*)
Markovits, Stock & DeMarco LLC
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Fax: (513) 665-0219
www.msdlegal.com


Christopher P. Finney (0038998) (*chris@finneylawfirm.com*)
Justin Walker (0080001) (*justin@finneylawfirm.com*)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, OH 45245
Telephone: (513) 943-6665
Fax: (513) 943-6669


Jeffrey S. Goldenberg (0063771) (*jgoldenberg@gs-legal.com*)
Goldenberg Schneider, L.P.A.
One West 4th Street, 18th Floor
Cincinnati, OH 45249
Telephone: (513) 794-0251
Fax: (513) 345-8294


*Counsel for Plaintiffs and Class*

**<u>JURY DEMAND</u>**

Plaintiffs request a trial by a jury of twelve persons.


<u>/s/ Bill Markovits</u>
W.B. Markovits