# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VICKI LINNEMAN, *et al.*, | : | CASE NO. 1:15-cv-748 |
| | : | |
| Plaintiffs, | : | (Judge Susan J. Dlott) |
| | : | (Magistrate Judge Stephanie K. Bowman) |
| v. | : | |
| | : | PUTATIVE CLASS ACTION |
| VITA-MIX CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement (the "Agreement") is made and entered effective September 26, 2017, by and among, Vicki A. Linneman and Obadiah N. Ritchey (collectively, the "Named Plaintiffs"), on behalf of themselves and the Settlement Class (collectively, "Plaintiffs") and Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively, as defined in Section 3.13.14 below, "Defendants" or "Vita-Mix"). Plaintiffs and Defendants are referred to collectively as the "Parties" or the "Settling Parties," and each individually as a "Party."

This Agreement is intended to fully and finally resolve and settle the case captioned *Vicki Linneman, et al. v. Vita-Mix Corporation, et al.*, Civil Action No. 1:15-cv-00748 pending in the United States District Court for the Southern District of Ohio, Western Division (the "Lawsuit"). In this Agreement, any capitalized term not immediately defined is defined in Section III below.

## I. THE LAWSUIT

A. On November 19, 2015, the Named Plaintiffs filed a complaint against Defendants alleging that Vita-Mix blenders were defective because they deposit tiny black

polytetrafluoroethylene ("PTFE") flecks into blended food and drink. Plaintiffs asserted claims for: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) negligent design, engineering, and manufacture; (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract; (7) violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.02 *et seq.*); and (8) violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*). The complaint sought certification of a nationwide class of purchasers of Vita-Mix blenders.

B. On February 26, 2016, the Named Plaintiffs and KMW Coffee, LLC filed a First Amended Class Action Complaint against Defendants asserting claims for: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) negligent design, engineering, and manufacture; (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract; and (7) violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*). The complaint sought certification of a nationwide class of purchasers of Vita-Mix blenders. Neither the original complaint nor the First Amended Class Action Complaint alleged that there was any health or safety risk from human consumption of the black flecks.

C. On April 15, 2016, Vita-Mix moved to dismiss the First Amended Class Action Complaint. Defendants deny the allegations in the Lawsuit and assert numerous defenses to Plaintiffs' claims, including that Vita-Mix blenders are not defective in design, engineering, or manufacture and that Plaintiffs did not suffer any losses or actual injury.

D. With the motion to dismiss pending, the Parties engaged in mediation with the aid of and before Judge Michael R. Barrett on August 3, 2016. Additional mediation sessions took

place before Judge Barrett as described on the Court's docket and in the Joint Status Report of the Parties filed on August 2, 2017 (Doc. No. 33), and at other times.

E.       The Parties to this Agreement:  (1) engaged in substantial discovery, including written discovery, the production of more than 47,500 pages of documents by Defendants and more than 12 gigabytes of data, discovery from third-parties, product testing, and over a dozen depositions of fact witnesses; (2) began preparations for contested class certification proceedings in 2017; and (3) engaged in numerous arm's-length settlement negotiations (most recently under the direction and guidance of Judge Barrett as a mediator).  The Parties have now reached an agreement providing for a resolution of all claims that have been or could have been brought in the Lawsuit against Defendants on behalf of Plaintiffs.  However, the Parties have not reached any agreement on the amount of Attorneys' Fees and Expenses Vita-Mix will pay to Class Counsel, except that the Parties agree Class Counsel is entitled to an award of Attorneys' Fees and Expenses and that Defendants have a right to object to and to contest Class Counsel's Fee Application.

F.       Named Plaintiffs and Class Counsel have reviewed and analyzed the documents produced by Defendants and those obtained through their own investigation; consulted with experts; examined and considered the benefits to be provided to the Class Members under the Settlement provided for in this Agreement; and considered the laws of the several States and the claims that could be asserted under those laws regarding Vita-Mix blenders.

G.       Experts retained by the Named Plaintiffs have tested containers with the Replacement Seal and agree with Defendants that this new technology does not produce the black flecks that prompted this Lawsuit.

H.      Named Plaintiffs and Class Counsel believe the Settlement is fair, adequate, reasonable, and in the best interests of the Class Members, taking into account the benefits provided to the Class Members through the terms of the Settlement, the risks of continued litigation and possible trial and appeals, and the length of time and the costs that would be required to complete the litigation.

I.      Defendants have at all times disputed, and continue to dispute, Plaintiffs' allegations in the Lawsuit and deny any liability for any of the claims that have or could have been raised in the Lawsuit by Plaintiffs or the Class Members, but believe that the comprehensive resolution of the claims in the Lawsuit as provided in this Agreement will avoid the substantial costs and disruptions of continued litigation, including potential trial and appeals, is in the best interest of Class Members, is in the best interests of Defendants, their employees, and their customers, and is the most effective and efficient resolution of the Lawsuit reasonably possible.

J.      The Settling Parties entered into this Agreement after extensive arm's-length negotiations.  The Settling Parties agreed on the benefits to the Class described in this Agreement before beginning negotiations of the provisions of this Agreement related to Attorneys' Fees and Expenses and payment of Service Awards to the Named Plaintiffs.

K.      The Parties understand, acknowledge, and agree that this Agreement constitutes the compromise of disputed claims and that it is their mutual desire and intention that the Lawsuit be settled and dismissed, on the merits and with prejudice, and that the Released Claims be finally and fully settled and dismissed, subject to and according to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, without any concession by Plaintiffs that their claims lack merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, it is hereby AGREED by and among the Parties, subject to approval by the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, that, in consideration for the benefits flowing to the Settlement Class and the Parties, the Lawsuit and all Settled Class Claims and Released Claims, as defined below, shall be compromised, settled, acquitted, and dismissed with prejudice, on the following terms and conditions:

## II.  NO ADMISSION OF WRONGDOING AND CONDITIONAL NATURE OF THIS AGREEMENT

2.1.    Defendants do not admit any wrongdoing, fault, liability, or damage to Plaintiffs or Class Members.  Nor do Defendants admit that they engaged in any wrongdoing or committed any violation of law.  Defendants maintain that they have meritorious defenses to the Lawsuit, that Vita-Mix blenders are not defective, and that the alleged defects did not cause injury or loss. Defendants do not admit that any Vita-Mix blender is defective.  In view, however, of the uncertainty and risk of the outcome of any litigation, the difficulties and substantial expense and length of time necessary to defend the proceeding—including potentially through trial, post-trial motions, and appeals—and to eliminate the burden and expense of further litigation, Defendants wish to settle the Lawsuit and to put the claims alleged in the Lawsuit to rest, finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damage to Plaintiffs.  The Settlement and this Agreement represent a compromise of disputed claims and the arm's-length negotiations, discussions, and communications in connection with or leading up to and including the Settlement are not and shall not be construed as admissions or concessions by any of the Parties, either as to any liability or wrongdoing or as to the merits of any claim or defense, regardless of whether this Agreement becomes effective.

2.2.    This Agreement and all associated exhibits or attachments are made for the sole purpose of settling the Lawsuit and are made in compromise of disputed claims.  Because this Agreement settles the action on a class-wide basis, it must receive preliminary and final approval from the Court.  Accordingly, the Settling Parties enter into this Agreement on a conditional basis.  If the Court does not enter the Final Approval Order, the proposed judgment does not become a final judgment for any reason, or the Effective Date does not occur, this Agreement shall be deemed null and void *ab initio*; it shall be of no force or effect whatsoever; it shall not be referred to or used for any purpose whatsoever; and the negotiation, terms, and entry of the Agreement shall remain subject to Rule 408 of the Federal Rules of Evidence and any analogous federal or state court rules of evidence or substantive law.

2.3.    If the Court materially alters any of the terms of this Agreement to the material and substantial detriment of Plaintiffs or Defendants, at the sole discretion of each adversely affected Party, this Agreement shall be deemed null and void *ab initio* and shall be of no force or effect whatsoever.  To exercise this right, the Party must inform the Court, the other Party, and the Settlement Administrator, in writing, of the exercise of this right within ten (10) days after any such order.

2.4.    This Agreement and all associated exhibits or attachments, and any and all negotiations relating to it, shall not be admissible in the Lawsuit, or any other action or legal proceeding, in any manner whatsoever, except as necessary:  (a) to enforce the terms of this Agreement, including to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, accord and satisfaction, good-faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim; or (b) in connection with Third-Party Claims.

## III.    DEFINITIONS

As used in this Agreement, the following terms have the definitions that follow:

3.1    "Administration and Notice Expenses" means reasonable fees and expenses incurred by the Settlement Administrator for the: (1) mailing, emailing, publication, and other dissemination of the Settlement Notice; (2) receipt and adjudication of claims submitted by Class Members for benefits under this Settlement, including the costs of administering a Settlement Website for the review of the Settlement Notice and submission of claims; (3) preparation of status reports at the request of the Court or in preparation for a hearing or conference with the Court; (4) receipt and processing of Opt-Out Requests submitted by Class Members who wish to exclude themselves from the Settlement Class; and (5) other reasonable costs of notice and claims administration agreed to by the Parties.

3.2    "Agreement" means this Class Action Settlement Agreement and all exhibits attached to, and incorporated by reference into, it.

3.3    "Attorneys' Fees and Expenses" means the amount of any attorneys' fees and reimbursement of litigation costs awarded to Class Counsel under their Fee Application.

3.4    "CAFA Notice" means a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA"), to be served on the appropriate state official in each state where a Class Member resides and the appropriate federal official.

3.5    "Claimant" means a Class Member who submits a valid and timely Claim Form.

3.6    "Claims Deadline" means September 28, 2018.

