## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| VICKI LINNEMAN, *et al.*, On Behalf of Themselves and all Others Similarly Situated, | : : : | CASE NO. 1:15-cv-748 |
| Plaintiffs, | : : | (Judge Susan J. Dlott) (Magistrate Judge Stephanie K. Bowman) |
| v. | : : | |
| VITA-MIX CORPORATION, *et al.*, | : : | |
| Defendants. | : | |

## PLAINTIFFS' CORRECTED AND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AN ORDER REQUIRING THIRD-PARTY RETAILERS OF VITA-MIX PRODUCTS TO PRODUCE CUSTOMER INFORMATION FOR THE PURPOSE OF ASSISTING IN PROVIDING DIRECT NOTICE TO CLASS MEMBERS

Plaintiffs Vicki A. Linneman and Obadiah N. Ritchey ("Named Plaintiffs"),[1] on behalf of themselves and the Settlement Class, respectfully move this Court to enter the proposed Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), attached hereto as Exhibit 1. The Preliminary Approval Order is sought for a settlement that was reached after hard-fought litigation, was the result of arm's length negotiations, including mediation with Judge Barrett, and should be granted for these and other reasons as more fully set forth in the accompanying memorandum of law.

---

[1] Capitalized terms not defined herein are as stated in the Class Action Settlement Agreement and Release dated September 26, 2017, attached as Exhibit 2.

**PLAINTIFFS' CORRECTED AND AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AN ORDER REQUIRING THIRD-PARTY RETAILERS OF VITA-MIX PRODUCTS TO PRODUCE CUSTOMER INFORMATION FOR THE PURPOSE OF ASSISTING IN PROVIDING DIRECT NOTICE TO CLASS MEMBERS**

Pursuant to Fed. R. Civ. P. 23(e), Named Plaintiffs, on behalf of themselves and the Settlement Class, respectfully move this Court to enter the proposed Preliminary Approval Order.

## I.    PRELIMINARY STATEMENT

Named Plaintiffs have reached an agreement with Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively, "Defendants" or "Vita-Mix") to settle this class action on the terms set forth in the Agreement. The proposed Settlement will provide a substantial benefit to the Settlement Class, conservatively estimated at a value of at least Three Hundred Million Dollars ($300,000,000). The Settlement, if approved, will resolve all claims asserted against Defendants in this class action.

The proposed Settlement was reached at a time when the Parties to the Agreement understood the strengths and weaknesses of their respective positions. Specifically, Named Plaintiffs, through their counsel, conducted an extensive investigation of their claims, filed an original complaint, an amended complaint, briefed a motion to dismiss, litigated an ancillary insurance coverage dispute, and undertook significant fact discovery.

Named Plaintiffs and Defendants engaged in extensive arm's-length settlement negotiations and participated in mediation under the supervision of United States District Judge Michael R. Barrett. The mediation ultimately resulted in the Agreement. Named Plaintiffs, based upon their evaluation of the facts and applicable law and their recognition of the substantial risk

and expense of continued litigation, submit that the proposed Settlement is in the best interests of the Class and will provide an immediate meaningful recovery.

Prior to the Fairness Hearing, Named Plaintiffs will submit detailed papers supporting the proposed Settlement and will ask the Court to determine whether the proposed Settlement is fair, reasonable, and adequate. At this time, however, Named Plaintiffs request only that the Court grant preliminary approval of the proposed Settlement so that notice may be provided to the Class. Specifically, Named Plaintiffs request that the Court enter the proposed Order Granting Preliminary Approval of Class Action Settlement, submitted herewith, which, among other things, will:

i.      Preliminarily approve the Settlement and the Agreement as fair, adequate, and reasonable to the Settlement Class;

ii.     Conditionally certify the Settlement Class as a nationwide class for the purpose of effecting the Settlement;

iii.    Designate Named Plaintiffs as the representatives of the Settlement Class;

iv.     Designate Markovits, Stock & DeMarco, LLC, Finney Law Firm, LLC, and Goldenberg Schneider, L.P.A. as Class Counsel for the Settlement Class;

v.      Designate JND Legal Administration as the Settlement Administrator;

vi.     Order the reasonable production of Class Member information from third-party retailers and distributors;

vii.    Approve the form, content, and methods of Notice;

viii.   Establish procedures and schedule deadlines for notice to Class Members, and for Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and

    ix.     Schedule deadlines for the filing of papers in support of final approval, and in support of attorneys' fees, reimbursement of expenses, and requested awards for service payments;

    x.     Schedule a deadline for the Fairness Hearing; and

    xi.     Establish other requirements and procedures necessary to effectuate the Settlement.

