**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| VICKI LINNEMAN, *et al.*, On Behalf of Themselves and all Others Similarly Situated, | : : : | CASE NO. 1:15-cv-748 |
| Plaintiffs, | : : | (Judge Susan J. Dlott) (Magistrate Judge Stephanie K. Bowman) |
| v. | : : | |
| VITA-MIX CORPORATION, *et al.*, | : : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Vicki A. Linneman and Obadiah N. Ritchey on behalf of themselves and the Settlement Class, respectfully move this Court to enter the proposed order attached as <u>Exhibit 1</u>, which certifies the Settlement Class and grants final approval to the proposed Class Action Settlement Agreement and Release [Doc. 35-2]. The settlement was reached after hard-fought litigation and was the result of arm's-length negotiation at two mediation sessions before United States District Judge Michael Barrett. For these and other reasons set forth in the accompanying memorandum of law, the proposed settlement is fair, reasonable, and adequate and final approval should be granted.

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
### FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**I. INTRODUCTION**

Vicki A. Linneman and Obadiah N. Ritchey, individually and on behalf of the Settlement Class (collectively, "Plaintiffs"), respectfully request that the Court grant final approval of the class action Settlement between the Plaintiffs and Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively, "Defendants" or "Vita-Mix"). Final approval of this Settlement is appropriate because the Settlement is the product of extensive arm's-length negotiations, and is fair, reasonable, and adequate. Under the Settlement, class members are provided an opportunity to be made ***100% whole*** by replacing the defective blender blade assemblies at issue in this case with non-defective blade assemblies at no cost – a remarkable accomplishment very few settlements can claim to achieve. It therefore merits final approval.[1]

**II. BACKGROUND**

    **A. The Litigation**

Plaintiffs initiated this action on November 19, 2015 when they filed a complaint against Defendants alleging that Vitamix blenders were defective because a seal in the container deposited tiny black polytetrafluoroethylene ("PTFE") flecks into blended food and drink [Doc. 1].[2] Plaintiffs filed the operative First Amended Class Action Complaint ("Complaint") on

---

[1] Capitalized terms not defined herein have the same meaning as defined in the Class Action Settlement Agreement and Release dated September 26, 2017 [Doc. 35-2].

[2] The Declaration of W.B. Markovits in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for an Award of Attorneys' Fees, Costs and Class Representative Service Awards ("Markovits Decl.") (attached as Exhibit 2), Declaration of Jeffrey Goldenberg in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Class Counsel's Motion

February 26, 2016 [Doc. 18]. It seeks certification of a nationwide class of purchasers of Vitamix blenders and asserts the following claims: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) negligent design, engineering, and manufacture; (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract; and (7) violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 et seq.). An initial Pretrial Conference was held on March 14, 2016 [Doc. 14].

On April 15, 2016, Defendants filed both a motion to dismiss [Doc. 20] and an answer with jury demand [Doc. 21]. After thoroughly researching Defendants' arguments and authorities, Plaintiffs filed their response in opposition to Defendants' motion on May 9, 2016 [Doc. 23], and Defendants filed their reply on May 26, 2016 [Doc. 24].

To date, the Parties have engaged in substantial discovery. This has included written discovery, the production and review of more than 47,500 pages of documents and more than 12 gigabytes of data, and substantial third-party discovery, which included analyzing Vitamix product sales data from approximately a dozen national retailers. Plaintiffs have retained experts to conduct product testing and taken more than a dozen depositions of fact witnesses. Moreover, under the Court's case schedule, Plaintiffs began substantial preparations for contested class certification proceedings.

---

for an Award of Attorneys' Fees, Costs and Class Representative Service Awards ("Goldenberg Decl.") (attached as <u>Exhibit 3</u>), and Declaration of Justin C. Walker in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Class Counsel's Motion for an Award of Attorneys' Fees, Costs and Class Representative Service Awards ("Walker Decl.") (attached as <u>Exhibit 4</u>) are an integral part of this submission. For the sake of brevity in this Memorandum, Plaintiffs respectfully refer the Court to these Declarations for a detailed description of, among other things: the history of the Action; the nature of the claims asserted in the Action; the negotiations leading to the Settlement; the value of the Settlement to the Class, as compared to the risks and uncertainties of continued litigation; a description of the services Class Counsel provided for the benefit of the Class; and a description of the Class Representatives participation in this case.

