## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| VICKI LINNEMAN, *et al.*, On Behalf of Themselves and all Others Similarly Situated, | : | CASE NO. 1:15-cv-748 |
| | : | |
| | : | |
| Plaintiffs, | : | (Judge Susan J. Dlott) |
| | : | (Magistrate Judge Stephanie K. Bowman) |
| v. | : | |
| | : | |
| VITA-MIX CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS

Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), section 5.2(b) of the Parties' Settlement Agreement [Doc. 35-2], and the Court's Order dated October 31, 2017 [Doc. 40], Class Counsel[1] and Named Plaintiffs Vicki A. Linneman and Obadiah N. Ritchey ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the Settlement Class, respectfully move this Court for an Order approving the following payments in connection with the Settlement: (1) attorneys' fees to Class Counsel in the amount of $7,188,846.25; (2) $50,907.37 to reimburse Class Counsel for their out-of-pocket, documented expenses; and (3) Class Representative Service Awards of $3,000 to each Plaintiff.

---

[1] Capitalized terms not defined herein are as stated in the Class Action Settlement Agreement and Release dated September 26, 2017 [Doc. 35-2].

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**

## I.  INTRODUCTION

Plaintiffs and Class Counsel have litigated this action for years, attended multiple mediation sessions, conducted many months of negotiation with Defendants, and ultimately achieved an exceptional settlement for the benefit of the Settlement Class ("Class").  Under the Settlement, class members are provided an opportunity to be made ***100% whole*** by replacing the defective blender blade assemblies at issue in this case with non-defective blade assemblies at no cost – a remarkable accomplishment very few settlements can claim to achieve.  But the hard-struck bargain did not come easily.  Rather, it took considerable time, effort and skill from Class Counsel.

Plaintiffs respectfully request that the Court award pursuant to the Settlement Agreement (1) reasonable attorneys' fees to Class Counsel in the amount of $7,188,846.25; (2) $50,907.37 in reasonable, documented expenses; and (3) Service Awards of $3,000 to each of the Class Representatives.   Plaintiffs' requested attorneys' fee award is substantially less than the $9 million that Class Counsel agreed their request would not exceed [Doc. 38-1, ¶ 4], and is fully supported under a lodestar analysis.  The requested fee award also constitutes a very low percentage (2%-3%) of the value of the Settlement.   Because the requested fees, expenses, and service awards are reasonable, the Court should grant this motion.

## II. BACKGROUND

### A.  The Litigation

Plaintiffs initiated this action on November 19, 2015 when they filed a complaint against Defendants alleging that Vitamix blenders were defective because a seal in the container deposited tiny black polytetrafluoroethylene ("PTFE") flecks into blended food and drink [Doc. 1].  Plaintiffs filed the operative First Amended Class Action Complaint ("Complaint") on February 26, 2016 [Doc. 18].  It seeks certification of a nationwide class of purchasers of Vitamix blenders and asserts the following claims: (1) breach of express warranty; (2) breach of the implied warranty of merchantability; (3) negligent design, engineering, and manufacture; (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract; and (7) violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 et seq.).

After an initial Pretrial Conference was held on March 14, 2016 [Doc. 14], Defendants filed both a motion to dismiss [Doc. 20] and an answer with jury demand [Doc. 21] on April 15, 2016. Plaintiffs thoroughly researched Defendants' arguments and authorities and filed their response in opposition to Defendants' motion on May 9, 2016 [Doc. 23].  Defendants filed their reply on May 26, 2016 [Doc. 24].

### B.  Negotiation of the Proposed Settlement

With Defendants' motion to dismiss pending, and the Parties recognizing their respective risks in the prosecution and defense of this case, the Parties agreed to enter settlement negotiations in order to seek a mutually acceptable resolution to the dispute.  Towards this goal, the Parties attended a settlement conference before United States District Judge Michael R. Barrett on August 3, 2016.  Although substantial progress was made, no settlement was reached. However, the Parties agreed to a follow up settlement conference with Judge Barrett on

November 30, 2016, a lengthy and difficult negotiating session that included Vita-Mix's Chief Executive Officer.   It was during this session that they negotiated a Memorandum of Understanding outlining most of the substantive terms of settlement.   Thereafter, in the early months of 2017, the Parties painstakingly negotiated the detailed Settlement Agreement [Doc. 35-2], which in total exceeds 55 pages in length.   As part of the relief provided under the Settlement, Defendants agreed to pay Plaintiffs' reasonable attorneys' fees and expenses. Despite considerable effort – including ex parte telephone conversation and in-person meeting with Judge Barrett – the Parties were ultimately unable to agree to an amount of fees.   However, the Parties have agreed to submit the issue to the Court for resolution.

