UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VICKI LINNEMAN, *et al.*, | : | Case No. 1:15-cv-748 |
| | : | |
| Plaintiffs, | : | (Judge Susan J. Dlott) |
| | : | (Magistrate Judge Stephanie K. Bowman) |
| vs. | : | |
| | : | |
| VITA-MIX CORPORATION, *et al.*, | : | <u>PUTATIVE CLASS ACTION</u> |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' SURREPLY**
**<u>OPPOSING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES</u>**

Class Counsel's reply shows that their hours continue to increase exponentially. In the two months between the filing of the fee petition on January 31, 2018 and Class Counsel's reply on April 10, 2018, they claim an additional 864.80 hours. (Doc. 87, Reply, PageID #3561, at p. 17.) Vita-Mix objects to the majority of this claimed time for the reasons set forth on the exhibit accompanying this surreply. (*See* Doc. 104-1, Third Turnbull Declaration, PageID #4067–4122, Objections, at pp. 1–56.) Among other reasons, Class Counsel spent most of these additional 865 hours advocating for their fees—almost as much time as they spent in the year between settlement of the merits and moving for preliminary approval.[1]

By making an unreasonably high request for fees bearing no relation to this District's Rubin rates, the hours spent on the merits, or the results achieved, Class Counsel attempt to hide the fact that "meeting in the middle" would yield an unfair result—compensation in excess of $1,500 per hour on the merits ($3.6 million for 2,300 hours) and in excess of $1,000 per hour

---

[1] Class Counsel claim 2,325.74 hours litigating the merits through December 6, 2016, about the time the parties reached agreement on a memorandum of understanding to settle this class action. (*See* Doc. 104-1, Turnbull Declaration, PageID #4047, at p. 1, ¶ 2.) By January 31, 2018, when Class Counsel moved for preliminary approval, those claimed hours had grown to 3,318.14—a difference of 992.4 hours in the year *after* the parties settled the merits. (*Id.*, PageID #4048, p.1, at ¶ 3.)

through preliminary approval ($3.6 million for 3,300 hours). Even an award of fees at a quarter of the amount Class Counsel seek (about $1.8 million) would produce hourly rates in excess of $780 on the merits, and nearly $550 an hour through preliminary approval. A reasonable and fair award of Class Counsel's lodestar at Rubin rates would be $1,436,706.63.

Vita-Mix has always recognized and agreed that it would pay reasonable attorneys' fees to Class Counsel as part of its business decision to put this litigation behind it. Indeed, Vita-Mix even agreed to pay the notice and settlement administration costs (currently estimated up to $2 million—a material amount for a family business the size of Vita-Mix). But the millions of dollars Class Counsel seek out of all proportion to the amount of time spent litigating the merits, the lack of merit in Plaintiffs' claims, and the benefits actually delivered to the class, fall far outside the bounds of what is reasonable or fair and penalize Defendants for doing the right thing by proactively solving the flecking issue even before litigation was filed and by reaching an early resolution of this litigation.

## SURREPLY TO MISCHARACTERIZATIONS OF FACTS

Defendants will not repeat the facts developed in discovery and relating to the settlement set forth in its brief in support of final approval (Doc. 65). However, Defendants are constrained to point out Class Counsel's numerous mischaracterizations. Among the most egregious:

- Vita-Mix has not characterized the settlement "as purely a coupon settlement." (Doc. 87, Reply, PageID #3545, at p. 1.) Nor did Vita-Mix "wholly ignore[] the Settlement's repair remedy." (*See* Doc. 72, Opposition, PageID #3074, #3085, #3100, at pp. 2, 13, Ex. B.)

- Vita-Mix does not "disparage[e] the Settlement." (Doc. 87, Reply, PageID #3546, at p.2.) To the contrary, Defendants supported final approval. (*See, e.g.*, Doc. 65, Defendants' Brief in Support of Final Approval, PageID #2609, at p. 2.)

To puff the appearance of the settlement's results for the class, Class Counsel disparage and mischaracterize the efforts Vita-Mix undertook to address the concerns some of its

customers may have had about the flecking issue before this litigation commenced, including research and development of a new seal that resists flecking *before* this lawsuit was filed:

- Class Counsel fault Defendants for developing an interim replacement that "had only a fraction of the lifespan of the original" seal. (Doc. 87, Reply, PageID #3547, at p. 3.)  However, the evidence shows that seal lasts an average consumer for decades. (Doc. 81-1, Surreply, PageID #3450, at p. 3; Doc. 80-1, Second Fleming Deposition, PageID #3444, at p. 1, ¶¶ 3–4.)

- Class Counsel maintain that Vita-Mix voluntarily exchanged only 750 containers before this lawsuit (Doc. 87, Reply, PageID #3547, at p. 3), but overlook the fact that third-party retailers such as Costco account for approximately 80% of Vita-Mix's sales.  Costco in particular has a generous exchange policy and had tens of thousands of product returns and exchanges after the fleck issue went viral on social media, but Vita-Mix does not know the reasons for those returns and exchanges.  (Doc. 64-4, Fleming Decl., PageID #2574, at p. 8, ¶ 27.)

- Class Counsel leave the impression that only 887 people received notice of the flecking issue in 2014.  (Doc. 87, Reply, PageID #3546, at p. 2.)  To the contrary, Vita-Mix's social media director, using the same methodology she uses to track social media activity in her job, estimates that news of the flecking issue reached more than 1.3 million people.  (Doc. 64-3, Zelasko Decl., PageID #2564, at p. 1, ¶ 2.)

- Contrary to Class Counsel's claim (Doc. 87, Reply, PageID #3547, at p. 3), the record shows that consumers who wanted to exchange their containers had an easy time doing so (*see* Doc. 64-7, Transcript, PageID #2601–06, at pp. 1–6).

