IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Vicki Linneman, *et al.*, | : | Case No. 1:15-cv-748 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Vita-Mix Corporation, *et al.*, | : | Order Granting in Part Class Counsel's |
| | : | Motion for Attorneys' Fees, Costs, and |
| Defendants. | : | Class Representative Awards, Granting |
| | : | Request to Receive Expert Testimony, |
| | : | and Granting Request for Status |
| | : | Conference |

This matter is before the Court on Class Counsel's Motion for Attorneys' Fees, Costs, and Class Representative Service Awards. (Doc. 42.) Plaintiffs request approval of $7,188,846.25 in attorneys' fees, $41,194.77 in expenses,[1] and $3,000 in service awards for each of the two named Plaintiffs. Although Defendants Vita-Mix Corporation, Vita-Mix Management Corporation, and Vita-Mix Manufacturing Corporation (collectively, "Vita-Mix") do not object to expenses or service awards, they strongly oppose the request for attorneys' fees. For the reasons that follow, the Court will approve an award of expenses and service awards. Although the Court will award reasonable attorneys' fees in this case, it is unable to issue a final ruling on fees until it receives supplemental filings as detailed herein.

---

[1] Plaintiffs originally requested $50,907.37 in expenses, but in the process of supplying records to the Court, realized an accounting error inflated the request.

# I. Background and Procedural History

## A. Case History and Settlement

This consumer class action was filed on November 19, 2015. Plaintiffs alleged that Vitamix[2] blenders were defective because a seal in the container deposited tiny black polytetrafluoroethylene ("PTFE") flecks into the blended food and drink. (Doc. 1.) Plaintiffs filed a First Amended Class Action Complaint on February 26, 2016, seeking certification of a nationwide class of purchasers of Vitamix blenders and asserting the following claims: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) negligent design, engineering, and manufacture; (4) fraud and fraudulent concealment; (5) unjust enrichment; (6) breach of contract; and (7) violation of the Ohio Consumer Sales Practices Act. (Doc. 18.)

In April 2016, Defendants filed a motion for partial dismissal of this action (Doc. 20) as well as an answer with a jury demand (Doc. 21). The parties also engaged in substantial discovery, which included written discovery, the production of thousands of pages of documents, discovery from third parties, product testing, a corporate representative deposition, and depositions of several fact witnesses. (Doc. 35-2 at PageID 471.)

While the dismissal motion was pending, the parties began settlement negotiations and attended a settlement conference before United States District Court Judge Michael R. Barrett on August 3, 2016. Although no settlement was reached, ongoing negotiations continued. The parties met for an additional conference with the Honorable Michael R. Barrett on November 30, 2016, at which the parties negotiated a Memorandum of Understanding of substantive terms for a

---

[2] The parties refer to Defendants' products as "Vitamix" products.

settlement.  The parties spent the early part of 2017 negotiating the details of a Class Action

Settlement Agreement and Release ("Settlement Agreement") (Doc. 35-2).  However, as set

forth in the Settlement Agreement, the parties did not reach an agreement on the amount of

attorneys' fess and expenses Vita-Mix would pay to class counsel, except that the parties agreed

class counsel is entitled to an award of attorneys' fees and expenses and that Defendants have a

right to object to and contest a fee application.  (*Id*. at 471.)

In September 2017, Plaintiffs filed an amended motion for preliminary approval of the

Class Action Settlement.  (Doc. 35.)  Section 3.8 of the Settlement Agreement identified the

following Class for purposes of a settlement:

> All Persons domiciled within the United States and its territories who: (a) own a
> Vita-mix household blender with a blade assembly dated on or after January 1, 2007
> but before October 1, 2016; or (b) own a Vita-mix commercial blender that was
> (i) purchased on or after September 15, 2015 but before August 9, 2016 or before
> April 7, 2017 in the case of a commercial blender from the XL product line, (ii)
> never used in connection with the Replacement Seal, and (iii) purchased through a
> third-party, such as a dealer, distributor, or restaurant supply store and not acquired
> directly from Vita-Mix.  Excluded from the Class are Defendants and their officers
> and directors; Class Counsel and their partners, associates, lawyers, and employees;
> and the judicial officers and their immediate family members and associated Court
> staff assigned to this case.  Also excluded from the Class are persons who own one
> or more of the blenders described in this Section received as a benefit, gift, award,
> or compensation directly from Vita-Mix in connection with such person's work for
> Vita-Mix unless such person separately purchased any blender(s) described in this
> Section, in which case their eligibility for class membership and benefits is limited
> to any such purchased blender(s).

(Doc. 35-2 at PageID 476.)  Those Class Members described under Section 3.8(a), the consumer

class, may select either a Gift Card, subject to terms and conditions, or a Replacement Blade

Assembly subject to terms and conditions.  (*Id*. at PageID 494, § 6.3(a).)  All other Class

Members, or those who purchased commercial blenders, are eligible for a Replacement Blade

Assembly.  (*Id*. at PageID 494, § 6.3(b).)  A Replacement Blade Assembly is a "blade assembly

containing a Replacement Seal" and "does not include a container, lid, or anything else for use with a Vita-Mix blender." (*Id*. at PageID 481.) A "Replacement Seal" is a "blade assembly top seal employing different materials and technology from the seal incorporated into Vita-Mix household and commercial blenders beginning in January 2007" for which independent testing indicates does not produce black flecks that prompted the lawsuit. (*Id*.)

A Gift Card is defined as "an electronic gift card subject to the terms and conditions set forth in Section 6.4[.]" (*Id*. at PageID 478.) Gift Cards are subject to the following terms and conditions:

a. Each Gift Card will be issued in the face amount of $70, except as described in Section 6.4(b) below.
b. Class Members described in Section 3.8(a) above who own multiple blenders within their household or at the same address are eligible for a Gift Card in the face amount of $140.
c. Defendants together with the Settlement Administrator will design electronic Gift Cards. Class Counsel will review and approve the form of Gift Card before they are provided to any Class Member. Class Counsel's approval will not be unreasonably withheld.
d. Each Gift Card will include a unique authorization code identifying the Gift Card as valid.
e. Each Gift Card or unique authorization code may be used one time for or toward the purchase of any Vita-Mix blender or container. Any unused amount will be forfeited and will not be refunded or credited to the user or any account affiliated with the user.
f. Gift Cards may only be used at the Vita-Mix website (www.vitamix.com) or any Vita-Mix Store.
g. Gift Cards are transferable, have no expiration date, and may be used in connection with any promotion. However, no more than two (2) Gift Cards each with a face amount of $70 or one (1) Gift Card with a face amount of $140 may be used in a single transaction or by a single household or address.
h. Within sixty (60) days of the Effective Date, Defendants will directly deliver by mail or electronic mail Gift Cards to Class Members who selected them as a benefit and who submit Valid Claims.

(*Id*. at PageID 494–95.)  On May 3, 2018, the Court entered an Order Granting Final Approval of Class Action Settlement, but reserved the issue of attorneys' fees, costs, and service awards for a separate ruling.  (Doc. 91).