3.7    "Claim Form" or "Claim Forms" means the forms to be approved by the Court as part of the Preliminary Approval Order and to be submitted to the Settlement Administrator by

Class Members who wish to make a claim or receive a benefit in accordance with Section VI of this Agreement.

3.8    "Class" means all Persons domiciled within the United States and its territories who: (a) own a Vita-Mix household blender with a blade assembly dated on or after January 1, 2007 but before October 1, 2016; or (b) own a Vita-Mix commercial blender that was (i) purchased on or after September 15, 2015 but before August 9, 2016, or before April 7, 2017 in the case of a commercial blender from the XL product line, (ii) never used in connection with the Replacement Seal, and (iii) purchased through a third-party, such as a dealer, distributor, or restaurant supply store and not acquired directly from Vita-Mix. Excluded from the Class are Defendants and their officers and directors; Class Counsel and their partners, associates, lawyers, and employees; and the judicial officers and their immediate family members and associated Court staff assigned to this case. Also excluded from the Class are persons who own one or more of the blenders described in this Section received as a benefit, gift, award, or compensation directly from Vita-Mix in connection with such person's work for Vita-Mix unless such person separately purchased any blender(s) described in this Section, in which case their eligibility for class membership and benefits is limited to any such purchased blender(s).

3.9    "Class Counsel" means Bill Markovits and Paul M. De Marco of Markovits, Stock & DeMarco LLC; Jeffrey S. Goldenberg of Goldenberg Schneider, L.P.A.; and Justin C. Walker of the Finney Law Firm, LLC.

3.10    "Class Member" or "Plaintiff" means any Person who is a member of the Settlement Class and who does not exclude himself, herself, or itself from the Settlement Class in the manner and time prescribed by the Court in the proposed Preliminary Approval Order.

3.11 "Class Representatives" means Named Plaintiffs Vicki A. Linneman and Obadiah N. Ritchey.

3.12 "Court" means the United States District Court for the Southern District of Ohio, Western Division.

3.13 "Complaint" or "First Amended Class Action Complaint" means the First Amended Class Action Complaint filed in the Lawsuit by Plaintiffs on February 26, 2016.

3.14 "Defendants" means Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation and their respective parent corporations, affiliates, direct and indirect subsidiaries, predecessors, successors, assigns, anyone acting or purporting to act on their behalf, and all of their current or former board members and executives.

3.15 "Effective Date" means the first date that is three business days after all the following have occurred: (a) the Court has entered an order granting final approval of the Settlement in accordance with the terms of this Agreement; (b) the time for any challenge to the Settlement, both in the Court and on appeal, has lapsed; and (c) the Settlement has become final, either because no timely challenge was made to it or because any timely challenge has been finally adjudicated and rejected. For purposes of this Section, an "appeal" shall not include any appeal that concerns solely the issue of Class Counsel's request for attorneys' fees or costs, Administration and Notice Expenses, and/or Service Awards to the Class Representatives.

3.16 "Fairness Hearing" means the final hearing, to be held on or about March 28, 2018 or as soon thereafter as practicable, (a) to determine whether to grant final approval to (i) the certification of the Settlement Class, (ii) the designation of the Class Representatives as the representatives of the Settlement Class, (iii) the designation of Class Counsel as counsel for

the Settlement Class, and (iv) the Settlement; (b) to rule on Class Counsel's Fee Application; and (c) to consider whether to enter the Final Approval Order.

3.17    "FAQ" means the proposed Frequently Asked Questions and Answers form to be approved by the Court as part of the Preliminary Approval Order and posted on the Settlement Website in accordance with this Agreement.   In addition, the FAQ form will be mailed or emailed to Class Members who contact the Settlement Administrator by telephone or email and request a Claim Form.

3.18    "Fee Application" means the application to be filed by Class Counsel no later than January 31, 2018 by which they will seek an award to be paid by Defendants of attorneys' fees and reimbursement of costs incurred by them in prosecuting the Lawsuit, as well as Service Awards to be paid to the Class Representatives and reimbursement by Defendants for Administration and Notice Expenses.

3.19    "Final Approval Order" means the proposed Order Granting Final Approval to the Class Action Settlement and Entry of Final Judgment, to be entered by the Court following the Fairness Hearing.

3.20    "Gift Card" means an electronic gift card subject to the terms and conditions set forth in Section 6.4 below.

3.21    "Lawsuit" means the case captioned *Vicki Linneman, et al. v. Vita-Mix Corporation, et al.*, Civil Action No. 1:15-cv-00748, pending in the United States District Court for the Southern District of Ohio, Western Division.

3.22    "Named Plaintiffs" means Vicki A. Linneman and Obadiah N. Ritchey.

3.23    "Notice of Claim Denial" means the form that the Settlement Administrator will send, by first-class United States Mail or electronic mail, to each Person who has submitted a Claim Form that the Settlement Administrator has determined not to be a Valid Claim.

3.24    "Notice Date" means the Court-ordered deadline by which the Settlement Administrator and any third parties must complete the mailing or emailing of Settlement Notice to Class Members, which shall be no later than February 6, 2018.  The Settlement Administrator shall begin issuing notice on January 2, 2018.

3.25    "Notice Plan" means the plan for providing Settlement Notice to members of the Class, as set forth in Section VII of this Agreement.

3.26    "Objection Deadline" means the Court-ordered deadline by which members of the Settlement Class must file any written objection or opposition to this Agreement or any part or provision of this Agreement, as set forth in Section VIII, which shall be March 7, 2018.

3.27    "Opt-Out Request" means a valid written request submitted to the Settlement Administrator, pursuant to the provisions of Section VIII of this Agreement, indicating that the Class Member wishes to be excluded from the Settlement.

3.28    "Opt-Out Request Deadline" means the Court-ordered deadline by which members of the Settlement Class must postmark and mail, or electronically deliver, an Opt-Out Request pursuant to the provisions of Section VIII of this Agreement, which shall be March 7, 2018.

3.29    "Parties" means the parties to this Agreement, Plaintiffs and Defendants.

3.30    "Person" means any natural person, including his or her beneficiaries, heirs, assigns, or executors, or any legal entity, including its predecessors, successors, affiliates, or assigns.

3.31    "Plaintiffs" means the Named Plaintiffs asserting claims in the Lawsuit, Vicki A. Linneman and Obadiah N. Ritchey, as well as Class Members.

3.32    "Plaintiffs' Counsel" shall mean all Plaintiffs' attorneys of record in the Lawsuit, as well as all Plaintiffs' attorneys who timely submit contemporaneous time or expense records to the Court.

3.33    "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval to Class Action Settlement, to be entered by the Court.

3.34    "Pre-Paid Packing Slip" means a pre-paid packing slip pre-addressed for delivery to Vita-Mix to be provided to those Class Members who file a Valid Claim for a Replacement Blade Assembly for a household blender.  The Pre-Paid Packing Slip will cover the cost of shipping and packaging to enable the Class Member to ship his or her existing container to Vita-Mix.  Packaging options will be provided to Class Members who select a Replacement Blade Assembly.

3.35    "Protective Order" means the Agreed Protective Order entered by the Court on April 6, 2016 in the Lawsuit.

3.36    "Publication Notice" means the proposed notice, using the language of the Settlement Notice to the extent practicable, which is subject to approval by the Court as part of the Preliminary Approval Order and which will be published in accordance with the Notice Plan set forth in Section VII of this Agreement.

3.37    "Released Claims" means, as to Plaintiffs, all claims released under the release and waiver set forth in Section XI of this Agreement.

3.38    "Released Parties" means (a) Defendants; and (b) each of their respective past, present, and future officers, directors, agents, representatives, servants, employees, attorneys, and insurers.

3.39    "Releasing Parties" means Plaintiffs and each of their respective heirs, executors, representatives, agents, assigns, and successors.

3.40    "Replacement Blade Assembly" means a blade assembly containing a Replacement Seal.  A Replacement Blade Assembly does not include a container, lid, or anything else for use with a Vita-Mix blender.

3.41    "Replacement Seal" means a blade assembly top seal employing different materials and technology from the seal incorporated into Vita-Mix household and commercial blenders beginning in January 2007.  Independent testing indicates that the Replacement Seal does not produce the black flecks that prompted the Lawsuit.  In the case of household blenders, the Replacement Seal was used in all blenders manufactured or remanufactured on or after October 1, 2016.  In the case of new commercial blenders (other than the XL product line), the Replacement Seal was used in all blenders manufactured on or after August 9, 2016.  In the case of new commercial blenders in the XL product line, the Replacement Seal was used in all blenders manufactured on or after April 4, 2017.

3.42    "Service Award" means a reasonable payment, subject to Court approval, made to each of the Named Plaintiffs to compensate for his or her efforts in pursuing the Lawsuit.

3.43    "Settled Class Claims" means the claims brought by the Named Plaintiffs and on behalf of the Class included in this Settlement, including (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) negligent design, engineering, and manufacture, (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract;

(7) violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.02 *et seq.*); and (8) violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*), as well as such other claims that could have been brought or joined to those in the Lawsuit, except for personal injury claims other than those specifically identified in Section 11.2.

3.44    "Settlement" means the settlement provided for in this Agreement.

3.45    "Settlement Administrator" means JND Legal Administration ("JND"), upon approval by the Court.

3.46    "Settlement Class" means Class Representatives and the Class.

3.47    "Settlement Notice" means the proposed forms of notice or such other forms as may be approved by the Court, which inform the Class Members of (a) the certification of the Class for Settlement purposes; (b) the date and location of the Fairness Hearing; and (c) the elements of the Settlement Agreement—all in accordance with Section VII of this Agreement.

3.48    "Settlement Website" means a website created by the Settlement Administrator to facilitate notice, the making of claims, and for other administrative purposes related to the Settlement, as detailed in Section VII of this Agreement.

3.49    "Settling Parties" means, collectively, Plaintiffs and Defendants.