Given the substantial benefits available to Class Members under the Settlement, and the risks in establishing Defendants' liability and proving damages, Named Plaintiffs respectfully submit that the proposed Settlement reflected in the Agreement is not only fair, reasonable, and adequate, but that it represents an outstanding recovery, as further described below.

## II.    FACTUAL BACKGROUND

On November 19, 2015, Named Plaintiffs filed a complaint against Defendants alleging that Vitamix blenders were defective because a seal in the container deposited tiny black polytetrafluoroethylene ("PTFE") flecks into blended food and drink. Named Plaintiffs asserted claims for: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) negligent design, engineering, and manufacture; (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract; (7) violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.02 *et seq.*); and (8) violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*). The complaint sought certification of a nationwide class of purchasers of Vitamix blenders.

On February 26, 2016, Named Plaintiffs filed a First Amended Class Action Complaint against Defendants asserting claims for: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) negligent design, engineering, and manufacture; (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract; and (7) violation of the Ohio

Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*). The First Amended Class Action Complaint also sought certification of a nationwide class of purchasers of Vitamix blenders.

Vita-Mix moved to dismiss the First Amended Class Action Complaint, which Named Plaintiffs opposed. Defendants denied, and continue to deny, the allegations in the Lawsuit and assert numerous defenses to Named Plaintiffs' claims.

The Parties engaged in substantial discovery, including written discovery, the production of more than 47,500 pages of documents by Defendants and more than 12 gigabytes of data, discovery from third-parties, product testing, a corporate representative deposition, and over a dozen depositions of fact witnesses.

Class Counsel have reviewed and analyzed the documents produced by Defendants and those obtained through their own investigation; consulted with experts; examined and considered the benefits to be provided to the Class Members under the Settlement provided for in this Agreement; and considered the laws of the several States and the claims that could be asserted under those laws regarding Vitamix blenders. During the course of litigation, Defendants created a Replacement Seal. Experts on behalf of the Named Plaintiffs have tested containers with the Replacement Seal and agree with Defendants that this new technology does not produce the black flecks that prompted this lawsuit.

With the motion to dismiss pending, the Parties engaged in mediation with the aid of and before Judge Barrett. A number of mediation sessions took place as described on the Court's docket and in the Joint Status Report of the Parties filed on August 2, 2017 (Doc. No. 33), and at other times.

Named Plaintiffs and Class Counsel believe the Settlement is fair, adequate, reasonable, and in the best interests of the Class Members, taking into account the benefits provided to the Class Members through the terms of the Settlement, the risks of continued litigation and possible trial and appeals, and the length of time and the costs that would be required to complete the litigation.

## III.    ARGUMENT

### A.    The proposed Settlement warrants preliminary approval.

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co*., 649 F.2d 1216, 1224 (6th Cir. 1981). Rule 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 372 (S.D. Ohio 2006).[2] Named Plaintiffs request that the Court preliminarily approve the proposed settlement, the first step in the three-step process.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls

---

[2] *See also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (same).

within the range of possible approval." *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at \*2 (W.D. Ky. Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[3] In essence, the Court must preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Products Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at \*7 (W.D. Ky. Aug. 13, 2012).[4]

### 1. The proposed Settlement was reached after serious, informed, and arm's-length negotiations.

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc*., No. 1:15-CV-00325, 2017 WL 977589, at \*1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton,* 141 F. Supp. 2d at 906 (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").[5] Notably, "[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion

---

[3] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at \*4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[4] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at \*3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable."); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001); *In re Southern Ohio Corr. Facility,* 173 F.R.D. 205, 211 (S.D. Ohio 1997).

[5] *See also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 90 (4th Ed. 2002).

between the parties." *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. The Parties' respective counsel are experienced in the litigation, certification, trial, and settlement of class actions cases. There is no evidence that any collusion or illegality existed during the settlement process. Settlement negotiations in this case took place over the course of multiple mediation sessions and ultimately reached an initial agreement during a session mediated by Judge Barrett, an experienced mediator. After the initial agreement was reached, counsel for both Parties spent significant time exchanging, reviewing, and analyzing additional data for the final settlement. Both Parties' counsel support the Settlement as fair and reasonable, and all certify that it was reached at arm's-length.[6]

> **2.** **The proposed Settlement falls within the range of reasonableness and warrants issuance of notice and a hearing on final approval of settlement.**