### B. Negotiation of the Proposed Settlement

With Defendants' motion to dismiss pending and the Parties recognizing their respective risks in the prosecution and defense of this case, the Parties agreed to enter settlement negotiations in order to attempt to seek a mutually acceptable resolution to the dispute. Towards this goal, the Parties attended a settlement conference before United States District Judge Michael R. Barrett on August 3, 2016. Although substantial progress was made, no settlement was reached. The Parties agreed to a follow up settlement conference with Judge Barrett on November 30, 2016 during which they negotiated a Memorandum of Understanding outlining most of the substantive terms of settlement. Therefore, in the early months of 2017, the Parties painstakingly negotiated the Settlement Agreement [Doc. 35-2], which in total exceeds 55 pages in length. Despite the Parties best efforts -- including ex parte telephone conversations and in-person meetings with Judge Barrett -- the Parties were ultimately unable to resolve related issues regarding attorneys' fees and expenses. However, the Parties agreed to let the Court resolve these remaining issues.

### C. The Settlement Agreement

1. <u>The Settlement Consideration</u>

Under the proposed Settlement Agreement, owners of Vitamix household blenders who timely submit a claim will be eligible to choose between (1) a new, free replacement blade assembly that does not fleck (i.e., repair of his or her blender) or (2) a gift card valued at $70.00 to be used for the purchase of any Vita-Mix blender or container.[3] Commercial blender owners who submit a claim will receive a new replacement blade assembly for each blender owned, with a maximum of two replacement blade assemblies per owner. Defendants have also agreed to pay

---

[3] Gift cards are transferable, have no expiration date, and may be used in connection with any promotion. Class Members who own multiple household blenders may choose between a transferable gift card in the amount of $140, or installation of a free new replacement blade assembly for each blender they own.

4

each class representative a service award equal to $3,000 for their time and effort associated with their participation in this action. Defendants have also agreed that Plaintiffs are entitled to a reasonable award of attorneys' fees and expenses, the amount of which shall be determined by the Court. Professor Geoffrey Miller, a notable expert in class actions, has estimated the value of the Settlement as at least $420,000,000 and Class Counsel has conservatively estimated the value of the Settlement at $300,000,000. *See* Declaration of Professor Geoffrey Miller ("Miller Decl.") at ¶¶ 22-23 (attached as Exhibit 5); Markovits Decl., at ¶ 9.

In exchange for this valuable consideration, Plaintiffs and the Class Members who do not timely exclude themselves will release their claims against Defendants.

2. Preliminary Approval and Class Notice

On October 31, 2017, the Court granted preliminary approval to the proposed Class Action Settlement, finding its terms to be "fair, reasonable, and adequate" [Doc. 40 at PAGEID # 642]. The Court's Order directed Class Counsel to disseminate notice in accordance with the Notice Plan, which the Court found met the requirements of due process and was the "best notice practicable under the circumstances" [Doc. 40 at PAGEID # 642-43].

Accordingly, Class Counsel and the Settlement Administrator instituted a broad notice program that included (1) issuing direct notice to Class Members by sending the Short Form Notice and Claim Form to Class Members via electronic mail and/or Regular U.S. Mail; (2) creating the Settlement Website where the Settlement Notice (Long Form) is prominently posted; (3) publishing the Publication Notice in *People*, *Good Housekeeping*, and *Cooking Light* magazines; (4) transmitting the Publication Notice over PR Newswire in English and Spanish on January 2, 2018; (5) posting advertisements on Facebook and Instagram with direct links to the Settlement Website; and (6) posting the Short Form Notice and Claim Form on the Settlement

5

Website. Class Counsel also established a specific toll-free phone number for Class Members to call the Settlement Administration regarding any questions about this case.

In order to provide direct notice to as many Class Members as possible, the Parties worked together to identify the major retailers of Vitamix products and jointly agreed to the contents of a cover letter that would accompany the written requests sent to those retailers for the purpose of collecting customer contact information. Copies of the joint letter, as well as the Court's October 31, 2017 order requiring third-party retailers to produce customer information, were sent to the retailers in November 2017 requesting the disclosure of the contact information for consumers who purchased Vitamix products from the retailers within the Class Period. Declaration of Settlement Administrator Jennifer M. Keough ("Keough Decl.") (attached as Exhibit 6), at ¶ 3; Goldenberg Decl., at ¶ 7 (noting that letters were sent to over 100 retailers, including Costco, Macy's Williams Sonoma, Target, and Bed Bath & Beyond). In response to the letters, the Parties and the Settlement Administrator received customer contact information from 35 retailers and will continue to receive this information from other retailers in the near future. Keough Decl., at ¶ 3.