C. **The Settlement Agreement**

The full Agreement was filed with Plaintiffs' motion for preliminary approval and is explicitly incorporated here by reference [Doc. 35-2].   The Settlement Agreement essentially provides that owners of Vitamix household blenders with blade assemblies dated between January 1, 2007 and October 1, 2016, or a Vitamix commercial blender purchased after September 15, 2015 but before August 9, 2016 (or before April 7, 2017 in the case of a commercial blender from the XL product line), are eligible for benefits under the Settlement. *Id.* ¶ 3.8, 6.3-6.5.   Owners of Vitamix household blenders may choose between (a) a free new replacement blade assembly containing a newly designed seal that does not produce flecks into blended food or drink, or (b) a $70 transferable gift card for use toward a direct purchase from Vita-Mix of a blender or container. *Id.*   Owners of Vitamix commercial blenders will receive a replacement blade assembly containing a newly designed seal that does not produce flecks into blended food or drink. Defendants have also agreed to pay each class representative a service award equal to $3,000 for their time and effort associated with their participation with the action.

3

Defendants have agreed that Plaintiffs are entitled to reasonable award of attorney fees and expenses, the amount of which shall be determined by the Court.  Class Counsel conservatively estimate the value of the Settlement as at least $300,000,000. *See* Declaration of W.B. Markovits ("Markovits Decl."), ¶ 9 [Doc. 41-2].  In exchange for this valuable consideration, Plaintiffs and the Class Members who do not timely exclude themselves will release their claims against Defendants.

### D.  <u>Preliminary Approval and Class Notice</u>

On October 31, 2017, the Court granted preliminary approval to the proposed Class Action Settlement, finding its terms to be "fair, reasonable, and adequate" [Doc. 40, ¶ 6]. The Court's Order directed Class Counsel to disseminate notice in accordance with the Notice Plan, which the Court found met the requirements of due process and was the "best notice practicable under the circumstances. *Id.* ¶ 8. Under the approved notice program, the Settlement Administrator (1) issued direct notice to Class Members by sending the Short Form Notice and Claim Form to Class Members via electronic mail and/or Regular U.S. Mail; (2) created a Settlement Website where the Settlement Notice (Long Form) is prominently posted; (3) published the Publication Notice in *People*, *Good Housekeeping*, and *Cooking Light* magazines; (4) transmitted the Publication Notice over PR Newswire in English and Spanish on January 2, 2018; (5) posted advertisements on Facebook and Instagram with direct links to the Settlement Website; and (6) posted the Short Form Notice and Claim Form on the Settlement Website. Class Counsel has also established a specific toll-free phone number for Class Members to call the Settlement Administration regarding any questions about this Settlement.

In order to provide direct notice to as many Class Members as possible, the Parties worked together to identify the major retailers and vendors of Vitamix products and jointly

agreed to the contents of a cover letter that would accompany the written requests sent to those retailers for the purpose of receiving back customer contact information. Copies of the joint letter as well as the Court's October 31, 2017 order requiring third-party retailers to produce customer information were sent to the retailers in November and December 2017 requesting the disclosure of the contact information for consumers who purchased Vitamix products from the retailers within the Class Period. *See* Declaration of Jeffrey S. Goldenberg ("Goldenberg Decl.") [Doc. 41-3], ¶ 7 (noting that letters were sent to approximately 100 retailers, including Costco, Amazon, QVC, Macy's Williams Sonoma, Target, and Bed Bath & Beyond); Declaration of Jennifer Keough ("Keough Decl.") [Doc. 41-6], ¶ 3.

To date, the Settlement Administrator has received direct contact information for over 3.5 million of the projected six million potential Class Members. *Id*.; Goldenberg Decl., ¶ 7. The Settlement Administrator used that information to issue direct notice to these class members in either electronic or paper copies of the Short Form Settlement Notice and Claim Form [Doc. 38-1]. *See* Keough Decl., ¶¶ 8-9. Any objections to the Settlement or requests for exclusion from the Settlement must to be postmarked by March 7, 2018 [Doc. 40, ¶ 16].