- When Vita-Mix voluntarily exchanged containers with customers, Class Counsel fault Defendants for simply replacing one flecking seal with another.  (Doc. 87, Reply, PageID #3547, at p. 3.)  But the record shows that not all seals flecked.  (*See* Doc. 65, Defendants' Brief in Support of Final Approval, PageID #2613–14, at pp. 6–7.)

Consumer Reports agrees that not all affected seals fleck; its independent testing found no evidence of flecking in blended food or drink.  (Doc. 64-6, Consumer Reports, Jan. 3, 2018, PageID #2593, at p. 3.)  Moreover, the parties agree that any flecks are inert and do not cause harm.  (Doc. 79-1, Reply, PageID #3436, at p. 18.)

## SURREPLY ARGUMENT

In their reply, Class Counsel raise new arguments for the first time and rely on several misstatements of the law.  Vita-Mix limits this surreply to four of these points.

3

I.  **Class Counsel Attempt to Value the Benefits of the Settlement, But Use a 100% Redemption Rate and Unsupported Methodology.**

Class Counsel premise their fee request on "the extraordinary results achieved here because the Class will be provided an opportunity to be made 100% whole." (Doc. 87, Reply, PageID #3552, at p. 8.) But the law does not permit an award of fees based on "an opportunity" for class members to be made whole or on the claimed value "made available" to the class. Even before enactment of CAFA, a "court should refuse to allow attorneys to receive fees based on an inflated or arbitrary evaluation of the benefits to be delivered to class members." *Hooker v. Sirius XM Radio, Inc.*, No. 4:13-cv-003, 2017 WL 4484258, at *3 (E.D.Va. May 11, 2017) (quoting Manual for Complex Litigation § 21.71 (2004)).

I.A.  **Class Counsel Abandon Their Claimed $300 Million Valuation, But No Evidence Supports the Artificially High $28 Million Figure They Now Use.**

For the first time in reply, Class Counsel undertake a valuation of the settlement that is something other than $300 million, which they have used thus far to justify a request for an unreasonable fee award. (Doc. 87, Reply, PageID #3549–50, at pp. 5–6 n.7.) But even the $28 million value Class Counsel now calculate (without evidence or expert support) is unreasonable and optimistically high for at least three reasons.

1

Class Counsel assume a redemption rate of 100%. Courts do not credit such unrealistic assumptions. *See, e.g.*, *Keene v. Coldwater Creek, Inc.*, No. C 07-05324, 2009 WL 1833992, at *3 (N.D. Cal. June 23, 2009) ("[A] large claims rate . . . almost never happens."); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008). Even Class Counsel's expert accepts the obvious fact that "not all class members will take advantage of the full settlement benefits." (Doc. 41-5, Miller Decl., PageID #722, at p. 6, ¶ 23.)

4

Nor has he undertaken any analysis to determine that rate. (Doc. 61, Miller Dep., PageID #2035, 45:1–14.) In fact, like Defendants' expert, Professor Miller agrees that it is not possible to determine the redemption rate at this time. (*Id.*)

2

Class Counsel value each replacement blade assembly at $105. (Doc. 87, Reply, PageID #3549-50, at pp. 5-6 n.7.) For this figure, Class Counsel rely on Vita-Mix's sale of replacement blade assemblies to *commercial* customers. (Doc. 42, Motion, PageID #800, at p. 12 & n.6; Doc. 41-2, Decl., PageID #679, at p. 4, ¶ 9.) However, Vita-Mix does not sell blade assemblies for household products, which comprise nearly 99% of the replacement blade assemblies at issue—fewer than 1,000 of the nearly 85,000 class members claiming this benefit own a commercial blender. (Doc. 104-1, Third Turnbull Declaration, PageID #4048, at p. 2, ¶ 5.) Therefore, there is no readily available market price that would allow the sort of easy valuation Class Counsel urge for replacement blade assemblies for household use. Defendants' expert testified as much (*see* Doc. 87-1, Buffo Dep., PageID #3581, 54:25–55:23)—and Class Counsel present no evidence to the contrary.[2]

In any event, Class Counsel's attempt to fix a value for the replacement blade assemblies overlooks a simple fact: class members who elect this benefit do not receive $105 in value, $12.87, or any other particular amount. Instead, class members must return their containers to Vita-Mix to receive the benefit of a new blade assembly and give up their old blade assembly; therefore, class members actually receive the value of *the difference* between a new and old blade assembly. That is, to receive the benefit of a replacement blade assembly (valued at

_____

[2] Other websites purport to sell Vitamix blade assemblies for $12.87 (on eBay) and $62.00 (on Amazon). (*See* Doc. 104-1, Turnbull Declaration, PageID #4048, at p. 2, ¶ 6.) Vita-Mix does not authorize these or other retailers to sell replacement blade assemblies for household use. (*See* Doc. 104-2, Third Fleming Declaration, at p. 2, ¶ 5.)

whatever specific dollar amount) class members must surrender their old blade assembly, which is worth an equivalent amount. In essence, class members receive a blade assembly but give one of equivalent value up—the difference between the two is the new fleck-resistant seal. That seal costs *less* than the earlier one it replaces. At most, then, Class Counsel can claim only to have provided to class members who actually receive a new seal the $0.675 Vita-Mix pays for each.

3

Class Counsel count each coupon redeemed as putting $70 in cash in the pocket of a class member. (Doc. 87, Reply, PageID #3549-50, at pp. 5-6 n.7.) But each coupon redemption requires a class member to expend money. Indeed, Class Counsel do not dispute that class members will have to expend their own funds to use the settlement's coupons, which are unable to purchase any product outright, even in combination. Contrary to Class Counsel's claim (*id.*, PageID #3550, at p. 6 n.7), each coupon redeemed does not result in "benefits paid" to class members. To the contrary, each coupon redeemed results in revenue to Vita-Mix.