### B.  Litigation of Attorneys' Fees, Costs, and Class Representative Awards

The parties' dispute over an award of attorneys' fees has dominated the docket of this case since Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Awards (Doc. 42) was filed on January 31, 2018.  Initially, the Motion was filed without the support of time sheets and the professional background information of its billing attorneys so as to understand the requested billing rates of counsel.  After the Court ordered that this additional information be supplied, Class Counsel filed a Supplemental Brief in Support of Motion for Attorneys' Fees, Costs, and Class Representative Service Awards (Doc. 47) as well as supporting affidavits from the attorneys and paralegals who worked on this case (Doc. 48) and affidavits of the named plaintiffs (Doc. 49).  Class Counsel also filed time entries from July 14, 2015 to February 22, 2018 with a privilege log (Doc. 50) and submitted an unredacted version for in chambers review (Doc. 53).   Class Counsel subsequently filed an amended and corrected version of their time entries (Doc. 51).

On March 14, 2018, Defendants filed a Response in Opposition to Class Counsel's Motion for Attorneys' Fees (Doc. 72), supported by 230 pages of exhibits (Doc. 70).  Defendants also moved the Court pursuant to 28 U.S.C. § 1712(d) to consider expert testimony by Stephen L. Buffo.[3]  (Doc. 69).

---

[3] The Court will allow the testimony.

On April 10, 2018, Class Counsel filed a Reply in Support of their Motion for Attorneys' Fees, Costs, and Class Representative Service Awards (Doc. 87), which included an updated lodestar calculation from January 27, 2018 through April 6, 2018 (Doc. 87-3). They also filed redacted time entries (Doc. 88), unredacted time entries for in camera review by the Court (Doc. 89), and amended redacted time entries (Doc 90).

With leave of Court, on June 19, 2018, Defendants filed a Surreply Opposing Class Counsel's Motion for Attorneys' Fees (Doc. 109), with over 250 pages of supporting exhibits (Docs. 104, 105). On June 28, 2018, the Court held a hearing on the matter of attorneys' fees, expenses, and service awards (Doc. 115). At the conclusion of the hearing, the Court requested that Class Counsel submit time records and claims data through mid-November 2018 when claims data was expected to be more complete. That deadline was subsequently extended at the request of the parties.

On November 30, 2018, Class Counsel filed unredacted detailed time entries from April 7, 2018 through November 23, 2018 with a privilege log (Doc. 131), redacted time entries and supporting affidavits (Doc. 132), updated claims data (Docs. 133, 134), and a supplemental brief (Doc. 135). On December 21, 2018, Defendants filed a Notice of a year-old Offer of Judgment of attorneys' fees and expenses "up to $3,100,000.00[.]" (Doc. 137-1 at PageID 4993.) Defendants also filed a supplemental brief (Doc. 142) supported by over 400 pages of affidavits and exhibits (Doc. 141). Despite lengthy continued settlement negotiations, in May 2019, the Court was advised that the parties were unable to resolve the dispute over attorneys' fees through mediation.

### C.  Objections

The following Class Members filed objections relating to an award of attorneys' fees in this case: Kamala Bennett, Chris Brenn, Richard Burlingame, Elizabeth M. Cosin, Thomas L. Cox, Jr., Esq., Franklin DeJulius, Ryan Gibbs, Jon Lorenzo, Avigail Ruth Short, and Todd A. Thomas.  Gibbs also objected to service awards.  These objections will be addressed *infra*.

## II.  Request for Attorneys' Fees, Expenses, and Service Awards

### A.  Authority to Award Fees and Expenses

Class Counsel move the Court to approve an award of attorneys' fees in the amount of $7,188,846.25 and expenses in the amount of $41,194.77 under Fed. R. Civ. P. 23(h) and section 5.2(b) of the Settlement Agreement.  "In a certified class action, the court may award reasonable attorney's fees and costs that are authorized by law or by the parties' agreement upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h)."  *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012).

When assessing the reasonableness of a fee petition, the district court has the discretion to select the method by which it calculates an award of fees: either the percentage-of-the-fund approach or the lodestar approach.  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007).  The "lodestar" is the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate, and it is presumed to yield a reasonable fee.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007).  The percentage-of-the-fund method is when the Court determines a percentage of the settlement to award to class counsel.  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1041 (S.D. Ohio 2001).  District courts typically have discretion to select the

more appropriate method for calculating attorneys' fees in light of the circumstances of the actual case before it.  *Id.* at 1044.

The Court must ensure that the fee ultimately awarded is reasonable under the circumstances in consideration of six factors: (1) the value of the benefit to the class; (2) the value of the services on an hourly basis; (3) whether attorneys took the case on contingency; (4) rewarding attorneys who produce societal benefits in order to maintain an incentive for others; (5) the litigation's complexity; and (6) the professional skill and standing of class and defense counsel.  *Chapman v. Tristar Prods., Inc.*, Nos. 16-cv-1114, 17-cv-2298, 2018 WL 3752228, at *3 (N.D. Ohio Aug. 3, 2018) (Gwinn, J.) (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

The Court finds that it has sufficient authority per the agreement of the parties in the Settlement Agreement to award attorneys' fees, expenses, and service awards.  Rule 23(h) states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Under Section 5.2(b) of the Settlement Agreement, the parties agreed that by January 31, 2018, Class Counsel shall file their Fee Application.  (Doc. 35-2 at PageID 511.)  The "Fee Application" is defined as "the application to be filed by Class Counsel no later than January 31, 2018 by which they will seek an award to be paid by Defendants of attorneys' fees and reimbursement of costs incurred by them in prosecuting the Lawsuit, as well as Service Awards to be paid to the Class Representatives and reimbursement by Defendants for Administration and Notice Expenses."  (*Id.* at PageID 478.)  Section X governs the Fee Application as follows:

> 10.1 Class Counsel shall file a Fee Application for an award of Attorneys' Fees and Expenses, including Administration and Notice Expenses, no later than

January 31, 2018 pursuant to Rule 23(h), Rule 54(d)(2),[4] and the Court's Local Rules.

10.2 The Parties have not reached any agreement on the amount of Attorneys' Fees and Expenses Defendants will pay to Class Counsel, except that the Parties agree Class Counsel is entitled to an award of Attorneys' Fees and Expenses and that Defendants have the right to object to and to contest Class Counsel's Fee Application. Defendants have no liability or obligation with respect to any Attorneys' Fees and Expenses, Administration and Notice Expenses, or Service Award to the Named Plaintiffs except as awarded by the Court. Class Counsel agree that upon payment to Class Counsel of any amounts awarded by the Court, Defendants' obligations to Class Counsel with respect to any Attorneys' Fees and Expenses or Service Award to the Named Plaintiffs shall be fully satisfied and discharged. It is not a condition of the Settlement or this Agreement that the Court award any particular amount of Attorneys' Fees and Expenses or any particular amount as a Service Award. Either Party has the right to appeal a Court award of Attorneys' Fees and Expenses.

10.3 If the Court makes an award of Attorneys' Fees and Expenses, Defendants will pay such award within ten (10) business days following the Effective Date or following the entry of a final, non-appealable order relating to Service Awards or to Attorneys' Fees and Expenses, whichever is later.