3.50    "Short Form Settlement Notice" means an abbreviated version of the Settlement Notice to be delivered as a postcard, using the language of the Settlement Notice to the extent practicable, which is subject to approval by the Court as part of the Preliminary Approval Order.

3.51    "Third-Party Claims" means any case, lawsuit, or other claim that Defendants may bring, formally or informally, against any supplier or other Person seeking indemnification, contribution, or recovery on another theory or based on other causes of action related to the subject matter of the Lawsuit.

3.52    "Valid Claim" means a Claim Form that (a) is timely submitted by a Class Member in accordance with the requirements of the Preliminary Approval Order, (b) is signed by that Class Member with a certification that the information is true and correct to the best of the Class Member's knowledge and recollection, (c) contains one or more valid serial numbers for a Vita-Mix blender, (d) is not fraudulent, and (e) contains all of the attestations, certifications, information, and documentation required for that Class Member to be eligible to receive one or more of the benefits provided in Section VI of this Agreement.  In the event that the same valid serial number is submitted by multiple Claimants, only the most recent owner of the blender associated with that serial number shall be treated as having a Valid Claim.  If it is not possible to determine the most recent owner conclusively after expending reasonable efforts to do so, then the Settlement Administrator shall use its judgment and treat only one Claimant as having a Valid Claim.

3.53    "Vita-Mix" means Defendants.

3.54    "Vita-Mix Store" means a Vita-Mix retail store owned and operated by Vita-Mix. As of the date of this Agreement, the only Vita-Mix Store is located at 6134 Kruse Drive, Solon, Ohio.

## IV.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

4.1    For the purposes of implementing this Agreement and the Settlement, and for no other purpose, Defendants will not oppose the conditional certification of the Settlement Class on a nationwide basis.  If for any reason this Agreement should fail to become effective, Defendants' lack of opposition to certification of the nationwide Settlement Class shall be null and void, and the Parties shall return to their respective positions in the Lawsuit as those positions existed immediately before the execution of this Agreement.

4.2     If for any reason this Agreement should fail to become effective, neither this Agreement nor any document referred to in, or incorporated into, it is or may be construed as an admission by Defendants of any fault, wrongdoing, or liability whatsoever.  Nor should the Agreement be construed as an admission that any of the Named Plaintiffs can serve as adequate class representatives, other than for settlement purposes, or that certification of any class is proper or permissible.

## V.     REQUIRED EVENTS:  PRELIMINARY AND FINAL APPROVAL

5.1     By September 26, 2017, Plaintiffs shall file with the Court a motion seeking entry of the Preliminary Approval Order, which shall:

a.     Preliminarily approve the Settlement and this Agreement as fair, adequate, and reasonable to the Settlement Class;

b.     Conditionally certify the Settlement Class as a nationwide class for the purpose of effecting the Settlement;

c.     Designate the Class Representatives as the representatives of the Settlement Class;

d.     Designate Class Counsel as counsel for the Settlement Class;

e.     Designate JND as the Settlement Administrator and instruct the Settlement Administrator to perform the following functions in accordance with the terms of this Agreement, the Notice Plan, the Preliminary Approval Order, and the Final Approval Order:

i.     No earlier than January 2, 2018, begin disseminating the various Settlement Notices pursuant to the Notice Plan, substantially in the

forms provided in Section VII and, to the extent applicable and practicable;

ii.     No earlier than January 2, 2018, establish the Settlement Website with information the Parties jointly agree to post concerning the nature of the case and the status of the Settlement, including relevant pleadings as available such as the Complaint, papers in support of preliminary and final approval of the Settlement, and Class Counsel's Fee Application, plus relevant orders of the Court. This shall be accomplished before or concurrently with emailing or mailing the Settlement Notice or publishing Publication Notice;

iii.     No earlier than January 2, 2018, establish a toll-free telephone number that Class Members can call to request electronic or hard copies of the Claim Forms and FAQ be sent to them and to obtain additional information regarding the Settlement. This shall be accomplished before or concurrently with emailing or mailing the Settlement Notice or publishing Publication Notice;

iv.     Beginning January 2, 2018, effect Publication Notice (by traditional and social media) for the Settlement Class in the form and pursuant to the Notice Plan to which the Parties agree;

v.     By October 19, 2018, receive, evaluate, and either approve as meeting the requirements of this Agreement or disapprove as failing to meet those requirements the Claim Forms submitted by Claimants;

vi.    By October 19, 2018, send, by first-class United States Mail or email, to each Person who has submitted a Claim Form that the Settlement Administrator has determined not to be a Valid Claim, and which has not been challenged by Class Counsel, a Notice of Claim Denial. Such a person shall have thirty (30) days from the date of transmission of a Notice of Claim Denial to cure the reason for any denial;

vii.    By November 12, 2018, provide to Defendants and Class Counsel the information set forth in Section 8.2, including: (a) a list of the names, addresses, email addresses, and other contact information of all Class Members who have submitted Claim Forms and whose Claim Forms the Settlement Administrator has determined to be Valid Claims, separately identified by category of settlement benefit to be paid; and (b) a separate list of the names addresses, email addresses, and other contact information of all Persons who have submitted Claim Forms and whose Claim Forms the Settlement Administrator has determined not to be Valid Claims, including the reason each Claim was rejected;

viii.    Process requests for exclusion from the Settlement in accordance with Section VIII of this Agreement;

ix.    Process objections to the Settlement in accordance with Section VIII of this Agreement; and

x. No later than twenty (20) days before the Fairness Hearing, provide to the Court, Defendants, and Class Counsel a statement, under penalty of perjury, declaring: (a) that it has accomplished the relevant requirements of Section 5.1(e); (b) the total number of claims submitted (in total and by category of benefit); (c) the total number of requests for exclusion received; (d) the total number of objections received; and (e) the total number of claims adjudicated as Valid Claims (in total and by category of benefit); and the total number of claims adjudicated not to be Valid Claims.

f. Approve the Notice Plan and CAFA Notice, including the form, contents, and methods of notice to be given to the Class and the Settlement Class as set forth in Section VII of this Agreement, and direct the Settlement Administrator to provide, and cause to be provided, CAFA Notice and to file with the Court a declaration of compliance with the Notice Plan set forth in Section VII of this Agreement (including the statement from the Settlement Administrator referenced in Section 5.1(e)(x));

g. Establish procedures and schedule deadlines for Class Members to object to the Settlement or certification of the Settlement Class, to exclude themselves from the Settlement, and to submit Claim Forms to the Settlement Administrator, all consistent with Sections VI and VIII of this Agreement; and

h. Schedule deadlines for the filing of: (i) papers in support of final approval of the Settlement, the certification of the Settlement Class, the designation

of the Class Representatives as representatives of the Settlement Class, and the appointment of Class Counsel as counsel for the Settlement Class; (ii) Class Counsel's Fee Application; and (iii) objections to the Settlement, certification of the Settlement Class, to the designation of the Class Representatives as the representatives of the Settlement Class, or to the appointment of Class Counsel as counsel for the Settlement Class.

5.2    The deadlines established in the Preliminary Approval Order are:

a.    January 2, 2018:  the Settlement Administrator shall mail and email the initial Settlement Notices as required by Section 7.3.  The Settlement Administrator may also provide additional notice as provided by Section 7.3(d)(i) below.

b.    January 31, 2018:  Class Counsel shall file their Fee Application.

c.    January 31, 2018:  Class Counsel shall file the proposed Final Approval Order and memorandum in support of Final Approval.

d.    March 7, 2018:  any Class Member shall file objections with the Court and serve that filing on Class Counsel and Defendants.  Objections must be in writing and must contain the following information:

i.    the full name, address, telephone number, and email address of the objector;

ii.    the serial number(s) for the objector's blender(s);

iii.    a written statement of all grounds for the objection accompanied by any legal support for such objection;

iv.      copies of any papers, briefs, or other documents on which the objection is based;

v.      a list of all cases in which the objector and/or objector's counsel have filed or in any way participated in, financially or otherwise, any objection to a class action settlement in the preceding five years;

vi.      the name, address, email address, and telephone number of all attorneys representing the objector;

vii.      a statement indicating whether the objector and/or the objector's counsel intends to appear at the Fairness Hearing and, if so, a list of all persons, if any, who will be called to testify in support of the objection; and,

viii.      the objector's signature.

This Section applies to all objections, including to certification of the Settlement Class, the designation of the Class Representatives, the appointment of Class Counsel, the Settlement, this Agreement, or Class Counsel's Fee Application.

e.      March 7, 2018:  requests by Class Members to be excluded from the Settlement must be either postmarked by the United States Postal Service (in the case of mailed exclusions) or actually received by the Settlement Administrator (in the case of electronically submitted exclusions).  The Settlement Administrator must file a list of all exclusions (including Class

Members submitting Opt-Out Requests and those objecting) with the Court no later than twenty (20) days before the Fairness Hearing.

f.  March 7:  any Person or attorney seeking to appear at the Fairness Hearing must file with the Court and serve on Class Counsel and Defendants an entry of appearance in the Lawsuit and notice of intention to appear at the Fairness Hearing.  This includes any person objecting to any or all of certification of the Settlement Class, designation of Class Representatives, appointment of Class Counsel, the Settlement, the Agreement, or Class Counsel's Fee Application.

g.  No later than twenty (20) days before the Fairness Hearing:  the Settlement Administrator shall file with the Court a declaration of compliance with the notice requirements set forth in Section VII of this Agreement.

h.  March 14, 2018:  Class Counsel shall file their reply, if any, in support of their Fee Application, in support of the Settlement, and in response to any objections.

i.  September 28, 2018:  Claims Deadline for all Class Members.  All claims must be postmarked (in the case of mailed Claims Forms) or actually received (in the case of electronic Claims Forms) by this date.  Claims received after this date shall not be Valid Claims.