Although Named Plaintiffs believe that the claims asserted in the Class Action are meritorious and the Class would ultimately prevail at trial, continued litigation against Defendants posed significant risks that made any recovery for the Class uncertain. The fairness and adequacy of the Settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and

---

[6] *See also Amos v. PPG Indus.*, 2015 WL 4881459, at *1 (noting that the Southern District of Ohio "recognizes that the settlement of class action is generally favored and encouraged" (internal citations omitted)).

settlement avoids the costs, delays, and multitude of other problems associated with them." (internal citations and quotations omitted)).[7]

Here, if the litigation were to continue, Named Plaintiffs would face a number of high-stakes risks before trial that could have limited, or even eliminated, their claims, including a possible motion to dismiss or summary judgment ruling in favor of Defendants. Despite these real and significant risks, Named Plaintiffs and the Rule 23 putative Class Members will receive significant benefits under the Settlement. Generally, Class Members who purchased a Vitamix household blender that was manufactured on or after January 1, 2007 but before October 1, 2016 can receive: 1) a Replacement Blade Assembly incorporating a non-flecking Replacement Seal; or 2) a $70 Gift Card to be used toward direct purchase from the Vita-Mix website of any Vitamix blender or container. Gift Cards are transferable, have no expiration date, and may be used in connection with any promotion. Generally, Class Members who own a Vitamix commercial blender that was purchased on or after September 15, 2015 but before August 9, 2016 (or before April 7, 2017 in the case of a commercial blender from the XL product line) can, subject to certain conditions, receive a Replacement Blade Assembly incorporating a non-flecking Replacement Seal.

When considering the Settlement, Named Plaintiffs weighed the certainty of an immediate recovery for the Class against the significant legal challenges Named Plaintiffs faced. Under these circumstances, the proposed Settlement is fair, reasonable, and adequate.

### 3. The proposed Settlement has no obvious deficiencies.

---

[7] *See also Brotherton*, 141 F. Supp. 2d at 905 (noting that adding any further delay to an 11-year-old case "would not substantially benefit class members" and would support a finding that the settlement was fair, reasonable, and adequate); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

There are no grounds to doubt the fairness of the proposed settlement or other obvious deficiencies, such as unduly preferred treatment of the Named Plaintiffs or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Named Plaintiffs, like all other Class Members, will receive their settlement benefit in accordance with a claims process that will be presented to the Court for approval. The matter of attorneys' fees and payment of expenses, as well as any service compensation for Named Plaintiffs, are wholly separate from the Settlement. Importantly, whatever attorneys' fees, expense reimbursement, and service payments are awarded by this Court will not reduce the benefits available to the Class Members.

Accordingly, nothing in the course of this class action, the settlement negotiations, or the Settlement itself raises fairness concerns. Named Plaintiffs therefore request that the Court preliminarily approve the Settlement and set a date for the Fairness Hearing.

**B.      Certification of the proposed class for purposes of settlement only is appropriate.**

The Supreme Court has recognized that at times the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). Accordingly, Named Plaintiffs seek the conditional certification of the Settlement Class set forth above and in the Agreement.

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b)." *Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The four requirements of Federal Rule of Civil Procedure 23(a) are numerosity, commonality, typicality, and adequacy. Furthermore, Named Plaintiffs seek certification of the Settlement Class pursuant to Rule 23(b)(3), which provides that certification is appropriate where "the court finds the questions of law or fact common to class members predominate over any

10

questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

As discussed below, these requirements are met for purposes of settlement in this case.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no magic number needed to satisfy numerosity; in the Sixth Circuit, numerosity has been satisfied with a class of 35. *See In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement" (internal quotation marks omitted)); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) ("substantial" numbers satisfy, and thousands are "substantial"). Here, the total number of blenders at issue is in the range of six million, with only slightly fewer Class Members. Numerosity is therefore readily satisfied. *See In re Whirlpool Corp. Front-loading Washer Prod. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *7 (N.D. Ohio Sept. 23, 2016) (with millions of class members, joinder is not "simply impractical, it is impossible").

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and

dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

In this case, there are numerous common questions of law and fact, such as whether the Vitamix blenders suffered from a defect that caused them to produce black flecks; whether Vita-Mix had a duty to disclose that alleged defect to consumers; and whether the Class Members have actionable claims. Commonality is, therefore, satisfied. *See In re Whirlpool Corp.*, 722 F. 3d at 855 (commonality satisfied because "the evidence confirms that the issues regarding alleged design flaws are common to the class"); *see also Daffin v. Ford Motor Co.*, No. C-1-00-458, 2004 WL 5705647, at *2 (S.D. Ohio July 15, 2004), *aff'd,* 458 F.3d 549 (6th Cir. 2008).