To date, the Settlement Administrator has received contact direct contact information for over three-and-a-half million of the projected six million potential Class Members. *Id*., at ¶ 6. The Settlement Administrator used that information to issue direct notice to more than three-and-a-half million Class Members in the form of either electronic or paper copies of the Short Form Settlement Notice and Claim Form [Doc. 38-1]. Keough Decl., at ¶¶ 8-9. Any objections to the Settlement or requests for exclusion from the Settlement are due to be postmarked by March 7, 2018.

### III. ARGUMENT

**A. Final Class Certification is Appropriate.**

This Court preliminarily approved class certification for Settlement purposes in its October 31, 2017 Order [Doc. 40 at PAGEID # 641]. At this juncture, final approval is appropriate. The following is a summary of the detailed briefing previously submitted in connection with Plaintiffs' preliminary approval briefing [Doc. 35].

1. The Elements of Rule 23(a) are Satisfied

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, all four elements are satisfied.

*a. Numerosity*

Rule 23(a)(l) requires that Plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, the total number of blenders at issue is approximately six million, with only slightly fewer Class Members.

*b. Commonality*

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must

7

depend upon a common contention of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

In this case, there are numerous common questions of law and fact, such as whether the Vitamix blenders suffered from a defect that caused them to produce black flecks; whether Defendants had a duty to disclose that alleged defect to consumers; and whether the Class Members have actionable claims. Commonality is, therefore, satisfied. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 855 (6th Cir. 2013) (commonality satisfied because "the evidence confirms that the issues regarding alleged design flaws are common to the class"); *see also Daffin v. Ford Motor Co.*, No. C-1-00-458, 2004 WL 5705647, at *2 (S.D. Ohio July 15, 2004), aff'd, 458 F.3d 549 (6th Cir. 2008).

### c. Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id*. (citing 1 Herbert B. Newberg & Ala Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992)); *see also Am. Med. Sys.*, 75 F.3d at 1082 (same).

8

Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented. Here, all of the Plaintiffs' claims arise out of the same alleged conduct by Defendants related to the design, manufacture, and sale of the allegedly defective blenders, and the same legal theories apply to all. Typicality is satisfied.

### d. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976).

Here, both Plaintiffs adequately represent the class. Both Plaintiffs purchased a Vitamix blender during the Class Period that would be covered by the Settlement and both Plaintiffs were allegedly damaged in the same manner based on the same alleged defect. They have actively participated in the litigation of this case. In addition, Plaintiffs' counsel are qualified, as the Court previously recognized in appointing attorneys from Markovits, Stock & DeMarco, LLC, Goldenberg Schneider, L.P.A., and Finney Law Firm, LLC as Class Counsel [Doc. 40 at PAGEID # 641]. These firms have invested considerable time and resources into the prosecution of this action. Class Counsel possess a wealth of experience litigating complex class action lawsuits, and were able to negotiate an outstanding settlement for the Class Members.

### 2. The Requirements of Rule 23(b)(3) are Met in the Settlement Context.

In addition to satisfying Rule 23(a), the Settlement Class qualifies under Rule 23(b)(3). Rule 23(b)(3) provides that a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that

9

> a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "[A] plaintiff must establish that the issues in the class action that are subject to generalized proof ... predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks and citation omitted). With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the primary issue would be whether Vitamix blenders were defective, and whether Vita-Mix is liable. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See Daffin*, 2004 WL 5705647, at *2 (predominance satisfied where significant issues included: 1) whether throttles were defective; 2) whether that defect reduced the value of the car; and 3) whether Ford breached its warranty); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) ("the proof required [must focus] on Defendant's conduct, not on the conduct of the individual class members."). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Agreement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to it or to request exclusion from the Class. The settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against Defendants. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.") (Internal quotations omitted). Here, individual trials are not feasible; the proposed class action remedy is superior.