### E. **Class Counsel's Substantial Efforts for the Benefit of the Class**

Although the Parties settled this case in the pre-trial stage, Class Counsel have invested a substantial amount of time and resources investigating and litigating this action. Markovits Decl., ¶¶ 12-13. Tasks performed by Class Counsel thus far include: (1) investigating the claims; (2) meeting and communicating regularly with Plaintiffs, including travel to meet with Plaintiff Obadiah Ritchey; (3) researching and drafting the complaint and amended complaint; (4) reviewing Plaintiffs' documents and preparing them for production; (5) drafting responses to Vita-Mix's written discovery; (6) drafting discovery requests and a protective order;

(7) negotiating the production of extensive Electronically-Stored Information ("ESI") and hard copy documents by Vita-Mix; (8) reviewing more than 47,500 pages of documents and 12 gigabytes of data from Vita-Mix; (9) drafting letters and subpoenas to third-party seal manufacturers and third-party retailers and reviewing the responsive information produced; (10) preparing for and participating in more than a dozen depositions; (11) retaining and consulting with experts regarding product testing; (12) researching and responding to Vita-Mix's motion to dismiss; (13) preparing for contested class certification briefing; (14) drafting multiple mediation statements; (15) drafting the Agreement and class notices; (16) researching and drafting the preliminary approval brief; (17) attending the preliminary approval hearing; (18) working with the claims administrator and Vita-Mix to develop the Settlement website; (19) analyzing Class member contact information produced by third parties; (20) overseeing administration of the Settlement; (21) responding to contacts from Class Members with questions about the Settlement; and (22) working with defense counsel to address issues arising in connection with the Settlement *Id.* ¶ 13.

Class Counsel have performed this work without compensation for their time and paid substantial out-of-pocket expenses in order to position this case for settlement. *Id.* ¶ 14. Before taking on this case, Plaintiffs and Class Counsel negotiated a customary contingency fee, with the understanding that this amount was an appropriate incentive for Class Counsel to take on the financial risks involved in the representation. Declaration of Justin Walker ("Walker Decl.") [Doc. 41-4], ¶ 6. Class Counsel also agreed to advance all costs of this litigation. *Id.* ¶ 6; Markovits Decl., ¶ 14. In the event that Class Counsel did not successfully resolve this matter or prevail at trial and any related appeals, Class Counsel would have been paid nothing.

III.    **ARGUMENT**

A.  **The Court Should Approve the Requested Attorneys' Fees**

Rule 23(h) of the Federal Rules of Civil Procedure expressly authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Here, Defendants have agreed to pay Plaintiffs' reasonable attorneys' fees as part of the relief afforded under the Settlement Agreement [Doc. 35-2, ¶ 10.2].  "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

Plaintiffs respectfully submit that an award of $7,188,846.25 fairly and reasonably compensates Class Counsel for the remarkable success achieved in this case. As a result of Class Counsel's efforts, Class Members will have an opportunity to be made 100% whole by replacing the defective blade assemblies with non-defective blade assemblies at no cost, or selecting a $70 gift card.

1.   **Lodestar Analysis Confirms the Reasonableness of the Requested Award**

Plaintiffs' fee request is fully supported by the lodestar method of calculating attorneys' fees.  The lodestar method accounts for the amount of work performed by counsel and ensures that counsel is fairly compensated for the results achieved. *See Rawlings*, 9 F.3d at 515–16.  In determining an appropriate "lodestar" figure, a court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The court may then adjust the "lodestar" to

reflect relevant considerations peculiar to the subject litigation. *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

        a.   <u>Class Counsel Reasonably Expended Over Three Thousand Hours</u>

This litigation has been handled in an efficient, streamlined manner by all involved on Plaintiffs' side. During the course of the litigation, Class Counsel maintained contemporaneous and detailed time records, which include a detailed description of all expenses incurred and work performed. As reflected in the attached summaries,[2] the total hours reasonably expended by the Class Counsel during the nearly three years that this litigation has been pending is 3,318.14. *See* Markovits Decl., ¶¶ 14, 19; Goldenberg Decl., ¶ 12; Walker Decl., ¶ 11.

However, Class Counsel will conduct significant additional work following this filing. In addition to responding to possible objectors and preparing for and presenting at the fairness hearing and addressing any appeals, Class Counsel will be required to oversee the administration of the Settlement, continue identifying Class Members from information provided by non-party retailers, and respond to questions or issues raised by their Class Members. In two relatively recent class action settlements, for example, Class Counsel Markovits, Stock & DeMarco performed work after the attorney fee filing the value of which has averaged about $800,000 per