\*     \*     \*

For all these reasons, the $28 million value for the settlement Class Counsel now claim is illusory.[3] Further, Class Counsel provide no evidence to support any aspect of their valuation calculation.

### I.B.     Contrary to Class Counsel's Claim, the Settlement Does Not Deliver Everything Sought in the Amended Complaint.

Class Counsel premise their fee request on the boast that they have delivered "everything [class members] would hope for." (Doc. 87, Reply, PageID #3552, at p. 8.) Contrary to this claim, the settlement Class Counsel negotiated does *not* deliver "everything class members

---

[3] Because Class Counsel fail to account for the redemption rate, even this hypothetical valuation is a ceiling. For example, a redemption rate of 10% would result in a valuation of less than $3 million—even accepting all the other assumptions in Class Counsel's proffered calculation (which Defendants do not).

would hope for." To the contrary, the Amended Complaint sought, among other things, (1) a recall of Vitamix blenders; (2) a refund of the purchase price class members paid; and (3) statutory damages. (Doc. 18, Amended Complaint, PageID #88-89, at pp. 27-28, ¶¶ C, D, F & I.) Through the settlement, Class Counsel delivered *none* of these things, justifying a reduced fee under the law of this Circuit. *See, e.g.*, *Woods v. Northport Pub. Sch.*, 487 F. App'x 968, 980 (6th Cir. 2012); *Mann v. Acclaim Fin. Servs.*, 348 F. Supp. 2d 923, 930 (S.D. Ohio 2004). In fact, the settlement does not deliver a single penny of cash to any class member.

Instead of focusing on what they actually prayed for in the Amended Complaint, Class Counsel now move the target and claim to have hit it out of the park with the settlement benefit of a replacement blade assembly. The class disagrees. Out of the 3.8 million class members who received notice, fewer than 85,000 want a replacement blade assembly—about 2%. Yet Class Counsel tout replacement blade assemblies as the basis for using a multiplier out of all proportion to what the facts or the law permit on top of an already excessive fee request. (Doc. 87, Reply, PageID #3552, at p. 8.) Contrary to the actual claims experience, which shows that class members prefer the $70 coupon by a two-to-one margin, Class Counsel also insist that the replacement blade assembly constitutes the primary settlement benefit. (*Id.*, PageID #3548, at p. 4.) In making this argument, Class Counsel go so far as to claim that the fewer than 1,000 commercial class members who have submitted a claim—compared to the more than 160,000 class members who selected a coupon—show that replacement blade assemblies constitute the settlement's primary benefit. (*Id.*) That position defies commonsense.

## II.  Class Counsel Cite *No* Authority That the Settlement's "Gift Cards" Are Not Coupons for Purposes of CAFA.

Class Counsel cite *no* authority, not one case, to support their claim that the settlement's "gift cards" do not constitute coupons for purposes of CAFA. (*See* Doc. 87, Reply, PageID

#3548, at p. 4.)  Nor do Class Counsel dispute that, when determining what constitutes a coupon under CAFA, substance controls over form.

## III.    Class Counsel Artificially Inflate Each Part of Their Claimed Lodestar.

Alternatively, CAFA permits this Court to base fees on Class Counsel's lodestar.  28 U.S.C. § 1712(b).  Even so, the lodestar method under CAFA still requires close scrutiny of fees in a coupon settlement, particularly where, as here, class members receive no monetary payment. *See, e.g.*, *Tyler v. Michaels Stores, Inc.*, 150 F. Supp. 3d 53, 62 (D. Mass. 2015) (applying enhanced scrutiny in CAFA coupon settlement to reduce Class Counsel's unreasonably high lodestar); *Martina v. L.A. Fitness Int'l, Inc.*, No. 2:12-cv-2063, 2013 WL 5567157, at *4 (D.N.J. Oct. 8, 2013) (noting that "[CAFA] instructs district courts to apply additional scrutiny to class settlements consisting in whole or in part of 'coupons.'").  Each variable in Class Counsel's lodestar suffers from legal and factual errors, resulting in an unreasonable award.  Proper calculation of Class Counsel's lodestar, through April 10, 2018, yields a total award of Attorneys' Fees and Expenses of $1,436,706.63, to which Vita-Mix would not object.

### III.A.  Class Counsel Rely on Inapposite Authority to Maintain That This District's Rubin Rates Do Not Apply.

Class Counsel insist that this District's Rubin rates are mere guideposts that do not apply to them.  (Doc. 87, Reply, PageID #3559, at p. 15.)  For this argument, Class Counsel rely on *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 995 F. Supp. 2d 835, 845–46 (S.D. Ohio 2014).  (*See* Doc. 87, Reply, PageID #3559, at p. 15.)  That reliance is misplaced. *Schumacher* was an ERISA class action in which the court relied on three other ERISA cases, an ADEA case, and one civil rights case litigated by a "preeminent civil rights attorney" (who later took *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), to the Supreme Court).  In each of these other cases on which the *Schumacher* Court relied, the fees pale in comparison to those Class Counsel

8

seek here.[4]   In *Schumacher*, the court awarded fees using rates ranging from $115 (for paralegals) to $538 for senior partners ($124 to $582 in 2016 dollars).   Notably, the court declined to apply a multiplier, finding the case was not a "rare and exceptional" one justifying a departure from lodestar.   *Schumacher*, 995 F. Supp. 2d at 849.   At bottom, the rates Class Counsel seek fall well outside the bounds of the Rubin rates this District uses to assess the reasonableness of a fee award.