---

[4] Rule 54(d)(2) states:

(2) *Attorney's Fees.*

(A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

(i) be filed no later than 14 days after the entry of judgment;

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

(C) *Proceedings.* Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

(D) *Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge.* By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

(E) *Exceptions.* Subparagraphs (A)–(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

9

(*Id.* at PageID 511–12.) "Attorneys' Fees and Expenses" is defined as "the amount of any attorneys' fees and reimbursement of litigation costs awarded to Class Counsel under their Fee Application." (*Id.* at PageID 475.)

### B. Authority to Award Service Awards

Class Counsel also seek $3,000 service awards for each of the two named Plaintiffs. In an addition to addressing the matter of attorneys' fees and expenses, the Settlement Agreement carves out authority for the Court to issue Service Award payments to the named Plaintiffs:

> Subject to approval by the Court, Defendants will also pay each of the Named Plaintiffs a Service Award pursuant to the provisions of this Section. Each Service Award will consist of a $3,000.00 payment to each of the Named Plaintiffs solely as compensation for their time and effort associated with their participation in this Lawsuit.

(*Id.* at PageID 510.) "Service Award" is defined as "a reasonable payment, subject to Court approval, made to each of the Named Plaintiffs to compensate for his or her efforts in pursuing the Lawsuit." (*Id.* at PageID 481.) Having found that the Court has authority to consider and award attorneys' fees, expenses, and service awards per the agreement of the parties, the Court will turn to the merits, starting with the matter of attorneys' fees and expenses.

### C. Effect of Class Action Fairness Act on Attorneys' Fee Calculation

As the Settlement Agreement establishes, there are two classes to the settlement, a commercial class, eligible only for a Replacement Blade Assembly, and a household/consumer class, eligible for either a Replacement Blade Assembly or the Gift Card. Defendants argue that the Gift Card option is a "coupon," and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712 therefore controls the manner by which an award of attorneys' fees is to be calculated. Plaintiffs argue that this is not a coupon settlement because the primary benefit is a Replacement

Blade Assembly, not a Gift Card, and that CAFA does not control calculation of attorneys' fees. The Court will address this threshold dispute before considering the merits of the fee request.

"Congress passed CAFA 'primarily to curb perceived abuses of the class action device.'" *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (citing *Tanoh v. Dow Chem. Co.,* 561 F.3d 945, 952 (9th Cir. 2009)). "One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *Id.* (*citing generally* Sarah S. Vance, *A Primer on the Class Action Fairness Act of 2005,* 80 Tul. L. Rev. 1617, 1632–33 (2006); Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements,* 60 Law & Contemp. Probs. 97, 102, 107–12 (1997)). CAFA codifies Congress's effort to regulate coupon settlements through increased judicial scrutiny of coupon settlements generally and rules governing the award of attorneys' fees in coupon cases. *Id.* at 1178; 28 U.S.C. §§ 1712(a)–(e).

The term "coupon" is undefined by CAFA. In *Tyler v. Michaels Stores, Inc.*, 150 F. Supp. 3d 53, 60 (D. Mass. 2015), the district court held that a "coupon" under 28 U.S.C. § 1712 is "when class members must transact business with the defendant to obtain the benefit of the settlement." For those Class Members who elect a Gift Card benefit under the Settlement Agreement, the definition is apt here, as Gift Cards may only be used to purchase a blender or container directly from the Vita-Mix website or Vita-Mix store. (Doc. 35-2 at PageID 495.) It is undisputed that Class Members will have to spend money to utilize their Gift Card, as Vita-Mix containers and blenders generally exceed the $70 Gift Card face value. A quick review of the vitamix.com website confirms that blenders start at list price of $289.95 and blender containers start at a list price of $144.95. Vitamix.com, https://www.vitamix.com/us/en_us/shop/Blenders

(last visited May 23, 2019).  In addition to having to spend money to utilize the Gift Cards, other limitations restrict their use.  Gift Cards are good for one-time use and unused funds are forfeited; Gift Cards may only be redeemed directly with Vita-Mix and not third-party retailers; such as Costco; and no more than two Gift Cards may be stacked.   The Court is satisfied that these attributes considered together render the Gift Cards coupons under 28 U.S.C. § 1712.  *See also Chapman*, 2018 WL 3752228, at *4 (finding "credits" to be coupons under CAFA).

28 U.S.C. § 1712 controls calculation of attorneys' fees involving a coupon settlement. The language of the statute, widely agreed to be confusingly drafted,[5] states:

> **(a) Contingent fees in coupon settlements.** -- If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

> **(b) Other attorney's fee awards in coupon settlements.** --

>> **(1) In general.** -- If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.
>> **(2) Court approval.** -- Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.

> **(c) Attorney's fee awards calculated on a mixed basis in coupon settlements.** -- If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief--

---

[5] *See In re HP Inkjet Printer Litig.*, 716 F.3d at 1181 (noting that there is widespread agreement that the language of CAFA, the result of much lobbying and compromise, is poorly drafted.)

> **(1)** that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and
> **(2)** that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

The Court finds that this is a "mixed" settlement which provides for coupon and equitable relief under 28 U.S.C. § 1712(c). The Settlement Benefits available to Class Members provide a mix of both coupon and non-coupon relief options. Consumer Class Members may elect either a Gift Card or a Replacement Blade Assembly, and commercial Class Members may elect a Replacement Blade Assembly. (Doc. 35-2 at PageID 494.)

However, the Circuits are split over how to interpret the language of 28 U.S.C. § 1712 in calculating an award of attorneys' fees in a mixed settlement, and the Sixth Circuit has yet to weigh in on the debate. The Ninth Circuit found that in awarding attorneys' fees under CAFA, the district court must *first* determine a reasonable contingency fee based upon the actual redemption rate of the coupons awarded under § 1712(a), and then a reasonable lodestar for non-coupon relief obtained, which can be adjusted upward or downward using a multiplier under § 1712(b). *In re HP Inkjet Printer Litig.*, 716 F.3d at 1184–85. Thus, to award fees in a "mixed" settlement, the Court must do two calculations, not jump straight to the lodestar. *Id.* It was an abuse of discretion to rely upon rough estimates of the coupon value provided by counsel as opposed to the redemption rate of those coupons. *Id.* at 1186–87.

Diverging from the Ninth Circuit, the Seventh Circuit has held that § 1712 allows the court the discretion to use the lodestar method to calculate attorneys' fees even when those fees are intended to compensate class counsel for the coupon relief he or she obtained for the class. *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 707 (7th Cir. 2015). The Seventh Circuit

found that "§ 1712(a) does not expressly prohibit use of the lodestar method[;]" rather, it

"unambiguously . . reject[s] the most abusive method for calculating a fee in a coupon

settlement: calculating the fee as a percentage of the *face value* of *all* the coupons issued." *Id*. at

708 (emphasis in original). Section 1712(b) contemplates that a portion of the recovery of

coupons will not be used to determine the fee for class counsel, and instead employs the lodestar

method. *Id*. at 709. And "§ 1712(c) allows a combination of percentage-of-coupons-used and

lodestar, but it does not require that *any* portion of the fee be based on the percentage of coupons

used. Subsection (c) allows the district court the same discretion to use lodestar for the entire

award that is permitted under (b)." *Id*. at 710 (emphasis in original). The Court summarized:

> In coupon settlements that include some non-coupon relief, therefore, § 1712
> allows three approaches to calculating attorney fees. First, a court may rely solely
> on the percentage-of-recovery method as permitted in subsection (a). Second, a
> court may rely solely on the lodestar method as permitted in subsection (b). Third
> a court may use a combination of the approaches as provided in subsection (c).