5.3  Defendants may file a memorandum in support of the motion seeking entry of the Preliminary Approval Order.

5.4    At the Fairness Hearing, the Parties will jointly request the Court to enter the Final Approval Order that:

a.    Grants final approval of the certification of the Settlement Class;

b.    Designates the Class Representatives as the representative of the Settlement Class and Class Counsel as counsel for the Settlement Class;

c.    Grants final approval of the Settlement and this Agreement as fair, reasonable, and adequate to the Settlement Class;

d.    Provides for the release of all Released Claims and enjoins Class Members from asserting, filing, maintaining, or prosecuting any of the Released Claims in the future;

e.    Orders the dismissal with prejudice of all claims alleged in the Lawsuit, and incorporates the releases and covenant not to sue stated in this Agreement, with each of the Parties to bear its, his, or her own costs and attorney fees, except as provided in Section X below;

f.    Authorizes Defendants to honor Valid Claims approved by the Settlement Administrator as Valid Claims, or otherwise reviewed by Class Counsel and counsel for Defendants and determined to be Valid Claims; and

g.    Preserves the Court's continuing jurisdiction over the administration of the Settlement and enforcement of this Agreement.

5.5    In addition, at the Fairness Hearing, Class Counsel will move the Court for entry of a separate order approving:  (a) Service Awards; and (b) Attorneys' Fees and Expenses to Class Counsel in an amount to be determined by the Court consistent with the terms of this Agreement.  Subject to the Parties' right to appeal, Defendants shall pay any such amounts

within ten (10) business days following the Effective Date or following the entry of a final, non-appealable order relating to Service Awards or to Attorneys' Fees and Expenses, whichever is later.

5.6     As soon as practicable after execution of this Agreement, the Parties shall file in the Lawsuit a stipulated motion, proposed stipulated order, or other filing to stay the Lawsuit.

5.7     This Agreement will not be finalized or submitted to the Court for approval without the consent of and execution by the Named Plaintiffs and Defendants.

5.8     Named Plaintiffs, Class Counsel, and Defendants will cooperate and make their best efforts to secure preliminary and final approval for and to effectuate the Settlement, including cooperating in drafting the documents necessary for preliminary and final approval and securing the prompt, complete, and final dismissal, with prejudice, of the Lawsuit. If the Court fails to enter either the Preliminary Approval Order or the Final Approval Order, Plaintiffs, Class Counsel, and Defendants will use all reasonable efforts that are consistent with this Agreement to cure any defect identified by the Court. If, despite such efforts, the Court does not enter the Preliminary Approval Order or Final Approval Order, the Parties will return to their positions in the Lawsuit as they were immediately prior to the execution of this Settlement Agreement and confer on a revised schedule for the completion of fact and expert discovery and class certification.

5.9     If an appeal results in an order materially modifying, setting aside, or vacating this Agreement in whole or in part, with the exception of any order that relates to the amount of Attorneys' Fees and Expenses to be paid to Class Counsel or the amount of any Service Awards to the Named Plaintiffs, each Party adversely affected by such order shall have the right at its sole discretion to treat the order as an event permanently preventing entry of a Final Approval

Order.  To exercise this right, the Party must inform the other Party and the Settlement Administrator, in writing, of the exercise of this right within ten (10) days after any order modifying, setting aside, or vacating this Agreement in whole or in part becomes final and non-appealable.

## VI.  BENEFITS AVAILABLE TO MEMBERS OF THE SETTLEMENT CLASS

6.1     To qualify for any benefits under this Agreement, a Claimant must timely submit to the Settlement Administrator a properly completed Claim Form, including the serial number(s) for the Vita-Mix blender(s) that make(s) the Claimant a Class Member.   Any Claimant who does not provide a valid serial number is not entitled to any benefits pursuant to this Agreement.  In addition, Class Members must certify that they own the Vita-Mix blender(s) that make(s) them Class Members and confirm their names, company names (if applicable), addresses, telephone numbers, and email addresses.  Class members who select the Gift Card option on the Claim Form will also be required to provide their blade assembly date(s), to the extent determinable.  As to Class Members not described in Section 3.8(a), proof of purchase showing the purchase date(s) of their Vita-Mix blender(s) will be required.   All of the information provided to the Settlement Administrator pursuant to this Section shall be provided to Class Counsel and Defendants, if requested.

6.2     Class Members will be able to submit claims by mail or electronically through the Settlement Website.  The Settlement Administrator shall prepopulate the online Claim Form with all relevant information, such as name, address, email, and model and serial numbers, that is readily accessible.  Class Members may edit or change prepopulated information if it is incorrect and enter additional serial numbers for each Vita-Mix blender they own.   The Settlement

Administrator will provide Defendants with any updated or corrected information from Class Members.

6.3     Class Members who timely submit a Valid Claim are eligible for one of the separate benefits described below, depending on their circumstances:

       a.     Class Members described in Section 3.8(a) above may select either:  (i) a Gift Card subject to the terms and conditions set forth in Section 6.4 below; or (ii) a Replacement Blade Assembly subject to the terms and conditions set forth in Section 6.5 below; or

       b.     All other Class Members described in Section 3.8 are eligible for a Replacement Blade Assembly subject to the terms and conditions set forth in Section 6.5 below.

6.4     Gift Cards selected under this Agreement are subject to the following terms and conditions:

       a.     Each Gift Card will be issued in the face amount of $70, except as described in Section 6.4(b) below.

       b.     Class Members described in Section 3.8(a) above who own multiple blenders within their household or at the same address are eligible for a Gift Card in the face amount of $140.

       c.     Defendants together with the Settlement Administrator will design electronic Gift Cards.  Class Counsel will review and approve the form of Gift Card before they are provided to any Class Member.  Class Counsel's approval will not be unreasonably withheld.

     d.      Each Gift Card will include a unique authorization code identifying the Gift Card as valid.

     e.      Each Gift Card or unique authorization code may be used one time for or toward the purchase of any Vita-Mix blender or container. Any unused amount will be forfeited and will not be refunded or credited to the user or any account affiliated with the user.

     f.      Gift Cards may only be used at the Vita-Mix website (www.vitamix.com) or any Vita-Mix Store.

     g.      Gift Cards are transferable, have no expiration date, and may be used in connection with any promotion. However, no more than two (2) Gift Cards each with a face amount of $70 or one (1) Gift Card with a face amount of $140 may be used in a single transaction or by a single household or address.

     h.      Within sixty (60) days of the Effective Date, Defendants will directly deliver by mail or electronic mail Gift Cards to Class Members who selected them as a benefit and who submit Valid Claims.

6.5     Replacement Blade Assemblies selected pursuant to this Agreement are subject to the following terms and conditions:

     a.      To be eligible for a Replacement Blade Assembly, a Class Member must certify, by checking the appropriate box on the Claim Form, that the Class Member experienced or is concerned about the black flecks at issue in the Lawsuit. This certification shall be substantially in the following form:

"By checking this box, I certify that I experienced or am concerned about black flecks when using my Vita-Mix container and that I have not received a replacement container or blade assembly with a new seal that does not fleck."

Additionally, to assist Class Members in making this certification, the Claim Form may include the relevant dates when seals that do not fleck were commercially available.

b. After the Effective Date, and pursuant to the schedule and queuing system described below:

ix. Defendants will issue Class Members described in Section 3.8(a) above a Pre-Paid Packing Slip for standard ground shipping of their household blender container(s) to Vita-Mix. Class Members will have the option of providing their own packaging or using another packaging option provided by Vita-Mix at Defendants' cost. Upon receipt of a Class Member's container, Vita-Mix will install a Replacement Blade Assembly in the container provided by the Class Member, then ship the same container back to the Class Member on the schedule described in Section 6.5.b.xi below. Defendants will make commercially reasonable efforts to supply Class Members with Replacement Blade Assemblies in their original household container pursuant to this provision within ten (10) business days, determined from the date on which Vita-Mix receives a Class Member's container.

x.    The Settlement Administrator will supply Defendants with shipping information for Class Members described in Section 3.8, other than those described in Section 3.8(a) above.  Following the Effective Date, Defendants will deliver to these Class Members a Replacement Blade Assembly pursuant to the schedule described in Section 6.5.b.xi below.  Defendants will have no obligation to deliver more than two (2) Replacement Blade Assemblies to the same Person or address pursuant to this Section.

xi.    Within thirty (30) days following Final Approval, Defendants will develop a schedule and a queuing system to supply Replacement Blade Assemblies to Class Members.  This schedule and queuing system will identify a reasonable number of Replacement Blade Assemblies for Vita-Mix to install or ship per week that will not unduly burden or interfere with Defendants' business.  With respect to Section 6.5.b.ix, this schedule and queuing system will seek to minimize the time any Class Member is unable to use his or her Vita-Mix household blender.  In no case will Defendants have an obligation or requirement to install or process for shipment a number of Replacement Blade Assemblies in excess of the number in the schedule and queuing system described in this Section.  Class Counsel will review and approve this schedule and queuing system before it is provided to the Settlement

Administrator. Class Counsel's approval will not be unreasonably withheld.

6.6     No Class Member who receives a Replacement Blade Assembly or a Replacement Seal, whether pursuant to this Agreement or otherwise, may receive any other benefit under this Agreement with respect to the blender for which the Class Member received a Replacement Blade Assembly or a Replacement Seal.

6.7     If any Class Member who selects a Replacement Blade Assembly pursuant to Section 6.5 above contacts Vita-Mix directly and requests immediate delivery of such benefit without waiting for the Effective Date, then Defendants may provide a Replacement Blade Assembly before the Effective Date and so notify the Settlement Administrator, but the Class Member otherwise remains a part of the Class for all purposes.