### 3. Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*; *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented.

Here, all of the Named Plaintiffs' claims arise out of the same alleged conduct by Vita-Mix related to the design, manufacture, and sale of the allegedly defective blenders, and the same legal theories apply to all. Typicality is satisfied.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: 1) the "representative must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

Here, both Named Plaintiffs are adequate because during the Class Period they purchased a Vitamix blender that would be covered by the Settlement and were allegedly damaged in the same manner based on the same alleged defect. They have also actively participated in the litigation of this case.

In addition, Named Plaintiffs' counsel are qualified. The Agreement designates Markovits, Stock & DeMarco, LLC, Goldenberg Schneider, L.P.A., and Finney Law Firm, LLC as Class Counsel. These firms have invested considerable time and resources into the prosecution of this action. Class Counsel possess a wealth of experience litigating complex class action lawsuits, and were able to negotiate an outstanding settlement for the Class Members. (*See* Markovits Decl. ¶¶ 3, 5, 7 (Exhibit 3); Goldenberg Decl. ¶¶ 4, 9 (Exhibit 4); Walker Decl. ¶¶ 4, 9 (Exhibit 5)). Based on the results achieved here, the Court should appoint these firms as Class Counsel, and determine that Rule 23(a)'s adequacy requirement is satisfied.

### 5. Rule 23(b)(3) Requirements

Named Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over

individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *7 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (6th Cir. 1996)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp.*, 722 F.3d at 860. With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the primary issue would be whether Vitamix blenders were defective, and whether Vita-Mix is liable

14

for distributing defective blenders. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See Daffin,* 2004 WL 5705647, at *2 (predominance satisfied where significant issues included: 1) whether throttles were defective; 2) whether that defect reduced the value of the car; and 3) whether Ford breached its warranty); *see also In re Countrywide*, 2009 WL 5184352, at *6 ("the proof required [must focus] on Defendant's conduct, not on the conduct of the individual class members"). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Agreement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. The settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against Vita-Mix. *See Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)). Here, individual trials are not feasible; the proposed class action remedy is superior.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Class is appropriate.

**C.  The proposed Class Representatives, Class Counsel, and Settlement Administrator should be approved.**

Named Plaintiffs Vicki A. Linneman and Obadiah N. Ritchey seek to be appointed as Class Representatives for the Settlement Class. Both have been intimately involved in the prosecution of this case since its outset.  Both have cooperated with counsel, assisted in the preparation of the Complaint, provided documentation of their purchased blenders, responded to Defendants' requests for production and interrogatories, and were subject to deposition by Defendants' counsel. Markovits Decl. ¶ 6.  Both purchased Vitamix blenders with the seal at issue during the Class Period. *Id.* The claims of both are typical of the claims of the Settlement Class, and both will fairly and adequately protect the interests of the Settlement Class. Rule 23(a)(3) and (4).

For the reasons previously discussed with respect to adequacy of representation, the law firms of Markovits, Stock & DeMarco, LLC, Goldenberg Schneider, L.P.A., and Finney Law Firm, LLC should be designated as Class Counsel.

The proposed Class Counsel, with the approval of Vita-Mix, have proposed that JND Legal Administration act as Settlement Administrator. JND and its principals have a long history of successful settlement administrations in class actions. Markovits Decl.¶ 8; *see also* Keough Decl., at ¶¶ 5-8 (Exhibit 6).

**D.**     **The proposed form and manner of notice to the Class is reasonable and should be approved.**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732 (1974). In order to satisfy these standards and "comport with the

16

requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Notice Plan set forth in the Agreement provides the best notice practicable under the circumstances. The Parties negotiated the form of the Settlement Notice (Long Form), which will serve as the basis to provide notice to all persons who fall within the definition of the Class and whose names, addresses, and email addresses can be identified with reasonable effort from or through Vita-Mix's records, as well as reasonably obtainable records from retailers and distributors. In addition, the Settlement Administrator will supplement the Settlement Notice (Long Form) with a Short Form Settlement Notice and a Publication Notice. The Settlement Notice (Long Form) is attached to the hereto as Exhibit 7. Class Counsel anticipates finalizing the Claim Form, the Short Form Settlement Notice and Publication Notice with Defendants and JND over the next week and will submit the finalize proof of those Notices for the Court's consideration within the next week.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."[8] Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than $9 million, or roughly 3% of the conservatively estimated value of the Settlement, plus reimbursement of litigation expenses This proposed fee amount is well within the range of reasonable attorneys'