**B. The Settlement Agreement Merits Final Approval**

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." As a general matter, courts within this Circuit have noted the importance of refraining from any attempts to resolve the legal and factual issues that are the basis of the underlying lawsuit when considering the foregoing factors. *See Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000). It is not appropriate to "withhold approval simply because the benefits accrued from the [agreement] are not what a successful plaintiff would have received in a fully litigated case." *Levell*, 191 F.R.D. at 550. A settlement "is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed." *Bronson v. Bd. of Ed.*, 604 F. Supp. 68, 74 (S.D. Ohio 1984).

Thus, it is well-settled that "class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class." *Id.*;

11

*see also Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *12 (N.D. Ohio Sept. 1, 2011) (citing authorities). "In general, a reviewing court's task is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question is rather whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Brent*, 2011 WL 3862363, at *12 (internal quotes omitted).

The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013); *see also Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904-905 (S.D. Ohio 2011). The balance of these factors weighs in favor of granting final approval.

> 1. <u>The Settlement resulted from mediated, arm's-length negotiations without any risk or evidence of fraud or collusion.</u>

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Ala Conte, Newberg on Class Actions, § 11.41 at 90 (4th Ed. 2002). Courts presume the absence of fraud or collusion in settlement negotiations, unless there is evidence to the contrary. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1106 (S.D. Ohio 2001). Here, there is no such evidence.

This Settlement was the result of extensive, contentious, arm's-length negotiations between counsel with many decades of experience in handling complex, class action litigation. Negotiations were arduous and lengthy, stretching over a year under the close supervision of

Judge Barrett. His guidance was vital to achieving the Settlement. Judge Barrett's participation in the Parties' negotiations alone establishes the lack of fraud or collusion in this case.[4]

There is simply no evidence suggesting that fraud or collusion invaded any part of the mediated, arm's-length, and protracted settlement negotiations between the Parties. Accordingly, this factor strongly supports granting final approval.

> 2. <u>The complexity, expense, and likely duration of the litigation warrant final approval of the Settlement.</u>

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent*, 2011 WL 3862363, at *16 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002)).[5] This case is no different in that it is a consumer class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases.

In the absence of settlement, Plaintiffs' action would remain subject to the Court issuing a ruling on Defendants' motion to dismiss. Depending on the Court's ruling, amended pleadings – followed by another round of Rule 12 briefing – may be in order. Thereafter, the Parties would

---

[4] *See, e.g., Moran v. Wunderlich*, No. 3:05CV073, 2007 WL 3005235, at *2 (S.D. Ohio Oct. 12, 2007) (noting that settlement negotiations conducted by a federal magistrate judge were arm's-length and without the risk of fraud or collusion); *In re Regions Morgan Keegan Secs.*, Nos. 2:09-2209SMH V, 2:07-cv-02830-SHM-dkv, 2013 WL 12110279, at *5 (W.D. Tenn. Aug. 6, 2013) (noting that "[t]he parties protected against the risk of fraud or collusion by using a highly qualified and experienced independent mediator during settlement negotiations.").

[5] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (The "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

need to complete fact discovery, which would be voluminous, complicated, and expensive. Then, the Parties would need to undertake class certification and summary judgment briefing, which would likely require utilization of costly expert testimony. Continued litigation would certainly be an involved and expensive process.

Moreover, the resulting litigation, including any appeals, could take many years and involve substantial expense for all Parties. The uncertainty of continued litigation stands in stark contrast to the immediate relief offered by this Settlement. Therefore, the Settlement provides Settlement Class Members with real benefits now without having to endure the risks, duration, and expense that would surely follow if this litigation were to continue. *See Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The Court has no doubt that the required trials or hearings would have been time consuming, and that a complete resolution of the case would not be reached for several more years. This factor clearly weighs in favor of the proposed settlement.").

3. <u>Substantial discovery was conducted in this case.</u>

The Parties have already engaged in substantial discovery, which has included written discovery, the production and analysis of more than 47,500 pages of documents and more than 12 gigabytes of data, discovery from third-parties, and product testing. The Parties have also conducted a corporate representative deposition, and over a dozen depositions of fact witnesses. *See Mees v. Skreened, Ltd.*, No. 2:14-cv-142, 2016 WL 67521, at *5 (S.D. Ohio Jan. 6, 2016), adopted and accepted, 2016 WL 305166 (S.D. Ohio Jan 26, 2016) (granting final approval of class action settlements where parties participated in formal and informal discovery including the production of "thousands of pages of documents").