---

[2] Because of the large volume of bills generated over the course of the litigation, and because the billing records contain significant and repeated discussions of attorney work product that would need to be aggressively redacted to account for the possibility that the Court declines to grant final approval to the Settlement and the case returns to active litigation, Plaintiffs have not publicly filed their detailed time and expense entries. Notably, courts do not require counsel to submit detailed time records in support of a lodestar fee application. *See City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries*, No. 2:14-CV-1380, 2014 WL 7404000, at *13 (S.D. Ohio Dec. 30, 2014) (concluding that the number of hours expended on the litigation were reasonable based on summary charts provided by plaintiffs' counsel and the court's knowledge of "the complexity of the case, the use of experts, the nature and quality of the filings, the time constraints…, and the results ultimately achieved"); *In re Ford Motor Co. Spark Plug & Three Valve Engine Products Liab. Litig.*, No. 1:12-MD-2316, 2016 WL 6909078, at *10 (N.D. Ohio Jan. 1, 2016) (approving fee based upon summaries). However, in case the Court believes review of these records would be useful, Plaintiffs will provide them to the Court for *in camera* review. For reference, summary charts of Class Counsel's lodestar and expenses are attached as <u>Exhibit 1</u>. Charts including each of Class Counsel's lodestar and expenses were attached to the Markovits, Goldenberg, and Walker Declarations [Docs. 41-2, 41-3, 41-4] and are combined in <u>Exhibit 2</u>. Also, the charts included in Exhibit 2 are also referenced in Professor Miller's Declaration [Doc. 41-5].

case to date, with lodestar continuing to accrue. Markovits Decl., ¶ 17. Similarly, Goldenberg Schneider, L.P.A., serving as Co-Lead Class Counsel, settled a nationwide auto defect class action in 2016, and Goldenberg Schneider, L.P.A. and the other Co-Lead Counsel's firm have accrued an estimated $750,000 in lodestar implementing that settlement since filing their fee application. Goldenberg Decl., ¶ 20. Class Counsel conservatively estimate an additional lodestar of $750,000 will be spent to bring this case to final resolution and to fully implement the settlement.

Thus, Class Counsel's total fee for purposes of seeing this litigation through to its conclusion will be approximately $2,478,912.50 - $1,728,912.50 in historical lodestar plus $750,000 in future estimated lodestar. *See Lasalle Town Houses Coop. Ass'n v. City of Detroit*, No. 4:12-CV-13747, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016) ("The fees appropriately were computed based on work hours and estimated future work hours through the conclusion of the litigation, on a 'lodestar' basis."); *Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (same); *Sykes v. Harris*, No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *16 (S.D.N.Y. May 24, 2016) (lodestar, "including future post-settlement work" calculated at $4.35 million, resulting in multiplier of 3.3); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 3175924, at *4 (N.D. Cal. July 21, 2017) (permitting class counsel to factor in approximately $4.5 million of anticipated lodestar related to future work implementing settlement when granting a lodestar multiplier). *See also* Declaration of Geoffrey P. Miller ("Miller Decl.") [Doc. 41-5], ¶ 34.

b. <u>Class Counsel's Hourly Rates are Reasonable</u>

Class Counsel's requested rates are also reasonable. In determining a reasonable hourly rate, courts may look at "national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys." *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002) (citing *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983)). Class Counsel's rates — ranging from $185 to $700 for attorneys and $100 to $150 for paralegals and staff — reflect rates that are normally charged by Class Counsel for work of this nature and that have been approved by prior courts within the Sixth Circuit. *See* Markovits Decl., ¶ 20; Goldenberg Decl., ¶¶ 14-18; Walker Decl., ¶ 14; *see also Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 WL 4159682, at *16-18 (S.D. Ohio Aug. 5, 2016) (report and recommendation approving hourly rates up to $850 per hour for counsel experienced in class action litigation), adopted and affirmed *Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 WL 4449709 (S.D. Ohio Aug. 24, 2016); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 793-94 (N.D. Ohio 2010) (approving hourly rates up to $825 as reasonable "based on this Court's knowledge of attorneys' fees in complex civil litigation and multi-district litigation").[3]

These rates are reasonable, particularly given that this was a nationwide class action, Class Counsel's experience litigating similar class actions and being approved at similar rates by

---

[3] *See also Weitz & Luxenberg, P.C. v. Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) (thirteen years ago, approving rates for attorneys with 1-5 years of experience at $200/hour and 15+ years at $500/hour); *Doe 1-2 v. Déjà Vu Servs.*, No. 2:16-cv-10877, 2017 WL 2629101, at *10 (E.D. Mich. June 19, 2017) (approving rates as high as $685/hr); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2017 WL 3525415, at *4 (E.D. Mich. July 10, 2017) (recognizing that "senior lawyers at top law firm routinely charge well over $1,000" and approving rates where "only the most senior attorneys list hourly rates above $700"); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) (approving hourly rates of $460 to $998 for attorneys, $309 for paralegals, and $190 for legal assistants); *In re Mercedes-Benz Tele Aid Contract Litig.*, No. 07-CV-2720, 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011 (finding reasonable, in consumer class action settlement, hourly rates up to $855 for partners and up to $560 for associates).

courts in the Southern District of Ohio, and the national scope of Class Counsel's practices. Miller Decl, ¶¶ 26-33 (attesting to reasonableness of Class Counsel's rates).

c. A Lodestar Multiplier of 2.9 is Appropriate

The total lodestar for Class Counsel's past and anticipated future time in this case is $2,478,912.50. Markovits Decl., ¶ 18. However, trial judges are permitted to adjust the "lodestar" to reflect relevant considerations peculiar to the subject litigation. *Adcock-Ladd*, 227 F.3d at 349. The factors which the district court may consider include the twelve listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[4] Plaintiffs' requested fee award of $7,188,846.25 represents a lodestar multiplier of 2.9, which is supported by the majority of relevant *Johnson* factors. *See also* Miller Decl., ¶¶ 35-38 (providing expert opinion supporting lodestar multiplier).