### III.B.   Class Counsel May Not Recover "Fees on Fees," Which the Settlement Agreement Does *Not* Allow.

"[A]bsent statutory authorization or contractual agreement between the parties, the prevailing American rule is that each party in federal litigation pays his own attorneys' fees." *Crossville Med. Oncology P.C. v. Glenwood Sys., LLC*, 610 F. App'x 464, 470 (6th Cir. 2015) (disallowing fees for post-arbitration litigation).   Where, as here, a settlement agreement does not expressly allow compensation to secure payment of fees, district courts conclude that there is no basis under the American rule to award "fees on fees" (fees for time spent seeking payment of fees).   *See, e.g.*, *Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 Civ. 4968, 2015 WL 8784211, at *12–13 (S.D.N.Y. Dec. 15, 2015).   Similarly, in a common-fund settlement, a court may award fees on fees.   *See, e.g., Reynolds v. ALR Credit Servs.*, No. 8:15CV25, 2016 WL 7494906, *3 (D. Neb. Feb. 16, 2016).   But this case does not involve a common fund settlement.

---

[4] *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011) (approving rates from $250 to $450 for ADEA case ($304 to $548 in 2016 dollars)); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764 (Feb. 28, 2008) (approving $450 an hour ($616 in 2016 dollars) for experienced ERISA specialists in a national case settled by the creation of a $600 million trust fund); *Neiheisel v. AK Steel*, No. 1:06-cv-030, 2008 WL 163610 (S.D. Ohio Jan. 17, 2008) (approving a "very experienced local ERISA attorney's requested $350 rate in 2007," which works out to $498 in 2016); *Barnes v. Cincinnati*, 401 F.3d 729 (6th Cir. 2005) (approving hourly rate of $350 ($539 in 2016 dollars) for a "preeminent local civil rights attorney"); *Jorling v. Habitation Servs.*, No. 1:03-cv-00073, 2005 WL 1657060 (July 14, 2005) (approving rates of $385 for the senior partner and $250 for his associate ($593 and $385 in 2016, respectively)).

With the exception of *Bailey*, where experienced ERISA specialists secured a $600 million fund, these rates are generally within the range of reasonableness (though perhaps at the high end) established by this District's Rubin rates, unlike the national rates Class Counsel seek for a case litigated by Cincinnati lawyers in Cincinnati on behalf of named class representatives who all live in Cincinnati and are local friends and family of Class Counsel.

Class Counsel try to muddy these waters by arguing that the Sixth Circuit recently overruled the 3% cap on fees on fees established in *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986). (Doc. 87, Reply, PageID #3560, at p. 16 (citing *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 725 (6th Cir. 2016)).) But the *Coulter* cap applied to civil rights cases under Section 1988, a fee-shifting statute, not to class action settlement agreements.[5]

In any event, Class Counsel offer no explanation why it is reasonable to reward litigation over fees by encouraging Class Counsel to hold out for more and run up their lodestar, even if the Settlement Agreement permitted fees on fees (it does not). Indeed, Class Counsel's supplemental time records demonstrate the perverse effects of such a rule. Since filing their fee petition on January 31, 2018, Class Counsel claim an additional 865 hours in just over two months (through April 10, 2018). (*See* Doc. 87, Reply, PageID #3561, at p.17; Doc. 90-1, Time Entries, PageID #3807, at p. 56.) Of this time, Defendants' analysis shows that over half (more than 430 hours) represents time for fees on fees and that just 85.7 of these hours are properly substantiated and compensable. (*See* Doc. 104-1, Third Turnbull Declaration, PageID #4053, at p. 6, ¶ 16.) In this respect, where there is no fee-shifting statute or common fund, an award of fees on fees would result in fee litigation in every class action settlement. That is not reasonable. And it is not fair to Vita-Mix—particularly in the face of Defendants' previously-expressed willingness to pay lodestar at this District's Rubin rates.[6]

---

[5] Class Counsel also rely on *Morse v. Specialized Loan Servicing, LLC*, No. 2:16-cv-689, 2018 WL 549372, at *4-5 (S.D. Ohio Jan. 25, 2018), to support their argument that the *Coulter* cap no longer applies. But *Morse* also involved a case under a fee-shifting statute, the Fair Debt Collection Practices Act, and Class Counsel cite no authority that this Court may award fees on fees where the Settlement Agreement does not permit them. In *Morse*, the court recommended payment for 12 hours of "fees on fees" time, a 50% reduction of the number of hours claimed. *Id.* at *5.

[6] Class Counsel rely on a single case, *Reyes v. Bakery & Confectionery Union & Industry International Pension Fund*, 281 F. Supp. 3d 833, 856–57 (N.D. Cal. 2017), to support their argument for future fees. There, the court allowed such time because the defendant provided no contrary authority. In contrast, Vita-Mix identified several cases showing that *Reyes* is an outlier and that future fees should be disallowed or minimal. (*See* Doc. 72,

### III.C. This Court Should Not Mistake Vita-Mix's Pragmatism for a Concession That Class Counsel's Claimed Hours Are Reasonable—They Are Not.

Class Counsel make much of Defendants' willingness to pay reasonable fees as part of the settlement. (*See, e.g.*, Doc. 87, Reply, PageID #3558, at p. 14.) Rather than flyspeck Class Counsel's time entries, Vita-Mix agreed not to object to a reasonable award of Attorneys' Fees and Expenses up to Class Counsel's lodestar at Rubin rates with no multiplier as a means of streamlining this dispute and the issues necessary for its resolution. (Doc. 72, Opposition, PageID #3074, at p. 2.) Defendants stand by that position; however, Class Counsel's hours have grown by 865 hours in just two months (much of it litigating this fee dispute), raising their total lodestar to nearly $2.2 million at the above-market rates they seek. (Doc. 87, Reply, PageID #3555, at p. 11 n.13.) Applying Rubin rates (from 2016), that $2.2 million lodestar is just under $1.7 million ($1,698,166.78). (*See* Doc. 104-1, Third Turnbull Decl., PageID #4048, at p. 2, ¶ 4.)