*Id*. In short, subsection (c) allows, though does not require, a blend of the two methods set forth

in § 1712(a) and (b). The Eighth Circuit has followed the Seventh Circuit's interpretation of §

1712. *Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 974–75 (8th Cir. 2016) (adopting

the Seventh Circuit's analysis in Southwest and reading § 1712(a)–(c) as a permissive statute).

The Court finds that the Seventh Circuit's interpretation of § 1712 is the most persuasive

and consistent with the long-standing principle that a district court may always utilize its

discretion to adopt the lodestar approach in calculating an award of attorneys' fees. The Court

therefore adopts the interpretation of § 1712 employed by the Seventh and Eighth Circuits. This

finding is also consistent with the Honorable James S. Gwin's recent decision in *Chapman v.

Tristar Prods., Inc*., in which he followed the approach of the Seventh and Eighth Circuits in

reading § 1712 as a permissive statute that allows the district court the discretion to determine

14

whether the percentage-of-the-fund method based upon the value of coupons actually redeemed or lodestar is more appropriate. 2018 WL 3752228, at *6. The Court will therefore consider the lodestar in its analysis.

Although the parties agree that the Court should consider the lodestar, they disagree as to whether the Court may *also* consider a percentage-of-the-benefits calculation as a cross-check on the lodestar. Plaintiffs contend that because this is not a coupon settlement, and the primary relief is a Replacement Blade Assembly, it is appropriate to consider the request for fees compared to the overall value of this benefit to the entire class. Class Counsel originally argued that their requested fee was reasonable because it was supported by a lodestar times a reasonable multiplier as well as the percentage of the settlement value, which was between "2-3% of the conservatively estimated $300 million settlement value." (Doc. 42 at PageID 806.) This valuation is based upon Attorney Markovits's calculation that there are roughly 6 million potential Class Members multiplied by a conservative estimate of a $70 benefit to all Class Members, regardless of benefit elected. Class Counsel argues that the Replacement Blade Assembly benefit is valued at $105.17 based upon the price of a replacement blade on Vita-Mix's website, plus tax and shipping. (Doc. 41-2 at PageID 679.) Class Counsel also calculated the value of the Gift Card to be its face value or higher: "at least $70." (Doc. 41-2 at PageID 679.) Assuming the "low-end value available to Class Members of $70[,]" Class Counsel calculates the value of the Settlement is at least $300,000,000. (*Id*.) As argument over this issue

has developed, Class Counsel have adjusted their calculation to $27,968,000.[6]  (Reply Brief, Doc. 87 at PageID 3549–50, n.7.)

CAFA makes clear that any percentage of the benefit analysis may only be based on the number of coupons redeemed, which is information that is unavailable to the Court, as the Gift Cards have no expiration date.  Further, the valuation of the Replacement Blade Assembly is disputed, as no evidence conclusively and persuasively establishes a value.  Defendants argue that Vita-mix sells replacement blades only to commercial customers and in any event, the value of the Replacement Blade Assembly should be the cost of a new seal alone, as those who elect this benefit must mail their old replacement blades back to Vita-mix, to then have a new replacement blade assembled into their container.   In any event, even if the Court had the discretion to consider the percentage-of-the-benefit crosscheck, it would decline using its discretion to do so.  It finds that the lodestar accounts for the time spent on this case, provides adequate scrutiny to hours billed, and is more than sufficient a method to calculate fees given the unique relief in this case.  Further, both parties agree that the lodestar should apply.  As time intensive as calculating the lodestar is, the Court would decline undergoing additional analysis on the sufficiency of the requested fee through a percentage-of-the-benefits analysis.   Doing so would be unnecessary and unduly burdensome.

### D.  Class Counsel's Lodestar Calculation

Having concluded that the Court has authority to award attorneys' fees and costs in this case and that the lodestar analysis will govern its calculation, the Court will now consider the

---

[6] This valuation is based upon number of claims submitted to the claims administrator at the time of the calculation, but still assumes a $70 value for Gift Cards and $105 value for the Replacement Blade Assembly.

evidence supporting Class Counsel's lodestar. The lodestar calculation involves two steps: first, the Court determines the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Phelan v. Bell*, 8 F.3d 369, 374 (6th Cir. 1993). The result of this calculation "produces an award that *roughly* approximates the fee that the prevailing party would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (emphasis in original). The lodestar usually is strongly presumed to yield a reasonable fee. *City of Burlington*, 505 U.S. at 562. "A reasonable fee is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall to lawyers.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (emphasis removed) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).

Class Counsel is represented by three law firms: Markovits, Stock & DeMarco LLC ("MSD"), Finney Law Firm, LLC ("FLF"), and Goldenberg Schneider, LPA ("GS"). Class Counsel's lodestar calculation is comprised of the total of each of Class Counsel's hours expended on this litigation multiplied by each attorney's hourly rate. As of January 26, 2018, the date of filing the initial Motion for Attorneys' Fees, Costs, and Class Representative Service Awards (Doc. 42), Class Counsel assert that FLF billed 817.64 hours, GS billed 964.5 hours, and MSD billed 1,536 hours on this case, for a combined total of 3,318.14 hours. (Doc. 42-1 at PageID 811.) At that time, Class Counsel also projected they would incur "an estimated $750,000 in lodestar" to implement the settlement. (Doc. 42 at PageID 797.) It is unnecessary for the Court to consider this estimated lodestar because Class Counsel's lodestar submissions indicate that they have accrued lodestar in excess of the future lodestar they originally projected. Class Counsel's hourly rates range from $185 to $700 per hour, with staff and paralegals billing at $100 to $150 per hour. Thus, as of the initial attorneys' fee filing, Class Counsel's total fee

for purposes of seeing this litigation through to its conclusion was estimated to be approximately $2,478,912.50, comprised of $1,728,912.50 in historical lodestar plus $750,000 in future estimated lodestar. *Id.*  Plaintiffs contend that a multiplier of 2.9 would be appropriate in this case, which would yield a total award of $7,118,846.25.

Since that filing, Class Counsel has submitted additional time records from January 27, 2018 to April 6, 2018 (Docs. 88–89) and from April 7, 2018 to November 23, 2018 (Doc. 131–132).  As of the latest filing, Attorney Terrence R. Coates attested that Class Counsel have spent a total of 5,196.44 hours on this litigation for a lodestar of $2,730,262.50 as of November 23, 2018, but they anticipated continuing to commit additional time and resources to the case through the administration of the settlement.  (Doc. 132-1 at PageID 4859.)