6.8     The provisions of Section VI of this Agreement are subject to reasonable anti-fraud measures that Defendants may deliver to the Settlement Administrator, in addition to those that the Settlement Administrator may otherwise employ. Class Counsel will review and approve any such anti-fraud measure before Defendants provide them to the Settlement Administrator. Class Counsel's approval will not be unreasonably withheld.

6.9     All Class Members shall be required to mail, email, or submit electronically to the Settlement Administrator their completed Claim Form, including valid serial number(s) for a Vita-Mix blender that does not have a container with a Replacement Blade Assembly or Replacement Seal by the Claims Deadline. A Claim Form postmarked or electronically transmitted on or before the Claims Deadline will be treated as timely. Any Claim Form not submitted by the Claims Deadline is not a Valid Claim under the Settlement or this Agreement unless the Class Member submitting the Claim Form can establish excusable neglect.

## VII. SETTLEMENT NOTICE AND NOTICE PLAN

7.1     All decisions regarding notice and settlement administration shall be made jointly between Defendants and Class Counsel except as otherwise set forth in this Agreement. The Parties and their counsel agree to cooperate in good faith in the notice and settlement administration process and to make reasonable efforts to control and minimize the costs and expenses as well as business disruption incurred in providing notice and in the execution and administration of the terms of this Settlement Agreement.

7.2     Class Counsel and counsel for Defendants shall have the ability to communicate with the Settlement Administrator without the need to include each other in each of those communications. Disputes, if any, shall be resolved by the Court. This includes any disputes over whether a particular Class Member is entitled to a particular benefit under Section VI of this Agreement.

7.3     On January 2, 2018:

   a.     The Settlement Administrator shall begin sending or causing to be disseminated a copy of the Short Form Settlement Notice to every Class Member who reasonably can be identified in the records of (i) third parties, such as retailers, dealers, distributors, or restaurant supply stores pursuant to the procedures set forth in Section 7.3(d) below, or (ii) Vita-Mix, including Persons who directly purchased a household blender from Vita-Mix (Class Members described in Section 3.8(a) above) or registered their blender(s) with Vita-Mix.

   b.     To the extent practicable, the Settlement Administrator shall send or cause to be sent a copy of the Settlement Notice by electronic mail, or another

electronic means of personal contact, to every Class Member whose email address or other electronic contact information Defendants can reasonably identify in their records or third parties such as retailers, dealers, distributors, or restaurant supply stores provide. If the Settlement Administrator can identify more email addresses or other electronic contact information for Class Members by performing an email address lookup or similar exercise, the Settlement Administrator may include such costs in the Administration and Notice Expenses so long as Defendants and Class Counsel authorize such a search in advance. Any such electronic mail addresses are subject to the provisions of Section 8.2 below. For all other Class Members for whom or which a mailing address, but no email address or other electronic means of contact, can reasonably be identified, the Settlement Administrator shall send or cause to be sent a copy of the Settlement Notice by U.S. mail.

c.      The Settlement Administrator will forward Short Form Settlement Notices or Settlement Notices that are returned by the U.S. Postal Service or electronically with a forwarding address to the Class Member. For Settlement Notices returned as undeliverable, the Settlement Administrator shall make reasonable effort to determine a proper electronic mail address, other electronic contact information, or mailing address, and re-send the Short Form Settlement Notice. All costs related to this process shall be included in the Administration and Notice Expenses so long as the Defendants and Class Counsel authorize such

work in advance. The Claims Deadline shall not be extended for any Person whose initial Claim Form is returned for any reason.

d.   With respect to third parties, the Parties will agree to an order to be entered by the Court directing third parties either to:

i.   Deliver to the Settlement Administrator their respective customer lists identifying Class Members and the names, company names (if applicable), addresses, telephone numbers, email addresses, purchase dates, and—to the extent the third party has them—serial numbers and blade assembly dates for the Vita-Mix blenders of Class Members. The Settlement Administrator shall treat a customer list provided to it pursuant to this Section as Confidential under the Protective Order entered by the Court on April 6, 2016 and the appropriate employees of the Settlement Administrator shall sign Exhibit A to the Protective Order; or

ii.   Provide the Short Form Settlement Notice to Class Members on their respective customer lists. If requested, the Settlement Administrator shall reimburse a third party for the reasonable cost of providing this notice and include such amount in the Administration and Notice Expenses. No later than February 8, 2018, any third party providing Settlement Notice under this Section shall certify that it has done so by filing with the Court a declaration pursuant to 28 U.S.C. § 1746 substantially in a form to be approved by the Court as part of the Preliminary Approval

Order. Nothing in this Section obligates payment for any third party's compliance costs other than the cost of postage at no greater than the U.S. Postal Service's applicable rate for marketing mail.

iii. Class Counsel will serve the order on third parties and take reasonable steps to ensure timely compliance by third parties to allow a reasonable amount of time for Class Members to submit a Claim Form before the Claims Deadline. Noncooperation by a third party or late notice by a third party is not good cause to adjust the Claims Deadline or to treat any untimely claim as a Valid Claim.

e. Within sixty (60) days of the entry of the Preliminary Approval Order, Defendants will provide the Settlement Administrator with electronic data containing the contact information Defendants have for Class Members, indicating the benefit for which each Class Member is eligible pursuant to Section VI of this Agreement. Defendants will provide this information in its native format, unless Defendants and the Settlement Administrator agree on another format to facilitate providing Settlement Notice. The Settlement Administrator will maintain the information and data provided to it by Defendants pursuant to this provision as Confidential under the terms of the Protective Order and the appropriate employees of the Settlement Administrator shall sign Exhibit A to the Protective Order.

      f.      The Settlement Administrator will provide Defendants with any updated or corrected information from Class Members learned in administering this Notice Plan or the Claim Forms of Class Members.

7.4     At approximately the same time the Settlement Administrator mails and emails the Settlement Notice, the Settlement Administrator shall provide Publication Notice to the Class Members pursuant to the Notice Plan.

7.5     To facilitate the efficient administration of this Settlement, and to promote the provision of benefits pursuant to this Settlement, the Settlement Administrator will establish a Settlement Website that enables Class Members to:

      a.      Read the Settlement Notice and FAQ;

      b.      Complete, review, and submit a Claim Form online.  Doing so shall include the ability for Class Members to electronically upload and submit documents supporting their Claim Form;

      c.      Print the completed Claim Form for signature by the Class Member and mailing to the Settlement Administrator along with any required documentary support; and

      d.      View a toll-free telephone number Class Members may call to obtain general information about the Settlement and this Agreement.

7.6     The Settlement Administrator will not maintain the Claim Forms on the Settlement Website after the Claims Deadline passes.  The Settlement Administrator shall not maintain the Settlement Website after December 31, 2018.

7.7     At approximately the same time the Settlement Administrator mails and emails the Settlement Notice, through entry of the Final Approval Order, Vita-Mix will post the

Settlement Notice, FAQ, and Claim Forms on its website (www.vitamix.com), with a hyperlink to the Settlement Website. Vita-Mix will not maintain the Claim Forms on its website after the Claims Deadline has passed.

7.8     The Parties agree that the Settlement Notice, Short Form Settlement Notice, FAQ, Claim Forms, Publication Notice, and Settlement Website will provide information sufficient to inform Class Members of: (a) the essential terms of this Agreement; (b) appropriate means for obtaining additional information regarding the Agreement and the Lawsuit; (c) appropriate information about the procedure for objecting to or excluding themselves from the Settlement, if they should wish to do so; and (d) appropriate means for and information about submitting a claim for benefits pursuant to the Settlement. The Parties also agree that the dissemination of the Settlement Notice, Short Form Settlement Notice, and the FAQ in the manner specified in this Section VII satisfies the notice requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

7.9     Pursuant to this Agreement, Class Counsel will request the Court to approve, in the Preliminary Approval Order, the emailing and (to the extent email is unavailable or unsuccessful) direct mailing of the Short Form Settlement Notice and establishment of the Settlement Website, which will include the Settlement Notice, FAQ, and the Claim Forms, and the Publication Notice all as set forth above in this Section VII.

7.10     As soon as practicable, but no later than ten (10) days after Plaintiffs file this Agreement in the Court, the Settlement Administrator shall serve the CAFA Notice as required by the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715.

7.11     No later than the latest Claims Deadline, the Settlement Administrator shall file with the Court a declaration of compliance with this Notice Plan, including a statement of (a) the

number of Persons to whom the Class Notice was mailed and emailed for each source of records (*i.e.*, the number of Persons to whom the Class Notice was mailed or emailed identified in records provided by Vita-Mix and each third party providing records pursuant to this Section); and (b) the identity of each third party that opted to undertake notice and certify compliance pursuant to Section 7.3(d)(ii).

## VIII.  CLAIM ADMINISTRATION, EXCLUSION FROM THE SETTLEMENT CLASS, AND OBJECTIONS

8.1     In addition to providing to Class Members the benefits described in Section VI above, Defendants shall pay the Administration and Notice Expenses, including the cost of any Publication Notice required by law or this Agreement.  Defendants shall not be responsible for any cost that the Settlement Administrator may incur at the sole direction of Plaintiffs or Class Counsel in:  (a) responding to inquiries about the Agreement, the Settlement, or the Lawsuit; (b) defending the Agreement or the Settlement against any challenge to it; (c) defending against any challenge to any order or judgment entered pursuant to the Agreement, unless the Parties otherwise specifically agree in writing; or (d) performing any service, activity, or task not expressly provided for in this Agreement or in the Settlement Administrator's initial engagement letter, unless the Parties otherwise specifically agree to do so in writing or unless the Court orders otherwise.