---

[8] Fed. R. Civ. P. 23(h)(1).

fees awarded for similar class action matters in the Sixth Circuit as well as other federal district courts.[9]

The proposed Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information regarding the Named Plaintiffs' request for an incentive award and the payment by Defendants of attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Settlement Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of providing notice, which includes individual notice by email and mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See*

---

[9] *See, e.g., In re Cincinnati Gas & Electric Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("typically the percentages range from 20% - 50%"); *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999) ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%."); *Dillworth v. Case Farms Processing, Inc*., No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (fee equal to 33% of settlement amount); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *19 (N.D. Ohio Sept. 1, 2011) (fee equal to 29% of the settlement amount); *Clevenger v. Dillards, Inc*., No. C-1-02-558, 2007 WL 764291, at *1 (S.D. Ohio Mar. 9, 2007) (fee equal to 29% of settlement fund).

*Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004).[10] Thus, the Notice

Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

> **E.    The Court should order the reasonable production of identifying information from retailers and distributors.**

Vita-Mix has produced a list of the primary retailers and distributors that may have readily

accessible contact information for purchasers of Vitamix blenders. To help effectuate direct notice,

proposed Class Counsel seek an order from the Court that would require production by those

companies of such information to the extent reasonably possible.[11] Other class action settlements

have recognized the importance of "attempting to provide direct notice to retail customers whose

contact information may be on file with the retailer." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231,

239 (N.D. Cal. 2014); *see also Ostrowski v. Amazon.com, Inc.*, No. C16-1378-JCC (W.D. Wash.

Sept. 16, 2016) (ordering a third-party retailer to produce customers' names and addresses to

plaintiffs for the purpose of providing those customers with direct notice of the class action

settlement.).

> **F.    The Court should provide a schedule leading up to a Fairness Hearing.**

Named Plaintiffs request that the Court set a schedule, leading up to a Fairness Hearing,

that would include, *inter alia*, deadlines for notice to Class Members, for Class Members to object

to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and

deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and

---

[10] *See also Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982) (notice sent to individuals' last known address and notice published in the *Wall Street Journal* constituted adequate notice, even though some members of the class did not receive actual notice); *Jordan v. Global Nat. Res. Inc.*, 102 F.R.D. 45, 51 (S.D. Ohio 1984) (due process does not require actual notice to all class members, and constructive notice by publication will suffice to inform potential class members).

[11] A proposed Order Requiring Third-Party Retailers of Vita-Mix Products to Produce Customer Information for the Purpose of Assisting in Providing Direct Notice to Class Members is attached as Exhibit 9.

expenses. A proposed schedule is attached as Exhibit 8. At the Fairness Hearing, the Court may hear all evidence and argument necessary to make its final evaluation of the Settlement.[12] Proponents of the Settlement may offer argument in support of final approval. In addition, Class Members who have properly objected to the Settlement may be heard at this hearing. The Court will determine through the Fairness Hearing whether the Settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

## IV.        CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Named Plaintiffs respectfully request that the Court grant preliminary approval and enter the proposed Order attached as Exhibit 1 and also respectfully request that the Court grant their request for an order requiring third-party retailers to produce customer contact information so that direct notice may be made to as many Class Members as practicably possible under the circumstances as attached in Exhibit 9.

Respectfully submitted,

s/ *W. B. Markovits*
W.B. Markovits (0018514)
Paul M. De Marco (0041153)
Christopher D. Stock (0075443)
Andrew R. Biller (0081452)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DeMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Phone:  (513) 651-3700
Fax:   (513) 665-0219
*bmarkovits@msdlegal.com*
*pdemarco@msdlegal.com*
*cstock@msdlegal.com*
*abiller@msdlegal.com*
*tcoates@msdlegal.com*

---

[12] Fed. R. Civ. P. 23(e)(2).

Christopher P. Finney (0038998)
Justin C. Walker (0080001)
FINNEY LAW FIRM, LLC
4270 Ivy Point Blvd., Suite 225
Cincinnati, Ohio 45245
Telephone:  (513) 943-6665
Facsimile:  (513) 943-6669
*chris@finneylawfirm.com*
*justin@finneylawfirm.com*

Jeffrey S. Goldenberg (0063771)
GOLDENBERG SCHNEIDER, L.P.A.
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202-3604
Telephone:  (513) 345-8291
Facsimile:  (513) 345-8294
*JGoldenberg@gs-legal.com*

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 29, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on CM/ECF.

s/ <i>W. B. Markovits</i>
W.B. Markovits (0018514)
MARKOVITS, STOCK & DEMARCO, LLC