Based on the documents produced by Defendants and documents obtained through Class Counsel's independent investigation into the facts surrounding this matter, Class Counsel

consulted with experts and had testing performed to determine the extent of PFTE being emitted into anything blended in Vita-Mix containers. Plaintiffs' experts have also tested containers with the Replacement Seal and agree with Defendants that this new technology does not produce the black flecks that prompted this lawsuit.

In light of the substantial discovery that has taken place, this factor also lends support for granting final approval of the Settlement.

> 4. <u>The likelihood of success balanced against the amount and form of relief offered by the settlement weigh in favor of approving the settlement.</u>

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Although Plaintiffs remain confident in their claims against Defendants, Plaintiffs recognize the substantial risks involved in establishing liability and damages in this case. From the outset of this litigation, Defendants have consistently maintained that the allegations in this action are without merit. The Court could grant Defendants' pending motion to dismiss, or rule against Plaintiffs later in this case on issues related to class certification or summary judgement. Furthermore, there is a risk that a jury might award little or nothing in the way of damages. And even if Plaintiffs prevail on Defendants' motion to dismiss, class certification, summary judgment, and at trial, Plaintiffs would still face the potential for prolonged appeals to the Sixth Circuit.

15

By contrast, the Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. The Settlement delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

> 5. <u>The fact that both Plaintiffs' and Defendants' counsel, as well as the Plaintiffs, recommend approval of the Settlement strongly indicates that the Settlement is fair, reasonable, and adequate.</u>

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by class representatives who, like the Plaintiffs here, were intimately involved in the litigation and support the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and substantial benefits that will directly address the issue of removing PTFEs from the food or drink blended in the Vitamix containers. Defendants are also supportive of the Settlement, which was reached after two years of litigation and thorough settlement negotiations. As the result of substantial discovery conducted and extensive settlement negotiations, the

Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor a granting final approval.

### 6. It is premature to characterize absent class members' reactions to the Settlement.

The deadline for Class Members to object or opt out of the Settlement is March 7, 2018. Accordingly, Plaintiffs cannot yet assess the Class Members' reaction to the Settlement. However, after the March 7 deadline passes and before the Final Approval Hearing on March 27, 2018, Class Counsel will file a supplemental notice summarizing the number of claims,[6] objections, and opt-outs received.

### 7. This Settlement serves the public interest.

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2002)). *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[7] This Settlement serves the public's interest by ending already protracted litigation and freeing up judicial resources. *See In re Telectronics*, 137 F. Supp. 2d at

---

[6] Because the Parties want to give Class Members as much time as possible to participate in the Settlement, the deadline to submit a claim in this case is September 28, 2018 – approximately 6 months after the Final Approval Hearing. However, the Court will be able to sufficiently judge the reaction of the Class Members at the Final Fairness Hearing by the objections and opt-outs filed.

[7] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("noting that "[p]ublic policy generally favors settlement of class action lawsuits.").

1025; *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals.").

Particularly in light of the immediate benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

In total, all of the factors to be considerable when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

## IV. CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs respectfully request that the Court grant final approval and enter the proposed Order attached as Exhibit 1.

        Respectfully submitted,

        s/ *W. B. Markovits*
        W.B. Markovits (0018514)
        Paul M. De Marco (0041153)
        Christopher D. Stock (0075443)
        Andrew R. Biller (0081452)
        Terence R. Coates (0085579)
        MARKOVITS, STOCK & DeMARCO, LLC
        3825 Edwards Road, Suite 650
        Cincinnati, Ohio 45209
        Phone: (513) 651-3700
        Fax: (513) 665-0219
        *bmarkovits@msdlegal.com*
        *pdemarco@msdlegal.com*
        *cstock@msdlegal.com*
        *abiller@msdlegal.com*
        *tcoates@msdlegal.com*

        Christopher P. Finney (0038998)
        Justin Walker (0080001)
        FINNEY LAW FIRM, LLC
        4270 Ivy Point Blvd., Suite 225

Cincinnati, Ohio 45245
Telephone: (513) 943-6665
Facsimile: (513) 943-6669
*chris@finneylawfirm.com*
*justin@finneylawfirm.com*

Jeffrey S. Goldenberg (0063771)
GOLDENBERG SCHNEIDER, L.P.A.
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202-3604
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*JGoldenberg@gs-legal.com*

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I certify that on January 31, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on CM/ECF.

                                                          s/ *W. B. Markovits*
                                                          W.B. Markovits (0018514)
                                                          MARKOVITS, STOCK & DEMARCO, LLC