1) Results Obtained:  The degree of success obtained is the "most critical factor" in determining whether and how much to award in attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  The Settlement provides Class Members an opportunity for ***full recovery***.  The primary issue raised by Plaintiffs in this case is that the affected Vitamix blenders are defective because they have a seal that produces flecks of PTFE into blended food or drink.  The Settlement provides a complete remedy: a new blade assembly with a Replacement Seal that will *not* produce flecks of PTFE into blended food or drink, provided to Class Members at no cost with shipping included.[5]

---

[4] These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 349 n.8.

[5] The Settlement also provides Class Members the option of receiving a $70 gift card that is transferable, is stackable (two can be combined), can be used in conjunction with promotions, has no expiration date, and can be applied toward the purchase from Vitamix of a blender or container.

The value of a new blade assembly with free shipping is approximately $105.[6]  Markovits Decl., ¶ 9.  The value of a transferable, stackable gift card to be used on Vitamix products is $70. *Id*.  Adopting a lower end estimate for the number of blenders that fall within the Class, Class Counsel conservatively estimate the value of the Settlement at $300 million.[7]

The results obtained support the requested fee. Miller Decl., ¶¶ 38, 44.

2) Time & Labor: Although Plaintiffs were able to resolve the action relatively early in the litigation, courts recognize that Class Counsel "should not be 'punished' for efficiently litigating this action*." In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., No. 2672 CRB (JSC), 2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017). "A positive multiplier rewards … Class Counsel for its efforts in achieving a swift settlement, while recognizing that counsel's efficiency actually reduced its lodestar." *Id*.  *See also the Bowling v. Pfizer, Inc*., 922 F. Supp. 1261, 1282 (S.D. Ohio 1996) (weighing fact that "Counsel settled this case in swift and efficient fashion" in awarding fees); *Long v. HSBC USA INC*., No. 14 CIV. 6233 (HBP), 2016 WL 4764939, at *13 (S.D.N.Y. Sept. 13, 2016) (applying 3.10 multiplier because "Counsel's efficient and effective representation of plaintiffs in bringing this action and securing the settlement warrants an increase in the lodestar figure"); *Jackson v. Wells Fargo Bank, N.A*., 136 F. Supp. 3d 687, 717 (W.D. Pa. 2015) (finding 2.83 multiplier "supported by the excellent result achieved for the class and the efficiency with which class counsel resolved the matter"); *Rivera v. Agreserves, Inc*., No. 1:15-CV-00613-JLT, 2017 WL 445710, at *13 (E.D. Cal. Feb. 1, 2017) (applying 2.69 multiplier based in part on argument that "[a]warding Plaintiff

---

[6] A replacement blade assembly purchased from the Vitamix website currently costs $85.95, with estimated tax of $7.79 and estimated shipping of $11.43. Markovits Decl., ¶ 9.

[7] *Id*.; Assuming the estimated number of blenders that fall within the Class is correct at 6 million, and assuming the value for each class member is at least $70, the fair value of the settlement would be $420 million (6 million multiplied by $70). *Id.; see also* Miller Decl., ¶ 22.

a lesser amount of fees based on a lower multiplier would penalize Plaintiff's counsel for achieving a stellar result with maximum efficiency"). *See also* Miller Decl., ¶ 38.

3) <u>Novelty & Difficulty</u>: This is not a run-of-the-mill product defect case. The technical nature of the claimed defect — flecking of a substance that tests have indicated is medically inert — puts this case into relatively uncharted territory. Vita-Mix sought to dismiss most of Plaintiffs' claims due to what they termed was a lack of actual harm or injury [Doc. 20]. By accepting the case, Class Counsel agreed to "plow new ground" by basing their claims on economic loss in light of the fact that the defect is not believed to cause physical harm. Combine that with the inherent complexity of a class action, and the degree of difficulty in prosecuting this action was high. *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (recognizing that most class actions are inherently complex). This case also involved difficult issues of product liability and warranty law in multiple states, which were further complicated by the fact that the alleged defect is not believed to cause physical harm to users. Absent the Settlement, Plaintiffs would be required to use inventive and novel arguments to overcome Defendants' anticipated defenses. *See* Markovits Decl., ¶ 11; Miller Decl., ¶ 37.