Because Class Counsel criticize Defendants for not contesting individual time entries (Doc. 87, Reply, PageID #3545, p. 1), Vita-Mix challenges all but 85.7 of these additional hours for the reasons set forth in the accompanying exhibit. (*See* Doc. 104-1, Third Turnbull Decl., Exhibit 6, Objections, PageID #4067–4122, at pp. 1–56.) Many of these entries contain plainly non-compensable time or expenses. For example, Class Counsel claim time for a Cincinnati-based attorney to travel from Key West, Florida to the fairness hearing in Cincinnati; travel from Cincinnati to Dayton to have an affidavit executed; and for having lawyers billing at partner-level rates for legal research and other tasks that could be performed by associates. (Doc. 90-1,

---

Opposition, PageID #3091, at p. 19 & n.7.) In any event, the *Reyes* Court awarded $1.4 million in fees based on 3,000 total hours, then applied a 1.77 multiplier in an ERISA class action settlement. To the extent Class Counsel suggest *Bowling v. Pfizer*, 922 F. Supp. 1261, 1281 (S.D. Ohio 1996), permits payment of future fees (Doc. 87, Reply, PageID #3562–63, at pp. 18–19), it does so on the terms ordered there, which require periodic application to the court after services are rendered. There is no basis for such an approach in the very different settlement here.

Time Entries, PageID #3771, #3790 & #3803, at pp. 20, 39 & 52.)  No client would pay these and many other time entries.  *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (a fully compensatory fee is one that "is traditional with attorneys compensated by a fee-paying client").[7]

In their reply, Class Counsel argue that their claimed hours are reasonable because they are less than those of Defendants' counsel (Doc. 87, Reply, PageID #3554, at p. 10 n.11), even though Defendants did not advance such an argument.  To make this comparison, Class Counsel chose not to provide the Court with the information Defendants produced in discovery, which shows that Class Counsel are comparing apples and oranges.  (*See* Doc. 104-1, Ex. D, Porter Wright Hours, Jan. 31, 2018, PageID #4065, at p. 1; Doc. 104-1, Ex. E, Porter Wright Hours, Mar. 31, 2018, PageID #4066, at p. 1.)  Specifically, that information shows that the core team representing Vita-Mix worked 3,200 hours through January 31, 2018 and 3,800 hours through March 31, 2018, as opposed to Class Counsel's 3,300 hours and 4,165 hours, respectively. Further, unlike Class Counsel, Defendants had to harvest, review, and produce significant volumes of electronically stored information.  Adjusting for this responsibility, which accounted for at least 2,065 hours, Defendants' counsel worked a total of 3,221 hours through January 31, 2018 and 3,823 hours through March 31, 2018.  In context, then, the hours of Defendants' counsel do not support the inferences Class Counsel would like this Court to draw.

Finally, compared to fees awarded in comparable cases, an award of Attorneys' Fees and Expenses of $1,436,706.63 (Class Counsel's lodestar at Rubin rates) is fair and reasonable.  The

---

[7] Additionally, Vita-Mix adheres to its prior arguments that future fees and fees incurred before Class Counsel had clients are not compensable and that the conduct of Class Conduct warrants a reduction in fees.  Class Counsel do not dispute that this Court may disallow or reduce time entries from a lawyer or firm for engaging in inappropriate conduct.  Out of professional courtesy, Defendants stopped short of alleging or identifying specific misconduct or violations of rules.  Because Class Counsel press the point (Doc. 87, Reply, PageID #3562–63, at pp. 18–19), Defendants are constrained to point out that the Ohio Supreme Court's Board of Professional Conduct recently affirmed that the sort of *ex parte* communication that initiated this lawsuit violates Rule 4.2 of the Ohio Rules of Professional Conduct.  *See* Opinion 16-005; *see also* Opinion 05-003.  For present purposes, what matters is that Class Counsel do not dispute that this Court may reduce fees due to behavior of this sort and described in Defendants' opposition.

law recognizes that, to ensure that fees are reasonable, "[t]he Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees." *In re Ins. Brokers Antitrust Litig.*, MDL No. 1663, 2007 WL 2916472, at *5 (D.N.J. Oct. 5, 2007) (common fund settlement).  Tellingly, in their reply, Class Counsel offer no response to fees awarded in comparable cases showing that the award for which Vita-Mix argues is reasonable and fair.  That silence speaks volumes.[8]

### III.D.  CAFA Specifically Precludes Use of a Percentage Cross Check.

Under CAFA, the only permissible contingent-based award is "the value to class members of the coupons that are redeemed."  28 U.S.C. § 1712(a).  As Class Counsel recognize, this provision of the statute is mandatory.   (*See* Doc. 87, Reply, PageID #3548, at p. 4.) Significantly, the cases on which Class Counsel rely (Doc. 87, Reply, PageID #3549, at p. 5) did *not* perform a percentage cross-check.  *See Chambers v. Whirlpool*, 214 F. Supp. 3d 877, 904 (C.D. Cal. 2016); *In re HP Power Plug & Graphic Card Litig.*, No. C-06-02254, 2008 WL 2697192, at *3  (N.D. Cal. July 8, 2008).   Where, as here, class-wide benefits are not easily monetized, a cross-check is entirely discretionary."  *Chambers*, 214 F. Supp. 3d at 904.  For these reasons, Class Counsel's criticism of Defendants' expert for not using a discretionary percentage cross-check misses the mark.  (*See* Doc. 87, Reply, PageID #3545, at p. 1 n.1.) Indeed, Class Counsel concede that a cross-check is "optional."  (*Id.*, PageID #3545, at p. 1.)  In any event, Class Counsel make clear that they do not actually seek a fee award based on a percentage cross-check.  (*See* Doc. 87, Reply, PageID #359, at p.5.)  Instead, Class Counsel use this methodology to make otherwise unreasonably high fees appear less so.

---

[8] Vita-Mix identified several comparable cases in Exhibit B to its opposition (*see* Doc. 72-2, Ex. B to Opposition, PageID #3100–02, at pp. 1–3), which is updated with new cases decided since then in a Supplemental Exhibit B accompanying this surreply.