Defendants object to the requested award of attorneys' fees, although it noted it would not object to an award of fees and expenses up to $1,400,727.77, which they calculate as Class Counsel's initial lodestar (per its first filing) using Rubin rates and no multiplier.  (Doc. 72 at PageID 3074.)  Alternatively, Defendants would not object to a "0.9" multiplier to account for excessive hours.  (*Id.*)

### 1.  Hours Reasonably Worked

"To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work."  *Gonter*, 510 F.3d at 617.  To establish their hours worked, Class Counsel have submitted their billing records through November 23, 2018.  Defendants object to Class Counsel's billing records on a number of grounds.  Attorney Tracey L. Turnbull filed a Declaration in which she attaches color-coded objections in review of each of Class Counsel's time entries.  (Doc. 141-1 – 141-4.)  These objections number hundreds of pages.  Bases for objections include block billing, excessive redactions for attorney work product privilege, which

make it impossible to determine whether time is compensable, partners performing associate tasks, attorneys performing clerical and ministerial tasks, such as filing and copying, and unnecessary travel. She also objects on the basis that many hours are billed on the attorneys' fees dispute, which the Court has already addressed, *supra*. She contends that only 3,135.45 hours of the 5,194.44 hours are compensable.

### a. Privilege, Block-Billing, Billing Tasks, and Vague Entries

The Court has reviewed all of Class Counsel's time entries, both redacted and unredacted, as well as Attorney Turnbull's objections. The Court will not rule on each unique objection at this time. However, many of Defendants' objections are well-taken. The Court finds that Class Counsel have overused the work product privilege to redact innocuous details that do not reveal an attorney's mental impressions or judgments about the case. *See In re Antitrust Grand Jury,* 805 F.2d 155, 163 (6th Cir. 1986) ("Opinion work product is any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories.") (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

In addition, the Court found many entries that are inappropriately block-billed or account for work billed at the wrong level, such as a partner billing for ministerial or associate tasks, such as attorneys purchasing blenders and traveling to stores. Other entries are so vague it is impossible to determine whether they even relate to this case, such as billing for a meeting with another attorney without any description of what the meeting was about and how it advanced this case. The Court also discovered some errant entries that seemed to be billing for a different case, such as billing on a declaratory judgment action in April 2017. Lastly, the Court questions whether all of the travel that has been billed was necessary.

Ultimately, the burden is on Class Counsel to establish that time billed is compensable. The Court may strike any entries it finds are unsubstantiated and unredact any entries that are inappropriately labeled work product privilege. However, before it does so, the Court will provide an opportunity for Class Counsel to give a discerning review of their time and submit revised time submissions in a process outlined below.

### b. Fees on Fees

Defendants argue that billing for the dispute on attorneys' fees is not compensable and that all such hours should be stricken. The Settlement Agreement's definition of "Attorneys' Fees and Expenses" is the amount awarded under the "Fee Application," defined as "the application to be filed by Class Counsel no later than January 31, 2018 by which they will seek an award to be paid by Defendants of attorneys' fees and reimbursement of costs incurred by them in prosecuting the Lawsuit, as well as Service Awards to be paid to the Class Representatives and reimbursement by Defendants for Administration and Notice Expenses." (Doc. 35-2 at PageID 475, 478.) Defendants argue that all fees are constrained to "prosecuting the Lawsuit," meaning that any award of attorneys' fees is cut off by the date upon which a settlement was reached in this case. They argue that Class Counsel have run up their lodestar by billing excessively on "fees on fees."

In support of their position, Defendants rely upon *Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC*, 610 F. App'x 464, 470 (6th Cir. 2015), in which the Sixth Circuit Court of Appeals upheld the district court's decision that it did not have jurisdiction to award attorneys' fees for post-arbitration litigation. The Court of Appeals found that the agreement only gave the authority to an arbitrator to award attorneys' fees and costs during arbitration, but it did not give the district court the authority to enter anything other than a judgment. Thus, the district court

lacked jurisdiction to consider litigation after arbitration pursuant to the terms of the agreement. *Id*. at 469–70. In fact, the Court noted it was "evident" that the agreement did not authorize the court to award attorneys' fees. *Id*. at 470. Here, it *is* evident the Court has authority to award attorneys' fees.

The Court does not read the definition of "Attorneys' Fees and Expenses" as narrowly as Defendants. Rather, the Court finds that the plain language of the Settlement Agreement anticipates a dispute over attorneys' fees: "The Parties have *not reached any agreement* on the amount of Attorneys' Fees and Expenses Defendants will pay to Class Counsel, except that the Parties agree Class Counsel is entitled to an award of Attorneys' Fees and Expenses and that Defendants have the right to object to and to contest Class Counsel's Fee Application." (Doc. 35-2 at PageID 511) (emphasis added). This dispute over fees *has* been a part of the prosecution of the lawsuit itself, and it is within the ambit of the plain language of the Settlement Agreement that attorneys' fees and costs may be awarded by the Court to that end. Furthermore, the date by which a settlement was reached is not the date prosecution of the lawsuit ended. Rather, ongoing disputes have continued over the settlement and administration of the settlement. The claim filing period began January 2, 2018 and ended on September 28, 2108, but it wasn't until April 30, 2019 that the claims administrator finalized the claims data for Vita-mix, as time was given for claimants to fix curable deficiencies. (Doc. 154-1.)

Out of a need to establish a reasonable cut-off, the Court determines that the date of the last entry of time records (November 28, 2018) is the cut-off for consideration of billing for attorneys' fees. At that time, claims data was not finalized, and work has continued well past that date. The November date is reasonable because it accounts for some (although not all) administration of the settlement as well as most of the briefing on attorneys' fees, costs, and

service awards, as anticipated by the parties. Class counsel note that they have been working diligently to prevent delay in the settlement administration process and have been required to spend more time than usual because Defendants have contested many aspects of the settlement administration process. Thus, the Court will consider time billed up until November 28, 2018 and finds that doing so is consistent with the plain language of the parties' Settlement Agreement.

### c. Time Billed Prior to Complaint Being Filed

Defendants argue that Class Counsel may not bill for time prior to the lawsuit being filed in November 2015 and that the record shows Class Counsel did not have clients before such a time. The Court finds that reasonable pre-suit investigation time is compensable in this case. The authority relied upon by Defendants distinguishes between time spent soliciting clients and time spent to pursue factual information to be used in litigation, which may be considered time expended on the litigation. *See Am. Civ. Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 436 (11th Cir. 1999).

### d. Billing for Future Time

In their initial hours submission, Class Counsel sought reimbursement of $750,000 in "future fees," or anticipated time to be billed on administration of the settlement and continued work on this case. The Court has since permitted additional hours submissions as the claims period for administration of the settlement has been open and determined, *supra*, that November 28, 2018 is a reasonable cut-off for consideration of billed time in this case. Thus, the Court will not consider future time, but it will consider time spent working on this case up until November 28, 2018, which obviates the need for a ruling on speculative "future fees."