8.2     By November 12, 2018, the Settlement Administrator will provide Defendants and Class Counsel with:  (a) for Class Members who have submitted Valid Claim Forms, a statement that includes the information set forth in Section 6.1 as well as the benefit selected by each Class Member; and (b) for Class Members who have submitted invalid or incomplete Claim Forms, the names, contact information, and as much of the information set forth in Section 6.1 as the Class Member provided.  By March 12, 2018, the Settlement Administrator will provide

Defendants and Class Counsel with the names, contact information, and other information submitted by Class Members who have submitted Opt-Out Requests, objections, or notices of intent to appear at the Fairness Hearing. The Settlement Administrator shall provide information pursuant to this Section in electronic form in its native format or another format agreed on with Defendants or Class Counsel, respectively.

8.3     The period for Class Members to submit Claim Forms will commence with the first date a Settlement Notice, Short Form Settlement Notice, or Publication Notice is provided to any Class Member and remain open until the Claims Deadline, which is September 28, 2018.

8.4     The Settlement Administrator will reject a Claim Form that does not include all information required to make the Claim Form a Valid Claim, including a blender's serial number and, in the case of Class Members not described in Section 3.8(a), proof of the date of purchase for the qualifying Vita-Mix commercial blenders. The Settlement Administrator will provide a Notice of Claim Denial, in a timely fashion and by the same means a Person submitted a Claim Form, to any Person who has not submitted a Valid Claim and will identify the reason(s) the Person has not submitted a Valid Claim. The Notice of Claim Denial will also notify such Persons that they have the right to have the Court review whether they have submitted a Valid Claim.

8.5     Any Person receiving a Notice of Claim Denial that his, her, or its Claim Form is not a Valid Claim who wishes to contest such denial must, within thirty (30) calendar days of the date of mailing or transmission of Notice of Claim Denial of a claim by the Settlement Administrator as described in Section 8.4 above, submit to the Settlement Administrator a statement of the reasons contesting the grounds for the rejection of his, her, or its claim. If a Person provides this required statement to the Settlement Administrator and the dispute about

whether the Person has submitted a Valid Claim cannot otherwise be resolved, Class Counsel shall present the issue for review by the Court after certifying that Class Counsel, Defendants, and the Settlement Administrator have personally conferred and disagree about whether the claim is a Valid Claim.

8.6     No later than twenty (20) days before the Fairness Hearing, the Settlement Administrator will provide to Defendants and Class Counsel a statement of the number of Valid Claims submitted at that point by Class Members, identifying the benefit selected.  On request, the Settlement Administrator will provide particular Claim Forms and Opt-Out Requests.  By the same deadline, the Settlement Administrator shall provide Defendants and Class Counsel with an accounting detailing the Administration and Notice Expenses incurred.   The Settlement Administrator shall provide information pursuant to this Section in electronic form in its native format or another format agreed on with Defendants or Class Counsel, respectively.

8.7     If Defendants determine that a member of the Settlement Class, approved by the Settlement Administrator, does not qualify for the benefit selected pursuant to this Agreement, Defendants shall notify Class Counsel of such determination and the reasons for such determination by October 19, 2018.  If Class Counsel and Defendants cannot agree on whether a claim is a Valid Claim, then no later than seven (7) days after Defendants notify Class Counsel, the Settlement Administrator shall promptly notify the member of the Settlement Class by serving a Notice of Claim Denial, subject to the provisions of Sections 8.4 and 8.5 above.  All Notices of Claim Denial must be delivered by October 30, 2018.

8.8     In determining whether a Person has submitted a Valid Claim, the Settlement Administrator is strictly bound by the terms of this Agreement.  If Defendants or Class Counsel contend that the Settlement Administrator is not acting in accordance with the terms of this

Agreement, including in the determination of Valid Claims, then such Settling Party will meet and confer with counsel for the other Settling Party and, if necessary, with the Settlement Administrator, the Court, or both. After the exhaustion of reasonable efforts to resolve any such dispute informally, a Settling Party may bring an appropriate motion before the Court.

8.9     By December 3, 2018, Class Counsel shall apply to the Court for an order approving or denying the Settlement Administrator's administrative determinations concerning the acceptance and rejection of Valid Claims and approving the Settlement Administrator's Administration and Notice Expenses.

8.10    All proceedings with respect to the administration, processing, and determination of claims described in this Agreement and the determination of all cases or controversies relating thereto, including disputed questions of law and fact with respect to whether any claim is a Valid Claim, are subject to the jurisdiction of the Court. All persons interested in such determinations submit to the personal jurisdiction of the Court.

8.11    <u>Opt-Out Requests</u>. Class Members other than the Class Representatives may opt out of the Settlement by submitting an Opt-Out Request to the Settlement Administrator no later than March 7, 2018. To be valid, an Opt-Out Request must contain the name, company name (if applicable), address, email address, telephone number, serial number(s), and in the case of Class Members not described in Section 3.8(a) proof of the date of purchase for the Class Member's qualifying Vita-Mix blender(s). Each Class Member seeking exclusion from the Settlement must personally sign the Opt-Out Request. No Opt-Out Request may be signed electronically. No Class Member may opt out by a request signed by an actual or purported agent or attorney acting on behalf of a group of Class Members. No Opt-Out Request may be made on behalf of a group of Class Members. Class Members who do not submit a timely, personally signed, valid Opt-

Out Request will be bound by the Settlement and this Agreement, including the release of Released Claims. Class Members who timely submit a valid, personally signed Opt-Out Request will have no further role in this Settlement and will not be bound by this Agreement; accordingly, such Class Members will not be permitted to assert an objection to the Settlement or this Agreement and will receive no benefit described in Section VI of this Agreement. The Settlement Notice, the Short Form Settlement Notice, the FAQ, and the Publication Notice will advise Class Members of their ability to opt out of the Settlement and of the consequences of opting out of the Settlement. Neither the Parties nor their counsel will solicit any Class Member to submit an Opt-Out Request.

8.12    The Settlement Administrator will correspond with Class Members who timely submit both an Opt-Out Request and a Claim Form to clarify the Class Member's intent. The Settlement Administrator's correspondence will state that, unless the Class Member clarifies that he, she, or it intends to opt out of the Settlement within seven (7) days, the Class Member will be deemed to have submitted a Valid Claim.

8.13    <u>Objections</u>. Class Members, except for Named Plaintiffs, will have until March 7, 2018 to file an objection to the Settlement. Only Class Members who have not submitted an Opt-Out Request to the Settlement Administrator may object to the Settlement. To object, a Class Member must timely file with the Court a written objection and a notice of intent to appear at the Fairness Hearing, if the objector chooses to appear at the Fairness Hearing. The filing date of any written objection will be the exclusive means for determining the timeliness of an objection. The Settlement Notice, the Short Form Settlement Notice, the FAQ, the Publication Notice, and the Preliminary Approval Order will set forth the procedures for submitting an objection. A written objection must state:  (a) the full name, address, telephone number, and

email address of the objector; (b) the serial number(s) for the objector's blender(s); and (c) a written statement of all grounds for the objection accompanied by any legal support for such objection; (d) copies of any papers, briefs, or other documents on which the objection is based; (e) a list of all cases in which the objector and/or objector's counsel had filed or in any way participated in—financially or otherwise—objection to a class action settlement in the preceding five years; (f) the name, address, email address, and telephone number of all attorneys representing the objector; (g) a statement indicating whether the objector and/or the objector's counsel intends to appear at the Fairness Hearing, and, if so, a list of all persons, if any, who will be called to testify in support of the objection; and (h) the objector's signature. Class Members who fail to make objections in the manner specified in this Section will be deemed to have waived any objections and will be foreclosed from making any objection to the Settlement or this Agreement (whether by appeal, collateral proceeding, or otherwise). Neither the Parties nor their counsel will encourage any Class Member to object.

## IX. PAYMENTS TO NAMED PLAINTIFFS

9.1     Each Named Plaintiff who is a member of the Settlement Class may participate in the claims process described in Section VI of this Agreement to the same extent as Class Members.

9.2     Subject to approval by the Court, Defendants will also pay each of the Named Plaintiffs a Service Award pursuant to the provisions of this Section. Each Service Award will consist of a $3,000.00 payment to each of the Named Plaintiffs solely as compensation for their time and effort associated with their participation in this Lawsuit. This amount is not reimbursement or compensation for any alleged injuries, damages, or any other relief sought in the Lawsuit. Each of these Named Plaintiffs responded to written discovery requests.

Defendants deposed each of the Named Plaintiffs, and Defendants conducted a preliminary examination of each of the Named Plaintiffs' Vita-Mix blenders. Even though each of these Named Plaintiffs has signed this Agreement and support approval of the Settlement, payment of the amount specified in this Section is not contingent on such authorization and support for the Agreement. Class Counsel will not seek payments for each Named Plaintiff in excess of the amount in this Section, which Defendants will not oppose. The Parties did not negotiate or agree to this Section or any of its terms until after negotiating and agreeing to the substantive terms of the Settlement.

## X.  CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

10.1    Class Counsel shall file a Fee Application for an award of Attorneys' Fees and Expenses, including Administration and Notice Expenses, no later than January 31, 2018 pursuant to Rule 23(h), Rule 54(d)(2), and the Court's Local Rules.

10.2    The Parties have not reached any agreement on the amount of Attorneys' Fees and Expenses Defendants will pay to Class Counsel, except that the Parties agree Class Counsel is entitled to an award of Attorney's Fees and Expenses and that Defendants have the right to object to and to contest Class Counsel's Fee Application. Defendants have no liability or obligation with respect to any Attorneys' Fees and Expenses, Administration and Notice Expenses, or Service Award to the Named Plaintiffs except as awarded by the Court. Class Counsel agree that upon payment to Class Counsel of any amounts awarded by the Court, Defendants' obligations to Class Counsel with respect to any Attorneys' Fees and Expenses or Service Award to the Named Plaintiffs shall be fully satisfied and discharged. It is not a condition of the Settlement or this Agreement that the Court award any particular amount of

Attorneys' Fees and Expenses or any particular amount as a Service Award. Either Party has the right to appeal a Court award of Attorneys' Fees and Expenses.