4) <u>Experience, Reputation, and Skill</u>: Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Omnivision Techs., Inc. Sec. Litig*., No. 5:11-CV-05235-RMW, 2015 WL 3542413, at *2 (N.D. Cal. June 5, 2015) (citation omitted). The reputation, experience and skill of Class Counsel were essential to the success in this litigation. *See In re Rite Aid Corp. Secs. Litig*., 396 F.3d 294, 304 (3d Cir. 2005). Had the Parties not reached a settlement, they would have continued to debate complex legal questions before this Court and possibly the Sixth Circuit. At no time have Defendants ever conceded liability, the appropriateness of class certification (other than for

settlement purposes), or the existence of damages. Given the significant risks and uncertainty associated with this complex class action, it is a testament to Class Counsel's skill, creativity, and determination that they were able to negotiate an excellent Settlement providing substantial relief.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Class Counsel. This case was vigorously defended by counsel experienced at defending product defect actions. During this litigation, Defendant was primarily represented by the firm of Porter Wright, a 200+ attorney national law firm with an excellent reputation. That Class Counsel achieved the Settlement for the Class in the face of formidable and talented legal opposition further evidences the quality of their work.

Class Counsel's qualifications are set forth in their firm resumes and declarations [Doc. 35-3, 35-4, 35-5], and Memorandum in Support of Preliminary Approval [Doc. 35], which are incorporated herein. As these qualifications demonstrate, Class Counsel is highly skilled in handling major complex litigation and has extensive experience litigating class actions. Class Counsel have achieved a number of favorable decisions in complex class actions. *See, e.g.*, Markovits Decl., ¶ 21; Goldenberg Decl., ¶ 4. These results not only demonstrate that Class Counsel's skill level supports the requested fee, but also positioned the Class for a strong Settlement in this case. *See* Miller Decl., ¶ 38.

5) <u>Preclusion of Other Employment</u>: Given the relatively small size of Class Counsel's law firms, this case presented a substantial risk, not only based upon the foregoing external factors, but also because internally these litigation groups specialize in select complex litigations. The firms' complex litigation practices have a relatively low volume of cases that are ordinarily taken on a contingent fee basis, and which require a considerable outlay both in terms of attorney

and professional staff resources, as well as the fronting of significant expenses to prosecute the action. Therefore, by agreeing to take on this representation, Class Counsel were precluded from working on other matters. *See* Markovits Decl., ¶ 14.

6) <u>Customary Fee</u>: Class Counsel's requested hourly rates are comparable to rates for which they have been previously approved,[8] and fall well below those commonly approved in this forum, in the Sixth Circuit, and in similar nationwide class actions. *See, e.g., Gilbert*, 2016 WL 4449709 (approving rates up to $850); *Lonardo*, 706 F. Supp. 2d at 793-94 (up to $825); *see also* Miller Decl., ¶¶ 26-33 (citing cases).

7) <u>Contingent Fee</u>: "The fact is that, despite the most zealous and competent of efforts, success is never guaranteed. Class Counsel face serious risk since judicial review is unpredictable." *Lavin v. Husted*, No. 1:10CV1986, 2015 WL 5124793, at *1 (N.D. Ohio Aug. 31, 2015). Class Counsel agreed to accept this case on a completely contingent basis, and therefore, in the years that this case has been litigated, Class Counsel have not been paid for the work they have performed or reimbursed for the expenses they have incurred. Attorneys may be entitled to a larger fee when their compensation is contingent in nature. *See Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999) ("In other words, the reasonable hourly rate may be adjusted *upward* to account for the risk of non-payment inherent in a contingency fee arrangement.") (Emphasis in original); *Vizcaino v. Microsoft*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Class Counsel's request for the application of a fee enhancement (2.9 multiplier) stems from the "established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Int'l Bd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc*.,

---

[8] *See* Markovits Decl., ¶ 20; Goldenberg Decl., ¶¶ 14-18; Walker Decl., ¶ 14.

No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012) (quoting *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours, yet received no remuneration whatsoever despite their diligence and expertise. *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated" when "[c]lass counsel undertook their representation upon a fully contingent basis, entailing a risk of over a million dollars of attorney time, and over one hundred thousand dollars in costs."). Therefore, any fee award has always been at risk and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.

At the time Class Counsel took on this case, the outcome was uncertain. Class Counsel is aware of no other cases that involved products that function as designed but cause consumers to ingest small amounts of foreign, but physically harmless, substances. There was a significant risk of non-recovery, which supports the requested fee award. *See* Miller Decl., ¶ 36.