## IV.   This Is Not a Rare or Exceptional Case Warranting a Multiplier.

Class Counsel agree that the law of this Circuit has a "strong presumption" that use of the lodestar method is sufficient *without* any multiplier absent rare and extraordinary circumstances. (Doc. 87, Reply, PageID #3551, at p. 7.)   However, contrary to Class Counsel's claim (*id.*, PageID #3550 at p. 6), "[w]hether the obligation to pay reasonable attorneys' fees arises from statute or contract, the court's analysis of the reasonableness of the fees is similar." *Payne v. Tri-State Careflight, LLC*, 278 F. Supp. 3d 1276, 1293 (D.N.M. 2017) (applying presumption that multiplier is only appropriate in rare circumstances).

### IV.A.   Class Counsel's Arguments Based on the *Johnson* Factors Are Unavailing.

Rather than respond point-by-point to each of Class Counsel's claims about the *Johnson* factors, which support using a multiplier less than 1.0 in this case, Defendants limit their discussion to three points:

*First*, Class Counsel maintain that their unsupported valuation of the settlement measures the value of benefits made available to the class that entitle them to a windfall, even if no member of the class ever redeems a coupon or follows through to obtain a replacement blade assembly.  (Doc. 87, Reply, PageID #3553, at p. 9.)  For this proposition, Class Counsel rely on *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016).  There, however, the court did not apply the rule for which Class Counsel cite the case.  Instead, the court affirmed a judgment based on an extensive record supporting a claims-based valuation, which would not be appropriate on the different facts and circumstances here.  *Id.* at 288.  In this respect, *Gascho* is consistent with the longstanding principle that "it is unreasonable for class counsel to be compensated for a hypothetical recovery that never took place."  *Create-a-Card, Inc. v. Intuit*, No. 07-06452, 2009 WL 3073920, at *3 (N.D. Cal. Sep. 22, 2009).

14

*Second*, Class Counsel offer no explanation why there is any risk in recovery after Defendants offered to pay Class Counsel's reasonable lodestar. (Doc. 87, Reply, PageID #3557, at p. 13.) They claim (again) that payment of fees is a benefit to the class; however, the cases on which they reply have no application here. In *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 775 (N.D. Ohio 2010), the court described fees as a benefit to the class because the settlement provided that up to a third of the fees which the defendant agreed to pay could revert to class members who filed a claim. There is no such agreement or possibility here.[9] In more typical circumstances, such as those here, attorneys' fees and administrative and notice expenses are costs of settlement that provide *no* value to class members. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). More fundamentally, Class Counsel fail to explain why—whether fees confer a benefit on the class or not—any risk in recovery remains after Vita-Mix did the right and honorable thing by agreeing to pay reasonable attorneys' fees. That agreement removed the risk in recovery of fees from Class Counsel, shifted it to Defendants, and militates against use of a multiplier.

---

[9] Class Counsel also rely on the magistrate judge's report and recommendation in *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *36 (S.D. Ohio Apr. 4, 2014). It is not clear why. There, the magistrate judge recommended overruling objections to a settlement that guaranteed a minimum of $1.3 million in cash payments to class members, with a maximum potential payout of $15 million. *Id.* at *5. In this respect, the *Gascho* settlement is not a coupon settlement and more closely resembles a common fund. Based on the claims submitted, the settlement actually delivered $1.59 million in cash payments to class members based on a redemption rate of 10.2% of claims submitted for a payout of actual cash. *Id.* at *36.

The defendant agreed to pay up to $2.39 million in fees. *Id.* at *6. For such a large fee award, class counsel claimed 8,684 hours (over more than 2 years of litigation) at hourly rates ranging from $180 to $450— which are in line with this District's Rubin rates. *Id.* at *34. When it came to a multiplier, the court used a multiplier less than 1. (*Id.* at *35 ("[T]he fee request results in a lodestar multiplier less than one.").) In contrast to Class Counsel here, the lawyers there "has not billed for a significant number of attorney hours expended after the date of settlement." *Id.*

The magistrate judge performed a cross-check of the lodestar calculation and made a valuation of the cash settlement for that purpose. *Id.* at 36. Then, the magistrate judge determined the reasonableness of the fee award relative to that valuation, because a settlement where the class does not receive a cash payout but class counsel receive fees may be unfair. *Id.* at *37. On these facts, the fee award was favorable to the defendant. (*See* Doc. 72-2, Ex. B to Opposition, PageID #3100, at p. 1.)

15

*Third*, to claim that they passed up work, Class Counsel rely on their own declarations. (Doc. 87, Reply, PageID #3554–55, at pp. 10–11.) But those declarations are entirely conclusory and self-serving. They provide no supporting detail to identify *any* matter any lawyer involved in this case passed up to prosecute Plaintiffs' claims as required. *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1084 (S.D. Tex. 2012) (holding that some information regarding the "other employment" is required). In fact, several affidavits concede that Class Counsel actively litigated other sizable matters as this case remained ongoing. (*See, e.g.*, Doc. 48-2, DeMarco Aff. at ¶¶ 14–16; Doc. 48-19, Goldenberg Aff. at ¶¶ 11–12.)

### IV.B.  If This Court Applies a Multiplier, Class Counsel's New Proffered Valuation Supports Using a Multiplier Considerably Lower Than 2.9.

Even if the $28 million valuation Class Counsel now propose for the value of the benefits made available to the class is accurate (Doc. 87, Reply, PageID #3549–50, at pp. 5–6 n.7), and, for the reasons explained above, it is not, the methodology of Class Counsel's expert supports using a multiplier well below the 2.9 figure Class Counsel urge. In his declaration and at his deposition, Professor Miller referenced a table from his 2017 article to identify the median and mean multipliers in class action settlements. (*See* Doc. 41-5, Miller Decl., PageID #735, at p. 19, ¶ 40; Doc. 61, Miller Dep., PageID #2053, 116:8–117:24.) For a settlement where the class recovers between $23.4 million and $67.5 million, that 2017 study reports a median multiplier of 1.5 and a mean of 1.65. (Doc. 105-4, Miller 2017 Article, PageID #4301, at p. 967.)