### e. Excessive Time

The Court is very mindful that the dispute over attorneys' fees has been overly contentious and litigious on *both sides* and that the number of hours expended on this dispute is high. The Court is intimately aware of this fact as it has in turn *also* expended an inordinate amount of time and resources on this dispute that far surpasses its involvement in an average case. The contention over attorneys' fees tracks the contention involved in nearly all aspects of this case. To evaluate Defendants' argument that Class Counsel have overbilled, it only stands to reason that Defendants' total hours should be compared to Plaintiffs' total hours. Compared to Class Counsel's total lodestar of 5,196.44 through November 23, 2018, Defendants' lodestar is 5,888.80 as of March 31, 2018.[7] (Doc. 104-1 at PageID 4066.) Although the Court will consider whether an overall deduction is warranted when it issues its final ruling, it will certainly consider the total number of hours billed by both sides in making that determination.

### f. Reduction in Time

As the Court noted at the hearing on attorneys' fees, it is disappointed in what it perceives to be a personality conflict among counsel, particularly with regards to Attorney Justin Walker. The amount of time spent on this dispute is distracting and unprofessional. The Court will not engage in this personality dispute and will not consider a reduction due to Attorney Walker's conduct during this litigation for this reason. The Court urges counsel to use the professionalism and courtesy with which it is accustomed from such seasoned and experienced attorneys going forward in this case and in all other appearances before the Court.

---

[7] The Court requests Defendants submit their total lodestar calculation through November 23, 2018 within fourteen days of entry of this Order.

### g. Procedure for Resolution of Remaining Objections

In light of the Court's rulings, Class Counsel is directed to thoroughly review all entries for these—and any other—issues, striking, unredacting, or modifying entries as necessary. The following procedure shall apply.

- Within 14 days of entry of this Order, Class Counsel shall provide modified billing records to Defendants for Defendants' review.

- Within 14 days of Class Counsel's submission to Defendants, Defendants must submit an updated list of objections (if necessary) to Class Counsel.

- Within 14 days of circulating updated objections, Class Counsel and Defendants must meet and confer <u>in person</u> to attempt to resolve all remaining objections without Court intervention.

- Within 14 days of the meet-and-confer, the parties must file a joint statement of all objections as well as a joint submission of Class Counsel's time entries. If any redacted entries remain, Class Counsel must file a redacted version with any remaining privileged entries with a privilege log.

- If necessary, the Court will review the remaining objections and set a date for a hearing during which it will rule on the remaining objections.

The Court cautions the parties to be reasonable in their remaining objections and disputes and that <u>objections should be limited to the time entries of counsel</u>. No new time may be submitted. The Court will not revisit its rulings on issues already addressed or tolerate more argument on issues that have already been briefed. The parties are not invited to supplement arguments that have already been thoroughly briefed, such as argument over a multiplier or

reduction.  The Court is hopeful that a hearing is not necessary and the parties are able to resolve remaining objections together with cooperation.  All parties, as well as the Court, have expended considerable time on this case and on the attorneys' fees dispute in particular, and the remaining work to be done should be as efficient and streamlined as possible.

### h.  Multiplier/Reduction

The Court will consider application of a multiplier, or any potential reduction due to excessive time or other issues, after it reviews the final hours submission.  In issuing its final decision, the Court will consider the reasonableness of the fee overall in light of any deviations from the lodestar.

### 2.  Reasonable Hourly Rate

The Court will now consider the reasonable hourly rates of Class Counsel.  "The district court has broad discretion in determining a reasonable hourly rate for an attorney." *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016).  "When determining a reasonable hourly rate, 'courts use as a guideline the prevailing market rate . . . that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'"  *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 F. App'x 496, 498–99 (6th Cir. 2011) (quoting *Gonter*, 510 F.3d at 618).  An "appropriate rate is not necessarily the exact rate of a particular firm, but the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation." *The Northeast Ohio Coalition for the Homeless*, 831 F.3d at 716.  "A district court may look to 'a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id*.  (citing *Van Horn*, 436 F. App'x at 499.)

Judges in the Southern District of Ohio often refer to the 1983 Rubin Committee rates and apply a 4% annual cost-of-living allowance to measure the reasonableness of fees requested. *Hunter v. Ham. Cty. Bd. Of Elec.*, No. 1:10-cv-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013). That committee arrived at the following categories and hourly rates for 1983: Paralegals—$37.91/hour; Law Clerks—$23.96/hour; Young Associates (2 years of experience or less)—$61.77/hour; Intermediate Associates (2 to 4 years of experience)—$71.62/hour; Senior Associates (4 to 5 years of experience)—$82.81/hour; Young Partners (6 to 10 years of experience)—$96.39/hour; Intermediate Partners (11 to 20 years of experience)—$113.43/hour; and Senior Partners (21 or more years of experience)—$128.34/hour. *Id.* at n.9.

The Court is not bound by the Rubin rate, and acknowledges that the practice of law has become an increasingly national practice. *Emery Fed. Credit Union v. Palombaro*, No. 15-cv-792, 2018 WL 5312687, at *10 (S.D. Ohio October 25, 2018). As it did in another class action ruling on attorneys' fees, the Court will benchmark rates requested against the applicable Rubin rate, but still consider the nature of the case and attorneys involved in assessing the reasonableness of attorney hourly rates, keeping in mind that the party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed. *Id.*; *Van Horn*, 436 F. App'x at 498 (party seeking fee bears burden of proving reasonableness of the hourly rate requested); *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 845 (S.D. Ohio 2014) (compiling cases in which courts have awarded fees exceeding the Rubin rate); *Hunter*, 2013 WL 5467751, at *17 (approving hourly rate higher than Rubin rate).

Class Counsel argue that their rates, which range from $185 to $700 for attorneys and $100 to $150 for paralegals and staff, are reasonable rates within the venue. Class Counsel argue that their requested rates are consistent with rates previously approved by courts within the Sixth

Circuit and reflect their national practice.  *See, e.g., In re Auto. Parts Antitrust Litig*, No. 12-md-02311, 2017 WL 3525415, at *4 (E.D. Mich. July 10, 2017) (approving rates over $700/hour in lodestar cross-check); *Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 WL 4449709 (S.D. Ohio Aug. 24, 2016), *adopting report and recommendation,* 2016 WL 4159682, at *17 (S.D. Ohio Aug. 5, 2016) (approving hourly rates up to $850 per hour for counsel experienced in class action litigation).  Defendants argue that the Court should apply strict Rubin rates, and that because the majority of time litigating this matter is from 2016, the Rubin rates from that year should apply.  Defendants argue that Class Counsel seeks "Bentley rates, not Cadillac rates" for a case that might have been a "lemon."  (Doc. 72 at PageID 3088); *see also Shane Grp., Inc. v. Blue Cross Blue Shield,* 825 F.3d 299, 310 (6th Cir. 2016) (vacating award of attorneys' fees, noting that one problem was that the rates claimed at up to $900 per hour were too high).   The Court notes that the *Shane* case, however, is distinguishable, as class counsel there were seeking recovery of attorney rates much higher than counsel in this case (up to $900 per hour) and provided *no* time records or descriptions of work done in support of their hours working on the case.