10.3    If the Court makes an award of Attorneys' Fees and Expenses, Defendants will pay such award within ten (10) business days following the Effective Date or following the entry of a final, non-appealable order relating to Service Awards or to Attorneys' Fees and Expenses, whichever is later.

## XI.    RELEASES

11.1    Class Members who do not timely exclude themselves from the Settlement forever release and discharge the Released Parties from all manner of claims, actions, causes of action, administrative claims, demands, debts, damages, costs, attorneys' fees, obligations, judgments, expenses, or liabilities for economic loss in law or in equity, whether based on federal, state, local, or foreign law or regulation, statutory or common law, whether now known or unknown, contingent or fixed, accrued or not accrued, foreseen or unforeseen, including all claims that Plaintiffs may now have or, absent this Agreement, may in the future have had, against any Released Party, by reason of any act, harm, omission, matter, representation, cause, occurrence, or event whatsoever that has occurred from the beginning of time up to and including the Effective Date of this Agreement and that arise from or relate to any of the alleged defects, representations, omissions, or claims alleged or that could have been alleged in the Lawsuit, including but not limited to Defendants' response to or efforts to address complaints about or claimed defects in the top seal incorporated into Vita-Mix household and commercial blenders beginning in January 2007, or that arise from or relate to any act, harm, omission, matter, representation, cause, occurrence, or event whatsoever arising out of the initiation, defense, or settlement of the Lawsuit or the claims or defenses asserted in the Lawsuit, including

all claims for out-of-pocket expense, consequential damages, diminution in value, benefit of the bargain, cost of repair or replacement, cost of maintenance, premium price damages, or any other damages theory or based on conduct by the Released Parties alleged to be negligent or intentional, with or without malice, or an alleged breach of any duty now existing or later arising.

11.2     The Released Claims specifically exclude claims for personal injury and emotional distress for Class Members other than the Named Plaintiffs.  Notwithstanding the foregoing, as part of the Settlement, and by executing this Agreement, the Named Plaintiffs— and only the Named Plaintiffs—specifically release any claims for personal injury and emotional distress, including any derivative claims, that arise from or relate to any of the alleged defects, representations, omissions, or claims that could have been alleged in the Lawsuit.

11.3     By executing this Agreement, the Parties acknowledge that, upon entry of the Final Approval Order by the Court, the Lawsuit shall be dismissed with prejudice, an order of dismissal with prejudice shall be entered, and all Released Claims shall thereby be conclusively settled, compromised, satisfied, and released as to the Released Parties.  The Final Approval Order shall provide for and effect the full and final release by Class Members of all Released Claims.

11.4     As additional consideration for the Settlement and the benefits provided by this Agreement, Class Counsel and each of the Named Plaintiffs agree to take all reasonable actions to support the efforts of any Released Party to prosecute or defend against any claim in the Coverage Action or in any Third-Party Claims.

11.5     *Future or Unknown Harm.*  It is possible, although unlikely, that other injuries, damages, losses, or future consequences or results of the sale, purchase, use, non-use, need for repair, or repair of the Vita-Mix blenders due to the alleged defect at issue in the Lawsuit are not

currently known by Class Members and will develop or be discovered that relate to the subject matter of the Lawsuit. The Release in this Agreement, and the compromise on which it is based, are expressly intended to and do cover and include a release by each of the Class Members of all such future injuries, damages, losses, or future consequences or results, excluding any future injury to person, and including a release and waiver of all rights, causes of actions, claims, and lawsuits against the Released Parties that may exist or arise in the future because of such future injuries, damages, losses, or future consequences or results of known or unknown injuries that relate to or arise out of the subject matter of this litigation. This Section also includes any injuries, damages, losses, or future consequences or results attributable in whole or in part to the improper installation of a Replacement Blade Assembly by Class Members or any Person other than Defendants.

11.6    Plaintiffs and Class Members knowingly and voluntarily waive Section 1542 of the California Civil Code, which provides:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or settlement with the debtor.**

Plaintiffs and Class Members expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred on them by, the provisions of Section 1542 of the California Civil Code and of all similar laws of other States or territories, to the fullest extent they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, Plaintiffs and Class Members hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of

the Released Claims, known or unknown, suspected or unsuspected, that they have against the Released Parties. In furtherance of such intention, the release given by Plaintiffs and Class Members to the Released Parties shall be and remain in effect as a full and complete general release of all claims notwithstanding the discovery or existence of any such additional different claims or facts.

11.7    Each Plaintiff expressly consents that this release shall be given full force and effect according to each of its terms and provisions, including those relating to unknown and unspecified claims, injuries, demands, rights, lawsuits, or causes of action as referenced above. Each Plaintiff acknowledges and agrees that this waiver is an essential and material term of this release and the compromise settlement that led to it, and that without this waiver the compromise settlement would not have been accomplished. Each Plaintiff has been advised by his or her attorney with respect to this waiver and, being of competent mind, understands and acknowledges its significance.

11.8    Each Party expressly accepts and assumes the risk that, if facts with respect to matters covered by this Agreement are found to be other than or different from the facts now believed or assumed to be true, this Agreement shall nevertheless remain effective. It is understood and agreed that this Agreement shall constitute a general release and shall be effective as a full and final accord and satisfaction and is a bar to all actions, causes of action, costs, expenses, attorney fees, damages, claims, and liabilities whatsoever, whether or not now known, suspected, claimed or concealed, pertaining to the Released Claims of this Agreement.

## XII.    COVENANT NOT TO SUE

12.1    Named Plaintiffs, on behalf of themselves and all Class Members, (a) covenant and agree that neither Named Plaintiffs nor any Class Member, nor anyone authorized to act on

behalf of any of the Named Plaintiffs or any Class Member, will commence, authorize, or accept any benefit from any judicial or administrative action or proceeding, other than as expressly provided for in this Agreement, against the Released Parties, or any of them, in either their personal or corporate capacity, or against third parties such as retailers, dealers, distributors, or restaurant supply stores that sell or market Vita-Mix blenders, or against retail establishments that serve food or drink prepared with Vita-Mix blenders, with respect to any claim, matter, or issue that in any way arises from, is based on, or relates to any alleged loss, harm, or damages allegedly caused by the Released Parties, or any of them, in connection with the Released Claims, the top seal incorporated into Vita-Mix household and commercial blenders beginning in January 2007 or Defendants' response to or efforts to address complaints about or claimed defects in the top seals at issue, or claims that relate to the allegations of the Lawsuit; (b) waive and disclaim any right to any form of recovery, compensation, or other remedy in any such action or proceeding brought by or on behalf of any of them; and (c) agree that this Agreement shall be a complete bar to any such action.

12.2     Plaintiffs are hereby permanently barred and enjoined from seeking to use the class action procedural device (or any analogue of or counterpart to it) in any future lawsuit against the Released Parties, where the lawsuit asserts claims that were or could have been brought in the Lawsuit before entry of the Final Approval Order and are not otherwise released and discharged by this Agreement.

12.3     If any of the Named Plaintiffs or any of the Class Members violates this Section, whether by filing any claim, lawsuit, arbitration, petition, administrative action, or other proceeding, Defendants are entitled to payment of their attorneys' fees, costs, and expenses,

including expert fees in connection with responding to or defending such claim, lawsuit, arbitration, petition, administrative action, or other proceeding.

## XIII.  REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants to, and agrees with, each of the other Parties as follows:

13.1     To the extent permitted by law and the applicable rules of professional conduct, Class Counsel represent and warrant that they do not have any present intention to file any lawsuit, class action, or claim of any kind against Defendants in any jurisdiction, including other states or countries, relating to the claimed defect at issue in the Lawsuit or Defendants' response to or efforts to address such claimed defects in any Vita-Mix household or commercial blender. Class Counsel further represent and warrant that they will not contact any other attorney or law firm to discuss or encourage pursuing litigation related to such alleged issues.  The foregoing shall not restrict the ability of Class Counsel to fulfill their responsibilities to absent Class Members in connection with the settlement proceedings in the Lawsuit.

13.2     To the extent permitted by law and the applicable rules of professional conduct, the Settlement is conditioned on Plaintiffs' and Class Counsel's agreement not to cooperate with any other lawyers who are litigating or who wish to litigate any issue relating to the claimed defect at issue in the Lawsuit or Defendants' response to or efforts to address such claimed defects in any Vita-Mix household or commercial blender.  The foregoing shall not restrict the ability of Class Counsel to fulfill their responsibilities to absent Class Members in connection with the settlement proceedings in the Lawsuit, nor shall it restrict Class Counsel's responsibility to respond to orders of any court or other legal obligation.

13.3    Each Party has had the opportunity to receive, and has received, independent legal advice from his, her, or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income-tax consequences of this Agreement, and fully understands and accepts the terms of this Agreement.

13.4    Plaintiffs represent and warrant that no portion of any claim, right, demand, action, or cause of action against any of the Released Parties that Plaintiffs have or may have arising out of the Lawsuit or pertaining to the design, manufacture, testing, marketing, purchase, use, sale, servicing, or disposal of any Vita-Mix blender, and no portion of any recovery or settlement to which Plaintiffs may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs in any manner; and no Person or entity other than Plaintiffs has any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement as those of Plaintiffs themselves.

13.5    None of the Parties relies or has relied on any statement, representation, omission, inducement, or promise of the other Party (or any officer, agent, employee, representative, or attorney for the other Party) in executing this Agreement, or in making the Settlement provided for herein, except as expressly stated in this Agreement.

13.6    Each of the Parties has investigated the facts pertaining to the Settlement and this Agreement, and all matters pertaining thereto, to the full extent deemed necessary by that Party and his, her, or its attorneys.