8) <u>Undesirability of Case</u>: "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Kritzer v. Safelite Solutions, LLC,* No. 2:10-CV-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (citing *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765–66 (S.D. Ohio 2007)). Class Counsel furthered the public interest by forcing Defendants to quickly fix the defective seal, issuing class notice so that Class Members would be aware of the defect, and providing a cost-free remedy. *See Aarons v. BMW of N. America, LLC*, No. CV 11-7667 PSG, 2014 WL 4090564, at *14 (C.D. Cal., Apr. 29, 2014) (noting that "Class Counsel advanced the public

interest by enforcing consumer protection laws...."). And, as demonstrated by Defendants' engagement of premier and highly skilled defense counsel, Defendants had ample resources to vigorously oppose this litigation. This factor supports the requested fee award. *See* Miller Decl., ¶ 27.

9) <u>Similar Cases</u>: As previously noted, Plaintiffs' requested fee award of $7,188,846.25 represents the application of a 2.9 multiplier.[9] This is well within a reasonable range. *See* Miller Decl., ¶¶ 39-40. *City of Plantation*, 2014 WL 7404000, at *18 (awarding fees using lodestar analysis and finding multiplier of 3 to be appropriate based on "skill of counsel, the risk undertaken by counsel, and counsel's ability to quickly resolve the dispute on favorable terms"); *Long*, 2016 WL 4764939, at *15 (awarding fees using lodestar analysis and applying 3.10 multiplier); *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (5.9 multiplier is "above average" but nevertheless reasonable); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5-6 (S.D. Ohio Dec. 21, 2012) (surveying out-of-circuit decisions applying multipliers from 4.3 to 8.75 before finding 3.06 "very acceptable").[10]

---

[9] Even if one excludes Class Counsel's anticipated future lodestar, the resulting multiplier would still be a reasonable 4.16.

[10] *See also Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 WL 553764, at *2 (S.D. Ohio Feb. 28, 2008) (multiplier of 3.04 is "fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation"); *Merkner v. AK Steel Corp.*, 1:09-cv-00423-TSB, ECF No. 79, at 6-7 (S.D. Ohio Jan. 10, 2011) (5.3 multiplier); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-Ac-DAS, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (3.01 multiplier reasonable); *Hillson v. Kelly Servs. Inc.*, 2:15-cv-10803, 2017 WL 3446596, at *5-6 (E.D. Mich. Aug. 11, 2017) (multiplier of 4 in case that settled following limited discovery followed by mediation); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ.A. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug 11, 1999) (3.8 multiplier); *Vizcaino*, 290 F.3d at 1052–54 (listing 24 percentage-based fee awards and multipliers for each, in which the average multiplier is 3.2); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 938 n.45 (N.D. Ohio 2003) (citing "highly instructive" study analyzing attorney fee awards in 1,120 class actions that showed effective multipliers averaged 3.89 across all 1,120 cases, and 4.50 across the 64 cases where the recovery exceeded $100 million).

### 2. Plaintiffs' Requested Award is Reasonable as Percentage of the Settlement Value

Plaintiffs' requested fee award is also reasonable as a percentage of the estimated value of the Settlement. Courts agree that even if a settlement does not result in a formal fund (*i.e.,* an identified sum of money deposited into an account and made available to beneficiaries) – which is often the case with claims-based settlements and settlements involving future benefits – the percentage of the fund methodology may nevertheless be used as long as the court can reasonably determine the value of the settlement. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333-34 (3d Cir. 1998) ("We agree with the district court that this [uncapped, claims-based future fund] is more appropriately viewed under the common fund paradigm …. Consequently, the district court was required to make a 'reasonable estimate' of the settlement's value in order to calculate attorney's fees using the percentage-of-recovery method.").

Here, the requested fee of $7,188,846.25 is between 2-3% of the conservatively estimated $300 million settlement value. Markovits Decl., ¶ 9. That would put the requested fee award well below the "benchmark" percentage of 25% that is commonly awarded. *In re Polyurethane Foam Antitrust Litig*., 178 F. Supp. 3d 635, 641 (N.D. Ohio 2016) (noting benchmark of 25% with normal range of 20-30%). *See also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements & Their Fee Awards,* 7 J. Empirical Legal Studies 811, 839 (2010) (providing that for settlements in the range of $250-$500 million, the average attorneys' fee award was 17.8%); *Physicians of Winter Haven LLC v. Steris Corp*., No. 1:10 CV 264, 2012 WL 406966, at *3-6 (N.D. Ohio Feb. 6, 2012) (awarding fees as a percentage (10%) of estimated fund because it is "easiest approach and is consistent with the Manual for Complex Litigation" even though the full value of claims-based settlement is "not now precisely knowable"); *Enter. Energy Corp. v.*

18

*Columbia Gas Trans. Corp.*, 137 F.R.D. 240, 249-50 (S.D. Ohio 1991) (awarding $5 million in attorney fees from $56 million estimated value of settlement (8.8%), which included approximately $25 million in future benefits for class). *See* Miller Decl., ¶¶ 42-44.