Here, the parties do not know the class's actual recovery because the redemption period will not commence until after the claims deadline of September 28, 2018—after the settlement administrator completes its work by November 12, 2018. (Doc. 35-2, Settlement Agreement, PageID #486, at p. 18, ¶ 5.1(e)(vii)). Even then, the class will not recover any cash at all— making the appropriate mean multiplier 0.67 and the appropriate median multiplier 0.85 under

16

Professor Miller's analysis—assuming this is a rare and exceptional case where a multiplier is appropriate at all. (Doc. 105-4, Miller 2017 Article, PageID #4301, at p. 967.)

### IV.C. Although Class Counsel Change Their Position on the Question, They Were Correct When Initially Arguing That Federal Law Controls.

To avoid this Circuit's strong presumption against use of a multiplier, Class Counsel argue for the first time in reply that federal law does not govern fees in this case. Of course, having not raised this argument until reply, this Court may disregard it because it is waived. *See, e.g.*, *Standard Fire Ins. Co. v. Zeisler*, No. 1:15-cv-805, 2018 WL 950100, at *5 (S.D. Ohio Feb. 20, 2018) (Dlott, J.)

When Class Counsel petitioned for fees, they argued that federal law governs. (*See, e.g.*, Doc. 42, Brief, PageID #795, at p. 7.) In reply, however, Class Counsel apparently now agree with the objectors who argued that state law determines fees in this case (Doc. 63, Lorenzo & DeJulius Objection, PageID #2538, at p. 2)—even though Class Counsel previously urged this Court to overrule this objection (Doc. 71, Reply, PageID #3049, at p. 10). Upon reflection, these objectors reconsidered their position and concluded that federal law (and CAFA in particular) governs the fee award in this case. (Doc. 94, Supplement to Objection, PageID #3821, at p. 1.)

Class Counsel's new-found argument that state law governs fees fails on the merits. It depends on mischaracterizing the basis for this Court's jurisdiction. Contrary to Class Counsel's claim, this case is not a "diversity action." (Doc. 87, Reply, PageID #3551, at p. 7.) Instead, this Court has jurisdiction pursuant to CAFA. (Doc. 18, Amended Complaint, PageID #63, at p. 2, ¶ 2.) Where CAFA provides the basis for federal jurisdiction, courts determine fees under federal law. *See Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 391 (D.N.J. 2012) (collecting cases holding that when a court's jurisdiction is based on CAFA diversity, federal law controls the award of fees). Of course, because the settlement's "gift cards" constitute coupons

17

under CAFA, that statute "explicitly regulates how this Court may award attorneys' fees." *Tyler*, 150 F. Supp. 3d at 61. In arguing otherwise, Class Counsel maintain that the sole basis for fees in this case is the parties' agreement, abandoning any claim that any of the fee-shifting statutes in their underlying causes of action supports an award of fees. (Doc. 87, Reply, PageID #3550, at p. 6.) Class Counsel then rely on diversity cases and go on to explain the "vitally important" differences between federal and state law that limit their fees under the former, but arguably not under the latter. (*Id.*, PageID #3551, at p. 7.) But when Class Counsel opposed the objection on this basis, they argued that "[t]he federal/state issue is a red herring because it is a distinction without a difference." (Doc. 71, Reply, PageID #3049, at p. 10.) The lengths to which Class Counsel go to avoid the limitations of federal law on fee awards—under CAFA and otherwise— show the relative merits of the parties' respective positions.

## CONCLUSION

Class Counsel emphasize Defendants' agreement to pay reasonable attorneys' fees as part of the settlement of this class action. (Doc. 87, Reply, PageID #3550, at p. 6.) However, Vita-Mix did not agree to a multiplier. Vita-Mix did not agree to pay fees on fees. Vita-Mix did not agree to compensate Class Counsel at above-market rates (or anything other than Rubin rates). And Vita-Mix did not agree to pay fees or any other sums to settle with any objector.

Further, Class Counsel dismiss the reasons Vita-Mix agreed to settle this frivolous litigation. (Doc. 87, Reply, PageID #3554, at p. 10.) But the federal courts have long recognized the potentially crippling stakes that defendants confront even in frivolous class litigation, like the lawsuit Class Counsel pursued here. *See, e.g.*, *In re Delta Air Lines*, 310 F.3d 953, 957 (6th Cir. 2002) ("[M]any corporate executives are unwilling to bet their company that they are in the right in big-stakes litigation.") (quotation omitted).

These concerns and potential stakes motivated Vita-Mix to resolve this litigation when the evidence developed in discovery supported the company's defenses and provided leverage for a favorable settlement. Having failed to negotiate a settlement that delivers a single penny to class members, Class Counsel seek to enrich themselves to the tune of millions of dollars. "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). This Court should not now penalize Vita-Mix for having acted responsibly. Doing so would be unfair to Vita-Mix, both on the facts of this dispute and when compared to fee awards in other cases.[10]

Respectfully submitted,

/s/ Carolyn A. Taggart
Carolyn A. Taggart (0027107)
*Trial Attorney
Porter Wright Morris & Arthur LLP
250 East Fifth Street, Suite 2200
Cincinnati, Ohio 45202-5118
Phone: (513) 369-4231
Fax: (513) 421-0991
Email: ctaggart@porterwright.com

Tracey L. Turnbull (0066958)
J. Philip Calabrese (0072709)
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio 44113
Phone: (216) 443-9000
Fax: (216) 443-9011
Email: tturnbull@porterwright.com
pcalabrese@porterwright.com