In support of their fee petition, each billing attorney has submitted an affidavit attesting to their professional background and education, experience level, billing rate, and involvement in this case.  The Court will not reiterate each attorney's experience level here, but it is satisfied that counsel is very well experienced in civil litigation, particularly national class action work.  (*See* Attorney Affidavits, Docs. 48-1–48-23.)  Further information on each attorney's background is well documented in the record and briefly summarized in the chart below.

| Name | Law Firm | Year Admitted | Years in Practice | 2018 Hourly Rate | 2018 Rubin Rate |
|---|---|---|---|---|---|
| Louise Roselle | MSD | 1972 | 46 | $700 | $506.44 |
| W.B. Markovits | MSD | 1981 | 37 | $700 | $506.44 |
| Paul De Marco | MSD | 1984 | 34 | $700 | $506.44 |
| Christopher Finney | FLF | 1987 | 31 | $465 | $506.44 |
| Jeffrey Goldenberg | GS | 1994 | 24 | $595 | $506.44 |
| Todd Naylor | GS | 1997 | 21 | $550 | $506.44 |
| Julie Gugino | FLF | 2001 | 17 | $280 | $447.60 |
| Robert Sherwood | GS | 2002 | 16 | $475 | $447.60 |
| Christopher Stock | MSD | 2002 | 16 | $650 | $447.60 |
| Jennifer Morales | MSD | 2003 | 15 | $530 | $447.60 |
| Justin Walker | FLF | 2005 | 13 | $425 | $447.60 |
| Andy Biller | MSD | 2006 | 12 | $450 | $447.60 |
| Terence Coates | MSD | 2009 | 9 | $530 | $380.36 |
| Brian Shrive | FLF | 2012 | 6 | $220 | $380.36 |
| Zach Schaengold | MSD | 2013 | 5 | $350 | $326.78 |
| Eric Kmetz | MSD | 2014 | 4 | $350 | $282.62/$326.78 |
| W.Z Dylan Sizemore | FLF | 2015 | 3 | $200 | $282.62 |
| Paralegals | | n/a | n/a | $135-150 | $149.60 |
| Law Clerk/Assistant | | n/a | n/a | $100 | $94.55 |

(*See* Exhibit A to Doc. 47 at PageID 891.)

The Court will consider attorneys' billing rates broken down into categories by years of experience as did the Rubin Committee. However, because the segment of attorneys with 21 or more years of experience includes attorneys with as much as 46 years of experience, the Court will add a new category for senior attorneys with 34–46 years of experience. The attorneys in this segment bill at $700 per hour whereas the Rubin rate for this group is $506.44. The Court will average these rates for a new blended rate of $603.[8] The Court finds this rate is above the

---

[8] Rounded down from $603.22.

Rubin rate but still within a reasonable range and accounts for the greater experience of the senior attorneys in this group.

The attorneys with 21 or more years of experience seek approval of widely-ranging rates, spanning from $465 to $595. The Court will apply an intermediate rate of $550 and average that rate with the Rubin rate of $506.44, for a blended rate of $528.[9] Similarly, attorneys with 11–20 years of experience have rates that span from $280 to $650. Even two attorneys with the same amount of years in practice have vastly different rates, with Attorney Christopher Stock billing at $650 and Attorney Robert Sherwood billing at $475. Again, the Court will take an intermediate rate of this group of $530, averaged with the Rubin rate of $447.50, for a blended rate of $489.[10] Next the Court will consider together attorneys with 4–5 years of experience, both of whom bill at $350 and for whom the Rubin rate would be $326.78, for a blended rate of $338.[11] Attorney W.Z. Dylan Sizemore is the only attorney with 3 years of experience, falling in the 2–4 year range. His rate of $200 averaged with the Rubin rate of $282.62 yields a rate of $241.[12] The paralegal and law clerk rates are within the range of the Rubin rates, so those will be applied at the rounded number of $150 for paralegal work and $100 for law clerk/assistant work. The Court finds that each of these blended rates is within the range of the applicable Rubin rates while reflecting the national practice and experience of the attorneys and staff who worked on this case.

---

[9] Rounded down from $528.22.

[10] Rounded up from $488.75.

[11] Rounded down from $338.39. The Court applies the high Rubin rate for Attorney Kmetz as he falls into two categories.

[12] Rounded down from $241.31.

Furthermore, the Court will exercise its discretion in applying 2018 rates as being reasonable and appropriate without creating a windfall to the attorneys. Although much of the work occurred in in 2016, the Court believes that the attorneys are entitled to some slight adjustments given the waiting for compensation and continued work on this case. Thus, the use of current rates does not produce a windfall here and reflects reasonable market rates within the venue. *See Barnes v. City of Cincinnati,* 401 F.3d 729, 746 (6th Cir. 2005) (finding the current market rates for attorneys to be reasonable because the litigation had been ongoing for nearly six years); *see also Gonter*, 510 F.3d at 617–18 (finding district court did not abuse its discretion in applying attorneys' historic 2004 rates, as opposed to rates from 2001, 2002, 2003, or 2005).

Although the Court has established applicable rates, it is not in a position to compute the final lodestar in this case because the attorney time is subject to revision and objections, as discussed *supra*. The parties will be required to submit a final lodestar calculation for the Court after all objections to billing records have been resolved.

### E. Expenses

Class Counsel request $41,194.77 in expenses which the Court approves as reasonable. Notably, Class Counsel has excluded from this total additional expenses that have been incurred since their original submission. The Court has reviewed the documentation regarding expenses and finds them to be reasonable and related to this case. Further, Defendants do not object to payment of $41,194.77 in expenses.

### F. Service Awards

Class Counsel seek two $3,000 service awards for each the two named Plaintiffs, Vicki Linneman and Obadiah N. Ritchey. Defendants do not object to the service awards. District courts have approved incentive fund payments to named plaintiffs, but the Sixth Circuit has been

skeptical of such payments citing a fear that "incentive awards may lead named plaintiffs to expect a bounty for bringing suit." *Roland v. Convergys Customer Mgmt. Grp., Inc.*, No. 1:15-CV-00325, 2017 WL 4873343, at *4 (S.D. Ohio Jan. 10, 2017) (citing *Shane Grp., Inc., v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 310–11 (6th Cir. 2016) (citation omitted)); *see also*, *e.g.*, *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (stating that courts should be dubious of incentive awards that make the named plaintiff whole or greater than whole because such named plaintiffs have less incentive to protect the interests of class members). To ensure that amounts are not a bounty, the Sixth Circuit has instructed that counsel must provide the court with specific documentation, in the manner of time sheets, of time spent on the case by each recipient of an incentive award. *Shane*, 825 F.3d at 311.

In support of their requested service awards, the two named Plaintiffs in this case have attested to their involvement in this action through sworn affidavits. (Docs. 49-1, 49-2.) Although they are not time sheets in the manner of attorney billing records, the Court is satisfied that the affidavits estimate the time spent on this case and demonstrate that each named Plaintiff has contributed meaningfully to this case through their involvement.