13.7    Each of the Parties has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having had the opportunity to consult with, and having in fact consulted with, his, her, or its attorneys.

13.8    Each term of this Agreement is contractual and not merely a recital.

## XIV. MISCELLANEOUS PROVISIONS

14.1   <u>Extensions of Time</u>.   Unless otherwise ordered by the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement and Settlement.

14.2   <u>Default or Breach</u>.   Defendants represent that they will make good-faith efforts to meet the various deadlines that apply to them under this Agreement.   Defendants' failure, for any reason, to meet any applicable deadline shall not constitute a default or breach of this Agreement without formal, written notice by Class Counsel and without a reasonable opportunity for Defendants to cure the claimed default or breach.   If Class Counsel maintain that any action or inaction constitutes a default or breach of this Agreement, then the Settling Parties shall meet and confer.   If reasonable efforts do not cure any claimed default or breach after a reasonable period of time, only then may a Settling Party involve the Court.   The waiver by Plaintiffs of any default or breach of this Agreement shall not be deemed a waiver of any other claimed default or breach by Defendants.

14.3   <u>Publicity or Media Inquiries about the Settlement</u>.   In connection with any media inquiry or publicity concerning this Settlement, Class Counsel agree that they shall refer all inquiries to Scott Tennant at Vita-Mix and that Class Counsel's public statements to the media or other third parties will be agreed upon in advance and will be limited to statements contained within the Settlement Notice, with the exception of Class Counsel's Application for Fees and Expenses.   Defendants may continue to respond to inquiries and make statements regarding the quality, safety, and performance of their products, but may not make statements inconsistent with the evidence developed in the Lawsuit.   Where appropriate, Defendants will direct Persons in response to inquiries to the Settlement Website.

14.4    Non-Disparagement.  To the extent permitted by law and the applicable rules of professional conduct, the Settlement is conditioned on the agreement of Plaintiffs and their attorneys not to disparage Defendants or their products or services regarding the subject matters of the Lawsuit.  The foregoing shall not restrict the ability of Class Counsel to perform their responsibilities to absent Class Members in connection with settlement approval proceedings, nor shall it restrict Class Counsel's responsibilities to respond to orders of any court or other legal obligations or restrict Class Counsel's ability to support their Application for Fees and Expenses.  This provision shall not be interpreted to interfere with or limit any rights or obligations under the applicable rules of professional conduct or to extend to any matter that is unrelated to the subject matters of the Lawsuit.

14.5    No Extension of Warranty.  In connection with this Agreement and the Settlement, Defendants have not agreed to any extension of their warranties for Vita-Mix blenders.  The only settlement benefits are those benefits described in Section VI of this Agreement.  Class Members, other than those described in Section 3.8(a), who elect a Replacement Blade Assembly under Section VI of this Agreement will have, for that Replacement Blade Assembly, the standard Vita-Mix warranty then in effect and subject to the terms and conditions on the Vita-Mix website (www.vitamix.com).  Any Class Member who has any complaint about or issue with a Replacement Blade Assembly received as a benefit pursuant to this Agreement must inform Vita-Mix of such complaint or issue within six months of the date of receipt of the Replacement Blade Assembly.  Failure to do so shall relieve Defendants of any obligation to repair or replace the Replacement Blade Assembly.

14.6    Confidentiality.  All orders entered or agreements made during the course of the Lawsuit relating to the confidentiality of documents or information shall survive this Agreement.

14.7    <u>Return or Destruction of Confidential Documents</u>.  Within sixty (60) days after the Effective Date, the Named Plaintiffs and Class Counsel will destroy (and certify in writing that they have destroyed) Defendants' confidential documents.

14.8    <u>Exhibits</u>.  All of the exhibits or attachments to this Agreement are material and integral parts of this Agreement and are incorporated by reference as if fully set forth here.

14.9    <u>Severability</u>.  With the exception of the provision for attorneys' fees and costs to Class Counsel and Service Awards to the Named Plaintiffs pursuant to Sections IX and X of this Agreement, none of the terms of this Agreement is severable from the others.  If the Court or a court of appeals should rule that any term is void, illegal, or unenforceable for any reason, however, Defendants, in their sole discretion, and the Named Plaintiffs, in their sole discretion (but acting in accord with their duties and obligations as Class Representatives of the Settlement Class), may elect to waive any such deficiency and proceed with the Settlement under the terms and conditions approved by the Court.

14.10    <u>Entire Agreement of the Parties</u>.  This Agreement constitutes and comprises the entire agreement between the Parties concerning the Settlement.  No representations, warranties, or inducements have been made by any Party concerning the Settlement or this Agreement other than those contained and memorialized in this Agreement.  This Agreement supersedes all prior and contemporaneous oral and written agreements and discussions concerning resolution of the Lawsuit.  It may be amended only by an agreement in writing, signed by the Parties.

14.11    <u>Binding on Agents, Successors, and Assigns</u>.  This Agreement is binding on, and shall inure to the benefit of, the Parties and their respective agents, employees, representatives, officers, directors, parents, subsidiaries, assigns, executors, administrators, insurers, and successors in interest.

14.12   Third-Party Beneficiaries.  All Released Parties other than the signatories to this Agreement are intended to be third-party beneficiaries of this Agreement.

14.13   Taxes.  Members of the Settlement Class, Named Plaintiffs, and Class Counsel shall be responsible for paying any and all federal, state, and local taxes that may be due on account of any payment or benefit conferred pursuant to this Agreement.

14.14   Cooperation in Implementation.  Defendants, Named Plaintiffs, and their respective counsel agree to prepare and execute any additional documents that may reasonably be necessary to effectuate the terms of this Agreement.

14.15   Notices.  Any formal or informal notices provided for, required by, or relating to this Agreement shall be provided to:

For Plaintiffs and the Settlement Class:

        W.B. Markovits
        Markovits, Stock & DeMarco, LLC
        3825 Edwards Road, Suite 650
        Cincinnati, Ohio 45209
        (513) 651-3700
        (513) 665-0219 (facsimile)
        bmarkovits@msdlegal.com

For Defendants:

        Tracey L. Turnbull
        Porter, Wright, Morris & Arthur LLP
        950 Main Avenue, Suite 500
        Cleveland, Ohio 44113
        (216) 443-9000
        (216) 443-9011 (facsimile)
        tturnbull@porterwright.com

14.16   Governing Law.  This Agreement shall be construed and governed in accordance with federal procedural law and the substantive laws of the State of Ohio, without regard to Ohio's conflict-of-laws principles.

14.17 <u>Jurisdiction</u>.  Without affecting the finality of any order, the Court shall retain jurisdiction over the Parties and the Agreement with respect to implementation and enforcement the terms of the Settlement.  All Settling Parties and Class Members submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement and this Agreement and all related matters.

14.18 <u>No Drafter</u>.  None of the Parties to this Agreement shall be considered to be the primary drafter of this Agreement or any part of it for purposes of any rule of construction or interpretation.

14.19 <u>Construction</u>.  This Agreement shall not be construed more strictly against one Party than another, or in favor of one Party or another, merely by virtue of the fact that it or any part of it may have been prepared by counsel for one of the Parties.  This Agreement and each part of it is the result of arm's-length negotiations among the Parties.

14.20 <u>Counterparts</u>.  This Agreement may be executed in counterparts, including signature transmitted by facsimile or in PDF format.  Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.

14.21 <u>Signature</u>.  By signing, Class Counsel represent and warrant that Plaintiffs Vicki A. Linneman and Obadiah N. Ritchey have approved and agreed to be bound by this settlement.  By signing, all counsel and any other person signing this Agreement represent and warrant that they have full authority to do so and that they have the authority to take appropriate action to effectuate the terms of this Agreement.

On Behalf of the Named Plaintiffs and the Settlement Class:

/s/ *Paul M. De Marco* per email authorization     /s/ *W.B. Markovits*
Paul M. DeMarco                                     W.B. Markovits
   pdemarco@msdlegal.com                     bmarkovits@msdlegal.com
Markovits, Stock & DeMarco LLC           Markovits, Stock & DeMarco LLC
3825 Edwards Road, Suite 650               3825 Edwards Road, Suite 650
Cincinnati, OH  45209                         Cincinnati, OH  45209
Phone:  (513) 651-3700                      Phone:  (513) 651-3700
Fax:      (513) 665-0219                       Fax:      (513) 665-0219


/s/ *Jeff S. Goldenberg* per email authorization     /s/ *Justin C. Walker* per email authorization
Jeffrey S. Goldenberg                          Justin C. Walker
   jgoldenberg@gs-legal.com                 justin@finneylawfirm.com
Goldenberg Schneider, L.P.A.             Finney Law Firm, LLC
One West Fourth Street, 18th Floor       4270 Ivy Pointe Blvd., Suite 225
Cincinnati, OH  45202                         Cincinnati, OH  45245
Phone: (513) 345-8291                      Phone: (513) 943-6665
Fax:      (513) 345-8294                       Fax:      (513) 943-6669


/s/ *Vicki Linneman* per email authorization     /s/ *Obadiah N. Ritchey* per email authorization
Vicki Linneman                                  Obadiah N. Ritchey
7721 Chance Drive                           8505 Cheerful Brook Avenue
Cleves, OH  45002                         Las Vegas, NV  89143
Phone: (513) 574-0315

On Behalf of Defendants:


/s/ *Tracey L. Turnbull* per email authorization
Tracey L. Turnbull
Counsel for Defendants
   tturnbull@porterwright.com
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, OH  44113
Phone:  (216) 443-9000
Fax:      (216) 443-9011


/s/ *Anthony M. Ciepiel* per email authorization
Anthony M. Ciepiel
Chief Operating Officer
Vita-Mix Corporation
8615 Usher Road
Cleveland, OH  44138
Phone:  (440) 235-4840
www.vitamix.com