### B.  Plaintiffs' Requested Expenses Are Reasonable and Should Be Granted.

The Settlement Agreement provides that Defendants will pay Plaintiffs' reasonable expenses. [Doc. 35-2, ¶ 10.2]. To date, Class Counsel has incurred, and seeks reimbursement of, $50,907.37 in costs and expenses. Markovits Decl., ¶ 14, 19; Goldenberg Decl., ¶ 19; Walker Decl., ¶ 15.  These expenses are recoverable because they are the type of expenses typically billed by attorneys to paying clients in the marketplace and include normal costs incurred in connection with travel, experts, computerized research, court filing and services, deposition and court reporters, and document storage, printing, copying, and shipping. *See New Eng. Health Care Employeees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) (approving expenses submitted pursuant to these categories); *Zarwasch-Weiss v. SKF Economos USA, Inc.*, 838 F. Supp. 2d 654, 675 (N.D. Ohio 2012) (similar).  These expenses were reasonable and necessary to prosecute this litigation, and Class Counsel advanced these expenses without assurance that they would be recouped.  Accordingly, Class Counsel are entitled to this expense reimbursement. *See In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 7348208, at *12 (N.D. Ohio Nov. 19, 2015).

### C.  The Court Should Approve the Requested Class Representative Service Awards

The Settlement Agreement also provides, subject to Court approval, that Defendants will pay each named Plaintiff a $3,000 service award "solely as compensation for their time and effort associated with their participation in this Lawsuit." [Doc. 35-2, ¶ 9.2].  Among other things, Plaintiffs: (1) met with Class Counsel at the outset of the case; (2) assisted with

investigation of the facts; (3) reviewed the complaint prior to filing; (4) worked with Class Counsel to respond to written discovery; (5) prepared for and attended their depositions; (6) consulted with Class Counsel during the course of settlement negotiations; and (7) regularly communicated with Class Counsel and provided input and answers to questions whenever needed. Walker Decl., ¶¶ 5-6; Declaration of Vicki Linneman ("Linneman Decl."), ¶¶ 3-6, attached as Exhibit 3; Declaration of Obadiah N. Ritchey ("Ritchey Decl."), ¶¶ 3-6, attached as Exhibit 4. Plaintiffs also have submitted declarations in support of final approval of the settlement. Linneman Decl., ¶ 8; Ritchey Decl., ¶ 8. Accordingly, the Court should approve the requested services awards as commensurate with the Plaintiffs' role in the case and consistent with the Court's prior practice.[11]

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant Class Counsel and Plaintiffs' request for an attorney fee award of $7,188,846.25, expenses reimbursement of $50,907.37, and Service Awards to the Class Representatives of $3,000 each.

Respectfully submitted,

s/ W. B. Markovits
W.B. Markovits (0018514)
Paul M. De Marco (0041153)
Christopher D. Stock (0075443)
Andrew R. Biller (0081452)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DeMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
bmarkovits@msdlegal.com

---

[11] See, e.g., Bert v. AK Steel Corp., No. 1:02-CV-467, 2008 WL 4693747, at *1 (S.D. Ohio Oct. 23, 2008) (approving $10,000 incentive award to each class representative); Birr v. Amica Mut. Ins. Co., No. 1:08CV124, 2011 WL 1429171, at *1 (S.D. Ohio Apr. 14, 2011) (adopting magistrate's Report and Recommendation approving incentive payment to the Class Representative of $5,000).

*pdemarco@msdlegal.com*
*cstock@msdlegal.com*
*abiller@msdlegal.com*
*tcoates@msdlegal.com*

Christopher P. Finney (0038998)
Justin Walker (0080001)
FINNEY LAW FIRM, LLC
4270 Ivy Point Blvd., Suite 225
Cincinnati, Ohio 45245
Telephone:  (513) 943-6665
Facsimile:  (513) 943-6669
*chris@finneylawfirm.com*
*justin@finneylawfirm.com*

Jeffrey S. Goldenberg (0063771)
GOLDENBERG SCHNEIDER, L.P.A.
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202-3604
Telephone:  (513) 345-8291
Facsimile:  (513) 345-8294
*JGoldenberg@gs-legal.com*

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on January 31, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on CM/ECF.

           <u>s/ *W. B. Markovits*    </u>
           W.B. Markovits (0018514)
           MARKOVITS, STOCK & DEMARCO, LLC