*Counsel for Defendants*

---

[10] Defendants reserve the right to submit a proposed order following the hearing on June 28, 2018 and to make specific objections to the proposed order Class Counsel submitted *sua sponte* on June 13, 2018.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2018 I electronically filed the foregoing with the Clerk of the United States District Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Carolyn A. Taggart
Counsel for Defendants

**SUPPLEMENT TO EXHIBIT B**

**SUPPLEMENTAL COMPARISON TO FEES IN SIMILAR SETTLEMENTS**

| <u>Background</u> | <u>Settlement</u> | <u>Fees</u> | <u>Hours</u> | <u>Basis for Award</u> | <u>Other Relevant Facts</u> |
|---|---|---|---|---|---|
| **Linneman v. Vita-Mix Corp., No. 15-cv-548 (S.D. Ohio)** | | | | | |
| Consumer suit asserting warranty and other claims relating to black flecks | As of June 8, 2018, 405,376 claims<br><br>– 160,807 for coupons<br><br>– 83,852 for replacement blade assemblies<br><br>(245,494 claims processed) | TBD<br><br>Class Counsel request $7,230,041 in fees and expenses<br><br>Lodestar at Rubin rates is $1,359,527; plus expenses of $41,195 would be a total award of $1,400,722 | 2,326 (merits)<br><br>3,318 (1/31/18)<br><br>4,183 (4/10/18) | Settlement agreement | Active litigation from February 2016 to December 2016.<br><br>No motion for class certification. |
| **6.  Stathakos v. Columbia Sportswear Co., No. 15453 (N.D. Cal. Apr. 9, 2018)** | | | | | |
| Consumer suit alleging deceptive pricing at outlet malls for certain products sold by the defendant. | Equitable relief in the form of the defendant changing the way that it displayed prices. | $683,000 | 3,156 | Settlement agreement | Summary judgment motions and class certification motions briefed. |

| Background | Settlement | Fees | Hours | Basis for Award | Other Relevant Facts |
|---|---|---|---|---|---|
| **7.  Chepiga v. Conair Corp., No. 3:17-cv-01090 (D.N.J. Apr. 23, 2018)** | | | | | |
| Consumer suit related to allegedly defective blades in food processors where the blade would break. | Replacement of blades.<br><br>Defendant paid settlement notice costs | $295,368 | 477.5 | Clear sailing provision in settlement agreement. | Early settlement following expedited discovery. |
| **8.  Kumar v. Safeway, Inc., No. RG 14726707 (Sup. Ct. Cal. Mar. 16, 2018)** | | | | | |
| Consumer suit alleging store brand represented its olive oil as imported from Italy, even though a majority of the oil was extracted from other countries. | $1.50 voucher or $0.50 cash for each identified purchase during the class period, up to $7.50 in vouchers or $2.50 in cash. | $1.3 million | 2,360 | Clear sailing | Substantial discovery completed and class certification granted prior to settlement. |
| **9.  Chester v. TJX Companies, Inc., No. EDCV 15-01437 (C.D. Cal. Mar. 13, 2018)** | | | | | |
| Allegations of deceptive pricing at certain clothing stores. | $8.5 million in monetary relief made available to class. | $2.1 million | over 3,000 | Clear Sailing. | 25% of the monetary fund.<br><br>Settled following class certification. |

| Background | Settlement | Fees | Hours | Basis for Award | Other Relevant Facts |
|---|---|---|---|---|---|
| **10.  Reyes v. Bakery & Confectionary Union & Indus. Int'l Pension Fund, 281 F. Supp. 3d 833 (N.D. Cal. 2017)** | | | | | |
| ERISA class action where class members alleged that employee benefit plan was amended in contravention of ERISA | $10,225,006 common fund | $2,556,251 | 2,997 | Reduced lodestar with no multiplier and 25% of common fund (resulting in a 1.7 multiplier) | Extensive discovery of 13,300 pages of documents and some expert discovery. |

Although the following cases pre-date the filing of Vita-Mix's opposition, Class Counsel rely on them in their reply.  But they do not support the unreasonable fees Class Counsel seek:

| | | | | | |
|---|---|---|---|---|---|
| **10.  Lonardo v. Travelers Indemnity Co., 706 F. Supp. 2d 766 (N.D. Ohio 2010)** | | | | | |
| Allegations of deceptive practices related to insurance sales | $8.69 cash payment with a $2 million reversion fund that would revert to any class members who submitted claims. | $4.6 million | 7,764.12 | Lodestar with 1.3 multiplier. | Five years of "remarkably contentious litigation," substantial discovery, and a briefed motion to dismiss.<br><br>Class counsel, not the defendant, paid notice costs. |

| **Background** | **Settlement** | **Fees** | **Hours** | **Basis for Award** | **Other Relevant Facts** |
|---|---|---|---|---|---|
| **11. Chambers v. Whirlpool, 214 F. Supp. 3d 877 (C.D. Cal. 2016)** | | | | | |
| Allegations that electronic control boards in certain brands of Whirlpool manufactured dishwashers overheat. | $200 to $300 in cash for class members who needed a repair<br><br>$100 or 30% rebate for class members who experience overheating in the future<br><br>10%–15% rebate for all class members regardless of overheating | $14,814,994 | 23,860.75 | Lodestar with 1.6 multiplier | Plaintiffs' claims were "pretty strong"<br><br>Partial motion to dismiss briefed<br><br>Extensive discovery |
| **12. In re HP Power Plug & Graphic Card Litig., No. C-06-02254 (N.D. Cal. July 8, 2008).** | | | | | |
| Allegations related to flaws in graphics cards causing distortions and defects in certain power plugs. | Repair of graphics card or plug<br><br>Cash up to $650 to reimburse for completed repairs<br><br>$50 gift certificates for use at HP | $1,311,165 | 3,056 | Lodestar with a 1.24 multiplier | CAFA Coupon settlement |