Linneman attests that she has participated in this action by reviewing court filings, attending meetings, gathering and reviewing documents, participating in discovery, preparing for and completing a deposition, and reviewing and approving settlement proposals. (Doc. 49-1 at PageID 994–95.) She estimates contributing at least thirty hours to this action and her decision to serve as a class representative was in no way based on the possibility of receiving a potential service award. (*Id*. at 996.) Ritchey attests that he has participated in this action by reviewing court filings, attending meetings, gathering and reviewing documents, participating in discovery, traveling for, preparing for, and attending his deposition, and reviewing and approving

settlement proposals.  (Doc. 49-2 at PageID 998–99.)  He estimates that he has spent over thirty-five hours on this action and that his decision to serve as a class representative was in no way based on the possibility of receiving a potential service award.  (*Id*. at PageID 1000.)

Having considered these affidavits, the Court is satisfied that each Plaintiff contributed meaningfully to this case and an award of a $3,000 to each is in no way a "bounty." Furthermore, the service awards are not taken from a common fund but paid separately by Defendants irrespective of any settlement benefits.  The Court finds that the service awards appropriately incentivize active, effective, and meaningful participation in class action litigation, which is necessary to move the case forward and, in this case, reach a meaningful settlement. For these reasons, the Court approves the two awards.

### G.  Objections

The following Class Members filed objections to approval of the settlement on the basis that they objected to attorneys' fees: Kamala Bennett (Doc. 78-13 at PageID 3310), Chris Brenn (*Id.* at PageID 3317), Richard Burlingame (*Id.* at PageID 3320), Elizabeth M. Cosin (*Id.* at PageID 3333), Thomas L. Cox, Jr., Esq. (*Id.* at PageID 3341), Franklin DeJulius (*Id.* at 3357), Ryan Gibbs (*Id.* at PageID 3365), Jon Lorenzo (*Id.* at 3357), Avigail Ruth Short (*Id.* at PageID 3390), and Todd A. Thomas (*Id.* at 3406).

The Settlement Notice, approved by this Court, notified objectors of the requirements for submitting a valid objection.  (Doc. 38-1 at PageID 615.)[13]  The Settlement Notice also informs

---

[13] The eight requirements for submitting a valid objection are (1) the full name, address, telephone number, and email address of the objector; (2) the serial number(s) of the objector's blender(s); (3) a written statement of all grounds for the objection accompanied by any legal support for such objection; (4) copies of any papers, briefs, or other documents on which the objection is based; (5) a list of all civil actions in which the objector and/or objector's counsel had filed or in any way participated in-financially or otherwise-objecting to a class action settlement in the preceding five years; (6) the name, address, email address, and telephone number of all attorneys representing the objector; (7) a statement

objectors that "Class Members who fail to make objections in the manner specified in this Section will be deemed to have waived any objections and will be foreclosed from making any objection to the Settlement or this Agreement (whether by appeal, collateral proceeding, or otherwise.)" (*Id.*)

Eight objectors did not meet the technical requirements and are therefore foreclosed from objecting:

(1) Kamala Bennett - Bennett, represented by attorney Simina Vourlis, failed to state her telephone number, her email address, her counsel's telephone number, and a list of cases in which her counsel participated in the past five years as objecting counsel.[14]

(2) Chris Brenn – Brenn, *pro se*, failed to include a statement indicating whether he would appear at the Fairness Hearing;

(3) Richard Burlingame – Burlingame, *pro se*, failed to include a statement indicating whether he would appear at the Fairness Hearing.

(4) Thomas L. Cox, Jr. – Cox, an attorney, is a professional objector who submitted an objection on behalf of himself and did not list all of the cases where he participated as objecting counsel in the last five years.[15]

(5) Jon Lorenzo & Franklin DeJulius – Lorenzo and DeJulius, represented by attorney Edward Cochran, failed to meet the requirements for submitting valid objections

---

indicating whether the objector and/or objector's counsel intends to appear at the Fairness Hearing, and, if so, a list of all persons, if any, who will be called to testify in support of the objection; and (8) the objector's signature. (*Id.*)

[14] Class Counsel supplied the Court with a comprehensive list of Vourlis's, Cox's, and Cochran's involvement in other cases. (*See* Doc. 98.)

[15] *See id.*

because Cochran did not list all cases in which he participated as objecting counsel in the five years before the date of the objection, as required.[16]

(6) Ryan Gibbs – Gibbs, a practicing real estate attorney, failed to include his email address and the serial numbers of his blenders in his objection.

(7) Avigail Ruth Short – Short failed to address whether she has objected to any class action settlements in the past five years.

In spite of their deficiencies, the Court will still consider the merits of the objections. Initially, the Court questions whether the objectors have standing to object to attorneys' fees, as the fee negotiations took place after settlement on behalf of the class was reached, and any award of fees will not be taken from a common fund or otherwise effect the recovery of the Class Members.

The objectors generally argue that the fee request is too high. The Court has considered whether the requested amount of attorneys' fees is too high in its consideration of Class Counsel's lodestar. In analyzing the time spent and hourly rates requested, the Court has requested that hours be culled to avoid billing issues and has designated lower hourly rates than those requested by Class Counsel. The Court will further consider the issue of attorneys' fees being too high and whether a multiplier or reduction is appropriate in its subsequent order when it issues its final ruling. Thus, the objections related to attorneys' fees as they relate to attorneys' hourly rates are overruled and the remainder are under consideration.

In addition, Gibbs objects to an award of service awards as being preferential treatment. As noted, Gibbs's objection is technically deficient. Having considered the named Plaintiffs'

---

[16] *See id.*

time investment in this case, the Court finds that two small service awards are not bounties but a meaningful way to compensate these individuals for their contributions to this case. This objection is overruled.

## III. Conclusion

The Court **GRANTS IN PART** Class Counsel's Motion for Attorneys' Fees, Costs, and Class Representative Service Awards. (Doc. 42.) The request for expenses and service awards is **GRANTED**. Although the Court has ruled on aspects of the request for attorneys' fees, the request remains pending, subject to the protocol described herein.

To reiterate:

- Within 14 days of entry of this Order, Class Counsel shall provide modified billing records to Defendants for Defendants' review.

- Within 14 days of Class Counsel's submission to Defendants, Defendants must submit an updated list of objections (if necessary) to Class Counsel.

- Within 14 days of circulating updated objections, Class Counsel and Defendants must meet and confer in person to attempt to resolve all remaining objections without Court intervention.

- Within 14 days of the meet-and-confer, the parties must file a joint statement of all objections as well as a joint submission of Class Counsel's time entries. If any redacted entries remain, Class Counsel must file a redacted version with any remaining privileged entries with a privilege log.

- If necessary, the Court will review the remaining objections and set a date for a hearing during which it will rule on the remaining objections.

In addition, as noted, Defendants' Motion to Receive Expert Testimony (Doc. 69) is

**GRANTED**.

The Court has also received the parties' Joint Request for a Status Conference (Doc. 154)

in light of the conclusion of the validation process. The request is **GRANTED**. An in-person

status conference is set for Thursday, July 18, 2019 at 10:00 a.m. in chambers.

**IT IS SO ORDERED.**

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court